engagement, interaction, secrecy, disclosure, and repression (656-61).[1] The court had

permitted the People to introduce that testimony for the purposes of explaining delay in

reporting, that a victim may exhibit a lack of affect when describing the abuse, and that

she may have difficulty remembering dates. The People claim that, in light of the Court

of Appeals recent decisions in People v. Williams, 20 N.Y.3d 579 (2013), and People v.

Diaz, 20 N.Y.3d 569 (2013), this ruling was correct (Brief for Respondent at 24-28). The

People are wrong for the simple reason that in both cases, the expert testimony was

admitted to explain unusual behavior by the victim. In Diaz, the Court held that expert

child abuse testimony "is permissible as helpful for the jury to understand victims'

unusual behavior." And in Williams, the Court reiterated that holding, and explained that

delayed reporting of the abuse is one such behavior.   In this case, however, Ms. Awan

exhibited nothing unusual at any point during the investigation or during her testimony.

First, there was nothing "unusual" about the timing of Ms. Awan's report of

abuse. As she rationally explained on the stand, she did not report the abuse because she

did not think her mother would believe her if Mr. Gopaul denied her allegations,

particularly since the family depended on him to support the household financially (Awan

---

[1]      Coincidentally, those are the exact same five stages that characterize a
different syndrome, Child Sexual Abuse Accomodation Syndrome.   See People v.
Williams, 20 N.Y.3d 579 (2013).  While defense counsel did not seek a Frye hearing to
determine whether the intra-familial syndrome he described was generally accepted in the
scientific community, he did question its general acceptance (542). The court, therefore,
was on notice that Lewittes's cut-and-paste testimony was suspect from the start.

2

519; Gopaul 850). And she was right. After she reported the abuse, not only did her mother tell her to pack a bag and stay with the Aliotos (Awan 520), she testified for Mr. Gopaul. And her mother welcomed 10 members of Mr. Gopaul's family into their home in the aftermath, one of whom told Ms. Awan she had "messed up everyone's life" (Awan 520). But when, according to Ms. Awan, Mr. Gopaul began to pin down a date on which he would have sex with her, Ms. Awan left home and contacted the Aliotos in order to avoid being raped (Awan 512).

All of Ms. Awan's testimony about why she did not report the abuse until June of 2008 makes perfect sense. There was nothing "unusual" that only an expert witness could explain. See Williams, 20 N.Y.3d 579 (reaffirming that expert testimony is admissible when professional or technical knowledge beyond the ken of the typical juror would help clarify a material issue at trial).

The same is true regarding the expert's testimony about "blending" and lack of affect. Because Ms. Awan was never asked about specific dates, and never testified that she was unable to recall them, there is no record to support that an expert's testimony about memory loss or "blended" recollections was necessary. There simply was no memory loss or conclusion established on the record to explain, and no potential for juror confusion on that question. The People's claim that her failed memory resulted in "mass-dismissal" is not based on the trial record, which discloses no such causal relationship (see Brief for Respondent at 28). Rather, the "mass-dismissal" was

3

consistent with standard practice of reducing the number of counts submitted to the jury to a manageable number when an indictment contains as many counts as Mr. Gopaul's indictment had. Indeed, during the colloquy the People cite (Brief for Respondent at 27), the court stated, "I don't recall your witness having a problem" remembering specific details (648). Although the prosecutor alleged that Ms. Awan could not recall specific dates between 2006 and 2008, she was not asked to do so (see 542). And counsel pointed out that, when asked about one period, Ms. Awan was able to narrow the period and was able to recall that the incident during that period happened on a weekday (553). As a result, there was no memory deficit apparent to the jury that cried out for an expert's explanation.

Finally, with respect to lack of affect, the People complain that they should not have to describe "every jot and tittle of an expert's testimony as a precursor to its admission" (Brief for Respondent at 29). When counsel specifically objected to expert testimony on flat affect on the ground that there had been no showing of flat affect and that there was no need for an expert's testimony about why Ms. Awan was not crying on the stand, the prosecutor was silent (542). His entire proffer related to memory and delayed reporting. There is simply no indication on the record that Ms. Awan's behavior during the investigation or at trial was "unusually" subdued or "flat" such that expert testimony to explain it was necessary.

4

In sum, regardless of whether Intra-Familial Child or Adolescent Sexual Abuse Syndrome is even generally accepted in the scientific community, Lewittes's testimony about it in this case was unnecessary and prejudicial — lending irrelevant expert support for the People's case (see Brief for Defendant-Appellant at 33).  Accordingly, since, as the People implicitly concede, this claim was fully preserved, Mr. Gopaul is entitled to a new trial.

## POINT II

THE PROSECUTOR'S IMPROPER SUMMATION ARGUMENTS, WHICH WERE NOT JUSTIFIED BY DEFENSE COUNSEL'S SUMMATION, AND HIS PLEA FOR SYMPATHY FOR THE COMPLAINANT DURING HIS OPENING STATEMENT, VIOLATED APPELLANT'S DUE PROCESS RIGHT TO A FAIR TRIAL.

The People attempt to defend the trial assistant's arguments (1) that the defense was "ridiculous" and "absurd," and Mr. Gopaul could not be believed, (2) that Ms. Awan would have to be a "sick, despicable human being" to accuse Mr. Gopaul if it were not true, (3) eliciting sympathy for Ms. Awan because of the humiliation of her medical examination and her courage in testifying, and (4) urging the jury to rely on the vote of the grand jury to indict, were not improper[2] and, in any event, were all justified because

---

[2]     The People argue that Mr. Gopaul has made "overbroad, intemperate accusations" of prosecutorial misconduct that are "wildly out of place" and "startling" (Brief for Respondent at 38-39).  There is nothing "wildly out of place" about citing general principles of law in an introduction to the argument (see Brief for Defendant-

5

defense counsel had engaged in sarcasm and accusations during his summation (Brief for Respondent at 39-40).

First, far from being "calm and logical, rather than inflammatory" (Brief for Respondent at 39), the prosecutor specifically used such pejorative terms as "ridiculous" and "absurd" — terms this Court has expressly condemned. See People v. Gordon, 50 A.D.3d 821 (2d Dept. 2008). His use of those, and similar, terms throughout his summation established that they were "part of an emotional presentation to the jury" (see Brief for Respondent at 41, and cases collected therein).

And the prosecutor's attribution to the defense an argument that Ms. Awan was a "sick and despicable human being" can only be described as inflammatory. The People pretend that this powerfully emotional characterization was merely a hypothetical description of someone to be contrasted with Ms. Awan is belied both by the vehemence with which it was said and the fact that the prosecutor did not state it in comparative terms at all. Rather, he said that a person who would lie about being sexually abused had to be "so sinister, so despicable, so screwed up in the head, that's what type of person who would make that up" (934). Since appellant's defense was that Ms. Awan had,

---

Appellant at 35), and nothing "startling" about the kind of prosecutorial misconduct that was alleged in this case. Indeed, the Queens District Attorney's Office has repeatedly been found to have engaged in similar misconduct. See e.g. People v. Anderson, 83 A.D.3d 156 (2d Dept. 2011); People v. Gutierrez, 27 Misc.3d 143(A), 910 N.Y.S.2d 764 (App. Term. 2d, 11th, 13th Jud. Dist's 2010); People v. Adamo, 309 A.D.2d 808 (2d Dept. 2003); People v. Smith, 288 A.D.2d 496 (2d Dept. 2001).

6

indeed, "made that up," the prosecutor was clearly urging the jury to conclude that Mr. Gopaul considered Ms. Awan to be such a person and to hold that against him.

As for the prosecutor improperly suggesting that Ms. Awan made up the sexual abuse somehow knowing how invasive the medical examination would be, the People could only offer a conclusory "fair comment on the evidence" response. But, since there is no reason to believe that Ms. Awan was aware, at the time of her report, of the medical examination procedures she would face, the prosecutor's argument could only have highlighted how embarrassed she must have felt, thereby eliciting from the jurors further sympathy for her. This argument flowed naturally from the prosecutor's opening remarks about Ms. Awan's courage in testifying about embarrassing sexual abuse allegations before strangers. Again the People suggest that the prosecutor was merely comparing Ms. Awan's courage at trial with her, apparent, lack thereof earlier (Brief for Respondent at 51). Apart from making very little sense as an opening statement, there being no indication before the jury that Ms. Awan lacked courage to begin with, there was no such comparison to make. Clearly, the prosecutor was trying to elicit from the jurors sympathy for, and solidarity with, Ms. Awan.

The People's defense of the prosecutor's resort to the grand jury's vote, that it was no different from reading the counts (Brief for Respondent at 49), misses the point altogether. It was not <u>what</u> they voted, but <u>that</u> they voted, which constituted unfair comment. The prosecutor was urging the jurors to draw from the vote to indict the

conclusion that other unbiased citizens had already correctly passed judgment on Mr. Gopaul (see Brief for Defendant-Appellant at 41).

The People claim that referring to "citizens like yourself" (306) as having voted to indict actually "weakened the imposing nature of the indictment" by removing any question that "high officials" had investigated the case and created the indictment (Brief for Respondent at 49). Of course, there is no reason to believe that any of the jurors would have assumed that the grand jury was composed of "high officials." But that argument misses the point in any event: the danger is that the jurors would conclude that someone had already determined that Mr. Gopaul was guilty of something.

Unable to offer convincing arguments as to why the prosecutor's various comments during opening and in summation were proper, the People resort to an alternative he-did-it-first theory: that defense counsel offered his personal views of his client's innocence, argued that the People's witnesses were incredible and that the expert was a hired gun, used sarcasm, and denigrated the prosecution (Brief for Respondent at 35-37). First, the prosecutor never objected to anything defense counsel said. Second, although many of the prosecutor's complaints fall under the category of rhetorical flourish by defense counsel, "goading by defense counsel will not justify a prosecutor's departure from the obligations of the sensitive role he plays" as a "quasi-judicial officer . . . presumed to act impartially in the interest only of justice." People v. Galloway, 54 N.Y.2d 396, 399, 412 (1981) (majority opinion and Meyer, J., dissenting). Rather, the

8

prosecutor was required to stay within the four corners of the evidence, People v. Ashwal, 39 N.Y.2d 105, 109-10 (1976), and offer fair comment on the evidence and fair response to counsel's arguments. People v. Stephens, 161 A.D.2d 740, 741 (2d Dept. 1990). No matter what, the prosecutor must "present legal evidence unimpaired by intemperate conduct aimed at sidetracking the jury from its ultimate responsibility." People v. Calabria, 94 N.Y.2d 519, 523 (2000).

"Fair response" in this case would have been to use the evidence, or lack thereof, to debunk defense counsel's arguments. The prosecutor was not free to ignore his responsibility to present the case evenhandedly on the basis of unobjected-to remarks made by defense counsel. If those remarks were as objectionable as the People now claim, it was the prosecutor's obligation to ask for the court to intercede while they were being made, not to keep a list of transgressions so as to engage in the same or worse in his own summation. The People's argument in this respect reveals a disturbing misunderstanding of a prosecutor's role and responsibilities during a trial that this Court should not countenance.

9

## POINT III

BECAUSE THE APPREHENDING OFFICER WOULD HAVE OFFERED NON-CUMULATIVE, MATERIAL, TESTIMONY BEARING ON APPELLANT'S DEFENSE THAT HIS STATEMENTS TO THE POLICE WERE THE PRODUCT OF VIOLENT ARREST AND INTERROGATION CONDUCT, THE COURT'S REFUSAL TO GIVE THE REQUESTED MISSING WITNESS INSTRUCTION VIOLATED HIS DUE PROCESS RIGHT TO A FAIR TRIAL.

The People do not attempt to argue that the officer who first apprehended Mr. Gopaul at the precinct was either unavailable or not under the People's control. Although they do offer a cursory complaint about the lateness of counsel's request for the charge (Brief for Respondent at 54-56), the prosecutor did not argue that the instruction be denied on that basis and the court did not rule that the request was late. Nor was there prejudice to the People who could certainly have called a police witness to the stand at the time the request was made. Indeed, as defense counsel pointed out, he had attempted to learn the identity of the apprehending witness on cross-examination of the People's witnesses throughout the trial, without success. Under those circumstances, the People's contra citation to People v. Erts, 73 N.Y.2d 872, 874 (1988), against the proposition they put forward, that this Court should nevertheless uphold the court's refusal on lateness grounds, is telling.

The People's real response to Mr. Gopaul's argument is that the apprehending officer's testimony would have been cumulative (Brief for Respondent at 56-57). But

they did not make that argument below either; the prosecutor argued that the witness's testimony would not have been material, and the court denied the motion on that basis (897). Accordingly, their current claim is unpreserved.

In any event, that claim is dead wrong. The fact that Denise Alioto was present when Mr. Gopaul walked into the precinct does not mean she saw everything that happened. While she testified that she saw one of the officers grab Mr. Gopaul and "put him up against the wall" (639-40), Mr. Gopaul testified about a much longer struggle: after he was put against the wall, he was frisked, and taken to the other side of the building where he was slammed against a counter (814-15). Ms. Alioto clearly was not present for the counter incident and offered no testimony about the way in which Mr. Gopaul was frisked and pushed to the other side of the building; she said, "I went back upstairs so I don't know where he went from there" (640). In fact, even with respect to the initial encounter, she testified that, when she saw Mr. Gopaul, she stood behind other officers so he would not see her (626-27). Ms. Alioto, therefore, simply was in no position to testify about how Mr. Gopaul was treated throughout the arrest process, and the missing apprehending officer's testimony could not have been cumulative.

Nor did Detective Shulman's testimony and the videotaped statement render unnecessary the apprehending officer's testimony. According to Mr. Gopaul, Detective Shulman was not present for the arrest and was engaged in the very abuse Mr. Gopaul alleged coerced his statements. And he gave a videotaped statement, as Detective

11

Shulman directed, because the detective had told him that if he gave the statement he would be permitted to go home (834). That his demeanor on the videotape made hours after the arrest was calm is irrelevant to whether the earlier conduct by the police had coerced his statements.

The court's refusal to give the missing witness instruction for the reasons counsel gave when he made the request was error (see 897). The case boiled down to a credibility contest between Ms. Awan and Mr. Gopaul. His statements admitting to the abuse would necessarily have been powerful evidence resolving that contest. If the statements were coerced, the contest would have been much closer. Accordingly, the absence of the only witness who could testify about the initial coercion played a substantial role in Mr. Gopaul's conviction and the court's refusal to give a missing witness instruction requires that this Court reverse that conviction.

## POINT IV

### THE ADMISSION OF HEARSAY EVIDENCE NOT CONSTITUTING OUTCRY TESTIMONY WAS ERROR.

The People have responded to a claim Mr. Gopaul does not make; he does not claim that the court erred in permitting the People to elicit excessive outcry details as the People suggest (Brief for Respondent at 59-60). Rather, he argues that the introduction of hearsay testimony by Ms. Awan and Christine Alioto was error.

Ms. Awan could not properly testify to her own outcry because that testimony was

nothing more than improper bolstering evidence. The person to whom the outcry is made is the witness through whom the outcry can be elicited. People v. McDaniel, 81 N.Y.2d 10, 17 (1993). Ms. Awan's own testimony was nothing more than an out-of-court statement offered for its truth with no applicable exception.

The People's elicitation of Christine Alioto's question "has he touched you," but not Ms. Awan's answer, was the other side of the same coin. It was hearsay without exception because it was Ms. Awan's response that would have constituted the outcry exception. Both the prosecutor and the court had confused basic hearsay principles with confrontation clause principles and permitted exactly the wrong evidence to be introduced.

The People's argument that the errors were harmless because the fact of the outcry was already in evidence fails because, as to Ms. Awan's self-serving hearsay statement in particular, it ignores the harm of bolstering testimony. See People v. McClean, 69 N.Y.2d 426, 429 (1967) ("untrustworthy testimony does not become less so merely by repetition").

The People's criticism of defense counsel's direction to Mrs. Gopaul that she not "say anything that somebody might have said to you while you were there" (736) (see Brief for Respondent at 61), reveals the same misunderstanding. Nothing that either of two parties to a conversation says out of court is admissible in court for its truth unless a hearsay exception applies. Prompt outcry is an exception that applies only to the

13

person to whom the report is made.  Because the court erred in applying these basic evidentiary rules, Mr. Gopaul's conviction should be reversed.

## **CONCLUSION**

FOR THE FOREGOING REASONS, AND THOSE IN APPELLANT'S PRINCIPAL BRIEF, THIS COURT SHOULD REVERSE APPELLANT'S ADJUDICATION AND ORDER A NEW TRIAL

Respectfully submitted,

Lynn W.L. Fahey
Attorney for Defendant-Appellant
Appellate Advocates
2 Rector Street, Tenth Floor
New York, NY  10006

Paul Skip Laisure
Of Counsel
May 13, 2013

14

## CERTIFICATE OF COMPLIANCE

The foregoing brief was prepared on a computer.  A proportionate typeface was used, as follows:

```
Name of typeface:        Garamond
Point Size:              14
Line Spacing:            Double
```

The total number of words in the brief, inclusive of point headings, footnotes, and table of contents, and exclusive of pages containing the proof of service, and certification of compliance, is 3,395.

Paul Skip Laisure
Supervising Attorney

# APPELLATE ADVOCATES

2 RECTOR STREET - 10TH FLOOR, NEW YORK, NEW YORK 10006
PHONE: (212) 693-0085   FAX: (212) 693-0878

*ATTORNEY-IN-CHARGE*
LYNN W. L. FAHEY

*ASSISTANT ATTORNEY-IN-CHARGE*
BARRY S. STENDIG

*SUPERVISING ATTORNEYS*
DAVID P. GREENBERG
ERICA HORWITZ
PAUL SKIP LAISURE
LISA NAPOLI
WILLIAM G. KASTIN
KENDRA L. HUTCHINSON

*DIRECTOR OF INNOCENCE INVESTIGATIONS*
DE NICE POWELL

January 23, 2014

STEVEN R. BERNHARD
DENISE A. CORSI
A. ALEXANDER DONN
JOHN GEMMILL
ALLEGRA GLASHAUSSER
LEILA HULL
LAUREN E. JONES
JONATHAN M. KRATTER
BRYAN KREYKES
WARREN S. LANDAU
JOSHUA M. LEVINE
TAMMY E. LINN
DAVID G. LOWRY
PATRICIA PAZNER
ANNA PERVUKHIN
CASEY ROSE SCOTT
SHANDA SIBLEY
NAO TERAI
MARK W. VORKINK
KATHLEEN E. WHOOLEY
JENIN YOUNES
RONALD ZAPATA
DINA ZLOCZOWER

*OF COUNSEL*
ALEXIS A. ASCHER
JANET CLAIRE LE
ELLEN FRIED
MELISSA S. HORLICK
WILLIAM A. LOEB
REYNA E. MARDER

Hon. Jonathan Lippman
Chief Judge
Court of Appeals of the State of New York
20 Eagle Street
Albany, New York 12207

Re:   People v. Harold Gopaul
      (Criminal Leave Application)

Dear Judge Lippman:

Harold Gopaul respectfully requests the issuance of a certificate pursuant to N.Y. Crim. Proc. Law § 460.20 (McKinney 2005), granting permission to appeal and certifying that there is a question of state law and federal constitutional law in the above-captioned case, as stated in his brief in the Appellate Division, which ought to be reviewed by the Court of Appeals. I have enclosed copies of Mr. Gopaul's brief in the Appellate Division, the People's Response Brief, Mr. Gopaul's Reply Brief in the Appellate Division, the Appellate Division's decision affirming Mr. Gopaul's conviction, and pages 540-44 and 645-50 of the trial transcript (demonstrating preservataion).

Mr. Gopaul requests that an appeal be allowed to this Court from the order of the Supreme Court, Appellate Division, Second Department, entered on December 26, 2013, affirming a judgment by the Supreme Court, Queens County, rendered September 8, 2010, and amended September 10, 2010, convicting him of criminal sexual act in the first degree (six counts), sexual abuse in the first degree (six counts), criminal sexual act in the second degree, criminal sexual act in the third degree (two counts), assault in the third degree, and endangering the welfare of a child.

If there is any further information I can provide, I would be happy to do so.   No application for leave to appeal has been made to any justice of the Appellate Division.

Respectfully submitted,

Paul Skip Laisure
Appellate Advocates
(212) 693-0085 ext. 211

cc.    Richard A. Brown
       District Attorney, Queens County
       125-01 Queens Blvd.
       Kew Gardens, New York 11425
       Attn: Johnnette Traill

2

# APPELLATE ADVOCATES Bresnahan Trail

2 RECTOR STREET - 10TH FLOOR, NEW YORK, NEW YORK 10006
PHONE: (212) 693-0085    FAX: (212) 693-0878

ATTORNEY-IN-CHARGE
LYNN W. L. FAHEY

ASSISTANT ATTORNEY-IN-CHARGE
BARRY S. STENDIG

SUPERVISING ATTORNEYS
DAVID P. GREENBERG
ERICA HORWITZ
PAUL SKIP LAISURE
LISA NAPOLI
WILLIAM G. KASTIN
KENDRA L. HUTCHINSON

DIRECTOR OF INNOCENCE INVESTIGATIONS
DE NICE POWELL

February 24, 2014

STEVEN R. BERNHARD
DENISE A. CORSI
A. ALEXANDER DONN
JOHN GEMMILL
ALLEGRA GLASHAUSSER
LEILA HULL
LAUREN E. JONES
JONATHAN M. KRATTER
BRYAN KREYKES
WARREN S. LANDAU
JOSHUA M. LEVINE
TAMMY E. LINN
DAVID G. LOWRY
PATRICIA PAZNER
ANNA PERVUKHIN
CASEY ROSE SCOTT
SHANDA SIBLEY
NAO TERAI
MARK W. VORKINK
KATHLEEN E. WHOOLEY
JENIN YOUNES
RONALD ZAPATA
DINA ZLOCZOWER

OF COUNSEL
ALEXIS A. ASCHER
JANET CLAIRE LE
ELLEN FRIED
MELISSA S. HORLICK
WILLIAM A. LOEB
REYNA E. MARDER

Hon. Victoria A. Graffeo
Judge of the Court of Appeals
    of the State of New York
20 Eagle Street
Albany, New York  12207

Re:    People v. Harold Gopaul
       (Criminal Leave Application)

Dear Judge Graffeo:

I am writing to supplement Mr. Gopaul's criminal leave application, filed on January 23, 2013. Leave should be granted to decide whether expert testimony that would otherwise be admissible must nevertheless be excluded when the facts elicited at trial raise no questions with respect to the subject of the expert's testimony.

## Background

Appellant Harold Gopaul was arrested when, two days after he hit his daughter Sana Awan for complaining about leaving a church fair early, she told a friend that he had been sexually abusing her for the preceding three years. Ms. Awan, who was 19 years old when she testified, gave coherent testimony about numerous episodes of sexual abuse. Although she was able only to approximate the dates of those episodes, she testified specifically as to what occurred on each occasion. She also explained that she did not report what was happening to her because appellant had threatened her and because she believed her mother would not believe her. Only when appellant threatened to escalate the abuse to sexual intercourse did she report what was happening to her friend. The record discloses no indication that Ms. Awan's demeanor was inappropriate to the gravity of her testimony (Ms. Awan's detailed testimony is recounted in the Brief for Defendant-Appellant at 6-10).

When defense counsel sought an offer of proof concerning the prosecutor's intent to introduce the testimony of Dr. Donald Lewittes, a clinical and forensic psychologist, the prosecutor explained that the testimony would cover three areas. First, Lewittes would explain delayed disclosure. Second, he would identify "a known pattern of behavior that's seen in child abuse cases" involving family members. Third, he would testify about the concept of "blending" which involves a victim's difficulty remembering each of many similar individual acts and when they occurred (541).

Defense counsel argued, inter alia, that there was nothing about Ms. Awan's testimony that indicated an inability to recall specific incidents and that delayed disclosure in the face of threats was not beyond the ken of the average juror so that expert testimony was required (542). The court ruled that the expert would be permitted to testify regarding "[t]he fact that there is often a delay in reporting, the fact that there may be a lack of affect when they testify, the fact that they may have a problem remembering dates" and about "blending" (646, 650).

Lewittes took that stand and, during the course of an examination covering over 20 pages of transcript, testified about the five "stages" of Intrafamilial Child Sex Abuse Syndrome (see Brief for Defendant-Appellant at 15). He testified adolescents might delay disclosure because of fear of physical or economic consequences. He also said that adolescents typically have difficulty discussing sexuality and tend to "just get it out," often without displaying facial emotional affect. Finally, he claimed that sexual abuse victims tend to "blend" multiple occurrences and have difficulty remembering "who did what to whom . . . and possibly where" but not what happened on specific dates.

## Reasons Leave Should Be Granted

This Court has already determined that expert testimony is not admissible in New York unless, as a threshold matter, it would help to " 'clarify an issue calling for professional or technical knowledge, possessed by the expert and beyond the ken of the typical juror.' " People v. Diaz, 20 N.Y.3d 569, 575 (2013) (quoting De Long v. County of Erie, 60 N.Y.2d 296, 307 (1983)); see also People v. Lee, 96 N.Y.2d 157, 162 (2001); People v. Taylor, 75 N.Y.2d 277, 288 (1990); People v. Cronin, 60 N.Y.2d 430, 433 (1983). The Court has also recognized that, in the sexual abuse context, expert testimony can be relevant to explain the otherwise potentially puzzling behavior of the victim. People v. Spicola, 16 N.Y.3d 441, 465 (2011); People v. Carroll, 95 N.Y.2d 375, 387 (2000); Bennett, 79 N.Y.2d at 472-73; Taylor, 75 N.Y.2d at 293; People v. Keindl, 68 N.Y.2d 410 (1986); see also Matter of Nicole V., 71 N.Y.2d 112 (1987). It may be introduced to provide information helpful to the jury, e.g., Taylor, 75 N.Y.2d at 293, or when the defense has assailed the victim's credibility by arguing that her post-offense conduct is inconsistent with her having been abused, e.g., Spicola, 16 N.Y.3d at 463-64.

In general, expert testimony is admissible "to explain behavior of a victim that might appear unusual or that jurors may not be expected to understand." Carroll, 95 N.Y.2d at 387; see People v. Califano, 216 A.D.2d 574 (2d Dept. 1995) (expert testimony "helped to explain the

2

complainant's behavior after the abuse, and was not within the purview of the average juror"). Such counter-intuitive victim behavior may include delayed outcry, id.; a victim's reluctance to admit or reveal the crime or the identity of the abuser in a family setting, Taylor, 75 N.Y.2d at 288-93; People v. Singh, 186 A.D.2d 285, 286 (2d Dept. 1992); a victim's lack of emotional affect afterward, Taylor, 75 N.Y.2d at 283; or a victim's continuing to have contact or maintain a relationship with the abuser. People v. McGuinness, 245 A.D.2d 701, 701-02 (3d Dept. 1997). See generally Spicola, 16 N.Y.3d at 465 (Court has "long held" that "evidence of psychological syndromes affecting certain crime victims [is] admissible for the purpose of explaining behavior that might be puzzling to a jury").

In this case, the prosecutor and the trial judge identified three areas of victim behavior that the jury might be unable to understand without the testimony of an expert witness: (1) delay in reporting the abuse; (2) "flat affect" inappropriate to the gravity of the abuse; and (3) the "blending" of memories of separate instances of abuse, resulting in an inability to differentiate one episode from another. Assuming that the average juror would not be familiar with these three effects of adolescent sexual abuse, the question is whether the expert in this case should have been permitted to testify about them.

As defense counsel explained, Ms. Awan's delay in reporting her allegations of ongoing abuse and continued contact with Mr. Gopaul was easily explained by her distrust of her mother, who depended on Mr. Gopaul as the bread winner of the family, and by his warnings that she not tell anyone. Not reporting abuse under those circumstances, because she felt she would "get in trouble," until rape became imminent, was not at all counter-intuitive or puzzling. Indeed, what happened after the report — she was ostracized by her mother and separated from her family — bore out how rational her initial failure to report was.

Nor, as counsel made clear, did Ms. Awan have any difficulty recalling events. She recounted what happened, where, and approximately when, with specificity and without confusion. There being no "blending" displayed during her testimony, there was no need for an expert to explain the concept. As for "flat affect," there is no indication of any peculiarity in Ms. Awan's demeanor in the record of her testimony and the prosecutor never alluded to any such issue during his summation. Again, there being no evidence of "flat affect," there was no need to explain how it could happen.

The Appellate Division, relying on this Court's decisions in Carroll and Diaz, nevertheless upheld the admission of Lewittes's testimony to "explain the issue of delayed disclosure," "to explain why the complainant did not recall with specificity when certain of the incidents occurred," and to explain "why victims of adolescent sexual abuse may manifest a 'flat affect' when testifying." Decision and Order at 2. Neither the Appellate Division nor the trial court engaged in any examination of whether this testimony was necessary under the facts of this case and, therefore, whether it should have been excluded as irrelevant regardless of whether it involved matters beyond the ken of the jury. Even the most technically difficult concepts need not be explained to the jury if they are irrelevant to the case. The question, therefore, is whether,

3

since none of the problems that Lewittes's testimony was meant to explain actually occurred in this case, his testimony was irrelevant and inadmissible on that basis, rather than because it involved concepts the jury might not understand.

If Lewittes's expert testimony about child and adolescent sexual abuse was irrelevant, its only purpose was to provide an aura of expert approval for the prosecution of Mr. Gopaul, so that the jury would conclude he had committed the crimes alleged. But "[w]hen the expert testimony is introduced primarily to prove that a crime took place, its probative value is outweighed by the possibility of undue prejudice." People v. Knupp, 179 A.D.2d 1030, 1031 (4th Dept. 1992). Because the Appellate Division's decision in this case demonstrates that this Court's sexual abuse expert testimony precedent is being applied without consideration of the underlying relevance of that testimony in the individual case, Mr. Gopaul urges that leave to appeal be granted.

Respectfully submitted,

Paul Skip Laisure
Appellate Advocates
(212) 693-0085 ext. 211

cc.    Richard A. Brown
       District Attorney, Queens County
       125-01 Queens Blvd.
       Kew Gardens, New York 11425
       Attn: Johnnette Traill

4

**FILE COPY**



**DISTRICT ATTORNEY**
**QUEENS COUNTY**
**125-01 QUEENS BOULEVARD**
**KEW GARDENS, NEW YORK 11415-1568**
**(718) 286-6000**

RICHARD A. BROWN
DISTRICT ATTORNEY

March 11, 2014

The Honorable Victoria A. Graffeo
Judge of the Court of Appeals
Court of Appeals Hall
20 Eagle Street
Albany, New York  12207-1095

        Re:    *People v. Harold Gopaul,*
                Queens Indictment Number 2065/2008

Dear Judge Graffeo:

        The People oppose defendant's application for leave to appeal to this Court in the above-referenced case.  In an order dated December 26, 2013, the Appellate Division, Second Department, affirmed defendant's conviction of six counts of Criminal Sexual Act in the First Degree, six counts of Sexual Abuse in the First Degree, Criminal Sexual Act in the Second Degree, two counts of Sexual Abuse in the Second Degree, two counts of Criminal Sexual Abuse in the Third Degree, Assault in the Third Degree, and Endangering the Welfare of a Child. *People v. Gopaul,* 112 A.D.3d 966 (2d Dept. 2013).  In his current application, defendant claims, as he did below, that the trial court erred in admitting expert testimony concerning adolescent sexual abuse.  For the reasons that follow, this case does not present any issues worthy of this Court's review.

        Initially, this Court cannot review defendant's claim that the trial court improperly permitted the People's expert to testify as to why a victim of sexual abuse might exhibit a "flat" demeanor when recalling the abuse because there was no indication of any peculiarity in the victim's demeanor when she testified (Defendant's Leave Application at 4), as it is unpreserved. C.P.L. §§ 470.05, 470.35.  Indeed, when the prosecutor advised the

court that Dr. Lewittes would testify as to the "flat affect," defendant did not object to the admission of this testimony on the ground that the victim did not display a lack of emotion while testifying. Rather, he argued that the prosecutor had not asked the victim why she was not crying and that he was not aware of any "science" that "explains why she wasn't crying," which is obviously a different argument than what defendant now advances (Tr.: 554). Accordingly, defendant's claim is unpreserved and, thus, cannot be considered by this Court. *People v. Person,* 8 N.Y.3d 973 (2007).

In fact, by repeatedly acknowledging during his argument that the victim "wasn't crying" when she testified (Tr.: 554), defendant essentially waived his current claim that there was no evidence that the victim testified with a flat affect. Thus, for this additional reason, defendant's application for leave to appeal should be denied.

Additionally, even assuming, *arguendo,* that the victim did not display a lack of emotion while testifying, defendant could not claim prejudice based on the "flat affect" testimony. Indeed, if the victim had not, in fact, demonstrated a lack of emotion during her testimony, then the testimony regarding the flat affect concept could not have possibly been harmful to defendant. Rather, the expert testimony would have been, at worst, moot. Accordingly, in addition to the fact that defendant's claim with respect to the expert's testimony regarding the "flat affect," is unpreserved and waived, this Court should decline to review defendant's claim on the ground that he could not have been unduly prejudiced by the admission of the testimony.

Furthermore, as explained more fully in Respondent's Brief (pp. 24-31), the remainder of defendant's claims regarding the admission of the expert testimony are without merit. Indeed, the Appellate Division's denial of defendant's claim that the trial court improperly admitted expert testimony regarding the subject of adolescent sexual abuse was in accord with well-settled law. Thus, this claim does not present a leave-worthy issue. Specifically, in *People v. Carroll,* 95 N.Y.2d 375, 386 (2000), and, more recently, in *People v. Diaz,* 20 N.Y.3d 569, 575 (2013), and *People v. Williams,* 20 N.Y.3d 579, 584 (2013), this Court held that "expert testimony regarding rape trauma, syndrome, abused child syndrome or similar conditions may be admitted to explain behavior of a victim that might appear unusual or that jurors may not be expected to understand." Here, as fully detailed in Respondent's Brief (pp. 24-28), the expert testimony offered in the instant case was identical in form and purpose – including to explain the victim's extensive delay in disclosure – to that expert testimony deemed properly admitted in *Caroll* and *Williams. See Williams,* 20 N.Y.3d at 584. Accordingly, the expert testimony was properly admitted here, and further review is unwarranted.

While defendant attempts to distinguish this case from *Caroll* and its progeny, his arguments are unavailing. Indeed, defendant's claim that the expert testimony regarding delayed disclosure was unnecessary because the victim offered a logical reason for her delayed disclosure -- she distrusted her mother (Defendant's Leave Application at 3) -- this argument is meritless. Specifically, while the victim's testimony that she was not close to her mother and generally did not confide in her may have explained the victim's failure to disclose the abuse to her *mother*, it did not explain her failure to disclose the abuse to *anyone else*, including other family members, her friends, or her teachers or other school officials.

In this vein, defendant repeatedly attempted to impeach the victim's credibility based on the fact that she did not disclose the abuse to *anyone*, and did not limit his argument in this regard to the victim's failure to disclose the abuse to her mother. Indeed, at the very outset of the trial, during defendant's opening statement, defendant argued that while the victim "had three years of opportunity to tell people [about the sexual] abuse," she told no one including her friends, teachers, or school guidance counselors (Tr.: 325-326).

Defendant then continued with this line of defense during his cross-examination of the victim when he repeatedly questioned her about her failure to disclose the abuse to her "friends" (Tr.: 534), her "girlfriends" (Tr.: 535) her best friend (Tr.: 538), and anyone else (Tr.: 536).   In fact, in admitting the expert testimony regarding delayed disclosure, the trial court specifically noted defendant's strategy in this regard when the court stated to defendant, "Most of your cross-examination of the [complaining] witness involved her not telling *anybody* about [the sexual abuse]" (Tr.: 543)(emphasis added).

Additionally, during his summation, defendant argued that the victim lacked credibility given that she did not disclose the abuse to anyone at her school (Tr.: 901), her friends or best friend (Tr.: 904), her mother or "another family member" (Tr.: 904). Thus, given defendant's strategy of attempting to impeach the credibility of the victim based on her failure to disclose the abuse to anyone for three years and because the victim's failure to disclose the abuse for this long might have appeared unusual to jurors, the Appellate Division correctly determined that the expert testimony was properly admitted to fully explain the issue of delayed disclosure and to refute defendant's arguments. *See Williams,* 112 A.D.3d at 584; *Carroll,* 95 N.Y.2d at 386.

To the extent that defendant further argues that the victim's delay in disclosure was "easily explained" based on the evidence of the defendant's "warnings that [the victim] not tell anyone [about the abuse]" (Defendant's Leave Application at 3), this argument should be rejected by this Court as a basis to grant leave, as it is completely belied by the record. Indeed, a review of the victim's trial testimony reveals that she never testified that

*People v. Gopaul*
Queens Ind. # 2065/2008

defendant had warned her not to tell anyone about the abuse (Tr.: 444-538). Nor did any other witness testify that defendant had warned the victim not to tell anyone of the abuse.[1]

Likewise, defendant's claim that the trial court improperly permitted the expert to testify about "blended" recollections because the victim had no trouble recalling "with specificity" when the sexual abuse occurred (Defendant's Leave Application: 3) is not leave-worthy, as this argument is also directly belied by the record. Indeed, during his cross-examination of the victim, defendant questioned the victim about whether she could recall "the specific date" on which the initial incident of sexual abuse occurred, and the victim responded that she could not recall the exact date (Tr.: 534).

Moreover, during defendant's cross-examination of the victim regarding one of the counts in the indictment that alleged an incident of sexual abuse that occurred between September 1, 2005, and December 31, 2005, defendant specifically asked the victim whether she remembered the precise date on which that incident of abuse occurred, and the victim responded that she could not recall "the exact date," because the abuse had occurred "continuously" (Tr.: 535).

Similarly, during the direct examination of the victim, the prosecutor asked the victim whether she could recall the specific dates on which she was abused between 2006 and 2007, and she responded that she was unable to do so because the abuse "happened many times" (Tr.: 463). Accordingly, because the victim was repeatedly asked to recall the specific dates on which the abuse occurred, repeatedly demonstrated an inability to recall the specific dates, and, moreover, attributed this inability to recall the specific dates to the fact that the abuse was continuous and repetitive, the expert's testimony regarding the concept of "blending"[2] was certainly relevant to the evidence in this case, and, accordingly, was properly admitted. *People v. Spicola,* 16 N.Y.3d 441 (2011); *People v. Persaud,* 98 A.D.3d 527 (2d Dept. 2012), *lv. denied,* 20 N.Y.3d 1014 (2013). And, as the admission of the expert testimony in this regard was in accord with well-settled law, no further review is warranted.

Finally, as fully explained in Respondent's Brief (pp. 30-31), any error in the admission of the expert testimony was harmless. Indeed, as the Appellate Division correctly

---

[1] Notably, defendant did not raise this claim about the alleged evidence that defendant warned the victim not to tell anyone about the abuse in his briefs in the Appellate Division.

[2] The People's expert explained that blending occurs when a victim has undergone repetitive abuse, under similar circumstances, inflicted by the same abuser, in the same location, which causes the "blending" together of the victim's memories of the abusive events, resulting in an inability of the victim to recall specific peripheral details of the abuse, such as "dates and times" (Tr.: 662-663).

*People v. Gopaul*                                                                                         Page 5
Queens Ind. # 2065/2008

found, the evidence of defendant's guilt – including his written and videotaped confessions admitting that he had sexually abused the victim on multiple occasions and the testimony of defendant's wife, who actually testified as a defense witness, that defendant had confessed his guilt to her – was overwhelming. Accordingly, there was no significant probability that any error in admitting the expert testimony contributed to defendant's conviction. *People v. Crimmins,* 36 N.Y.2d 230, 242 (1975).

        In short, the Court of Appeals is without power to review one of defendant's arguments and, in any event, none of his claims raise any novel question of broad legal significance that would warrant further review by the Court of Appeals. Therefore, the People respectfully request that Your Honor deny defendant's application for leave to appeal in its entirety.

Sincerely,

Daniel Bresnahan
Assistant District Attorney
(718) 286-7046

cc:    Paul Skip Laisure, Esq.
       Appellate Advocates
       2 Rector Street
       New York, NY 10006

# State of New York
# Court of Appeals

BEFORE:  HON. VICTORIA A. GRAFFEO,
Associate Judge

---

THE PEOPLE OF THE STATE OF NEW YORK,

Respondent,

-against-

HAROLD GOPAUL,

Appellant.

**ORDER
DENYING
LEAVE**

---

Appellant having applied for leave to appeal to this Court pursuant to Criminal Procedure Law § 460.20 from an order in the above-captioned case;*

UPON the papers filed and due deliberation, it is

ORDERED that the application is denied.

Dated: March 21st , 2014

at Albany, New York

Victoria A. Graffeo
Associate Judge

*Description of Order: Order of the Appellate Division, Second Department, entered December 26, 2013, affirming a judgment of the Supreme Court, Queens County, rendered September 8, 2010, as amended September 10, 2010.