Proceedings

112

1    PROSPECTIVE JUROR:  No.  If there are other

2    witnesses, there is other evidence brought in, you have to

3    have an open mind.

4        MR. BANDELLI:  Does anybody feel that maybe that

5    doesn't feel right because I know if I were accused of

6    something, I would certainly want to get up?  I think you

7    are shaking your head.  No?  Miss McCarthy, I'm going to

8    focus on you anyway.  Do you feel comfortable with that

9    idea, that somebody, you know, can basically sit silently

10   and not say anything?

11       PROSPECTIVE JUROR:  I feel comfortable with it,

12   but I guess I would wonder why.  I would testify, but that's

13   just everybody has that right to make that choice, then

14   that's fine.

15       MR. BANDELLI:  I'm not trying to make you nervous.

16   I'm trying to -- again, I want to get this right.  Okay?

17   And so you would testify.  So, if you would testify, if you

18   felt like you had something to say, would you sort of

19   question why somebody wouldn't testify?  And I need you to

20   be honest here.  Don't say what you think we want to hear.

21   Say what you really think.

22       THE COURT:  Let me interrupt you, Mr. Bandelli.

23   That is third basic principle of law I stated.  I'll repeat

24   it.  If the defendant does not testify in his own behalf,

25   that's not a factor from which you can draw an inference

slf

Proceedings

1    unfavorable to him.  Anyone have a problem following that?

2                    PROSPECTIVE JUROR:  No.

3                    PROSPECTIVE JUROR:  No.  No.

4                    THE COURT:  The other thing is in life we like to

5    hear both sides of a story.  In the criminal justice system

6    it's not that way.  The ADA brings the accusation in the

7    form of the indictment, and he must prove that beyond a

8    reasonable doubt.  A lot of times in a criminal case you

9    won't hear from both sides.  Do you all understand that?

10                   PROSPECTIVE JUROR:  Yes.

11                   THE COURT:  The DA brings the charges.  He must

12   prove the charges.  The defendant doesn't have to do

13   anything.  Anyone have a problem with that?  Raise your

14   hand.  Go ahead, Mr. Bandelli.  You have another minute.

15                   MR. BANDELLI:  Don't just say yes because the

16   judge is telling you.

17                   THE COURT:  Mr. Bandelli.  Mr. Bandelli.

18                   MR. BANDELLI:  Yes, sir.  Yes, sir.

19                   THE COURT:  Ask questions --

20                   MR. BANDELLI:  Yes, sir.

21                   THE COURT:  -- that are proper to see if the

22   jurors are qualified.

23                   MR. BANDELLI:  Okay.

24                   THE COURT:  Don't make comments like that.

25                   MR. BANDELLI:  I have one more thing I want to go

Proceedings

1    over.  Don't be insulted if I call on you directly or didn't

2    acknowledge you.  There is no reason that I'm doing it other

3    than we have a short period, and we are trying to get

4    everything out.

5         Miss McCarthy, you said that you had relatives in

6    law enforcement.  You said your brother, while he was a

7    police officer, he works for the commissioner.

8         PROSPECTIVE JUROR:  Yes.

9         MR. BANDELLI:  There are going to be police

10   officers testifying in this case.  Does anybody here believe

11   that police officers always lie?

12        Does anybody believe that -- do you believe that

13   police officers never tell the truth?

14        PROSPECTIVE JUROR:  No.

15        MR. BANDELLI:  Does anybody believe that police

16   officers always tell the truth?  Do you believe that police

17   officers always tell the truth?

18        PROSPECTIVE JUROR:  No.

19        MR. BANDELLI:  Does anybody feel that way?  That

20   police officers always tell the truth?  Anybody?  Okay.

21        So, a police officer is just like anybody else.

22   When he or she gets on the witness stand, you use the same

23   rules to determine whether or not they are telling the truth

24   that you would as if it was any other civilian.  Yes?  Okay.

25        I want you to promise me if you are selected, you

Proceedings

1   will be fair and impartial to both sides in this case; that

2   you will listen closely and make a decision based on the

3   evidence, not based on your emotions.  Okay?

4           If at the end the People have failed to satisfy

5   their burden, have not proven guilt beyond a reasonable

6   doubt, you will be able to render a verdict of --

7   Miss Rudolph.

8           PROSPECTIVE JUROR:  Not guilty.

9           MR. BANDELLI:  Sir.

10          PROSPECTIVE JUROR:  Not guilty.

11          MR. BANDELLI:  Sir.

12          PROSPECTIVE JUROR:  Not guilty.

13          MR. BANDELLI:  Sir.

14          PROSPECTIVE JUROR:  Not guilty.

15          MR. BANDELLI:  Ma'am.

16          PROSPECTIVE JUROR:  Guilty.

17          MR. BANDELLI:  If they failed to prove beyond a

18  reasonable doubt.  I'm not trying to trick you.  Okay?

19          Can you say it?  If they fail to satisfy their

20  burden, what would the verdict be?

21          PROSPECTIVE JUROR:  Guilty.

22          MR. BANDELLI:  Guilty.  Okay.

23          Sir, if they fail to satisfy their burden of

24  proof.

25          PROSPECTIVE JUROR:  Not guilty.

Proceedings

1    MR. BANDELLI:  That's right.

2    Mr. Ramos.

3    PROSPECTIVE JUROR:  Not guilty.

4    MR. BANDELLI:  Miss Martinez.

5    PROSPECTIVE JUROR:  Not guilty.

6    MR. BANDELLI:  Sir.

7    PROSPECTIVE JUROR:  Not guilty.

8    MR. BANDELLI:  You have to speak up.

9    PROSPECTIVE JUROR:  Not guilty.

10   MR. BANDELLI:  There are a lot of people.  I'm not

11   trying to put you on the spot.

12   THE COURT:  Mr. Bandelli.

13   MR. BANDELLI:  I'm also done, Judge.

14   THE COURT:  Hurry up.

15   PROSPECTIVE JUROR:  Not guilty.

16   MR. BANDELLI:  What's that?

17   PROSPECTIVE JUROR:  Not guilty.

18   MR. BANDELLI:  Ma'am.

19   PROSPECTIVE JUROR:  Not guilty.

20   MR. BANDELLI:  Sir.

21   PROSPECTIVE JUROR:  Not guilty.

22   MR. BANDELLI:  Ma'am.

23   PROSPECTIVE JUROR:  Not guilty.

24   MR. BANDELLI:  Okay.  Miss McCarthy.

25   PROSPECTIVE JUROR:  Not guilty.

Proceedings

1              MR. BANDELLI:  Sir.

2              PROSPECTIVE JUROR:  Not guilty.

3              MR. BANDELLI:  Sir.

4              PROSPECTIVE JUROR:  Not guilty.

5              MR. BANDELLI:  Okay.  You didn't understand.  I

6    didn't mean to put you on the spot I apologize.

7              Thank you very much for your time and for your

8    patience and thank you.  Thank you.

9              (Pause in proceedings.)

10             (The following proceedings took place in the jury

11   room:)

12             THE COURT:  People, any challenge for cause

13   prospective jurors one through 12, up to and including

14   Urmrula Lackhan.

15             MR. ROSENBLATT:  No.

16             THE COURT:  Any challenge for cause?

17             MR. BANDELLI:  No, Judge.

18             THE COURT:  Any perempt, People, one through 12?

19             MR. ROSENBLATT:  Number four, Mr. Friedman.

20             THE COURT:  People challenge Ira Friedman,

21   prospective juror number four.

22             MR. ROSENBLATT:  Number nine, Mr. Fishtein.

23             THE COURT:  People challenge Andrew Fishtein,

24   prospective juror number nine.

25             MR. ROSENBLATT:  That's it.

slf

Proceedings

1      THE COURT:  Mr. Bandelli, any challenges up to and

2  including Urmrula Lackhan.

3      MR. BANDELLI:  Number one, Nancy Rudolph.

4      THE COURT:  Defense challenges prospective juror

5  number one.

6      MR. BANDELLI:  Number six.

7      THE COURT:  Pardon?

8      MR. BANDELLI:  Six, seven and eight.

9      THE COURT:  Defense challenges Kevin Pegram,

10  prospective juror number six; Robert Ramos, prospective

11  juror number seven; and Vanessa Martinez, prospective juror

12  number eight.

13      MR. BANDELLI:  We are going up to number 12?

14      THE COURT:  Twelve, yes.

15      MR. BANDELLI:  Number 11.

16      THE COURT:  Defense challenge Mary Helen McCarthy,

17  prospective juror number 11.

18      MR. BANDELLI:  That's it.

19      THE COURT:  Kevin Leong, Michael Falci, Carol

20  Mohammed, Justin Marks acceptable to both sides?

21      MR. ROSENBLATT:  Yes.

22      MR. BANDELLI:  Yes.

23      THE COURT:  They become jurors one through four.

24      People, any challenge for cause as to the

25  remaining five prospective jurors?  Cause challenge.

Proceedings

1              MR. ROSENBLATT:  No.

2              THE COURT:  Any cause challenge, Mr. Bandelli?

3              MR. BANDELLI:  No.

4              THE COURT:  Any perempt, People?

5              MR. ROSENBLATT:  Yes, Judge.  Eleven, Perez.

6              THE COURT:  That's 13.

7              MR. ROSENBLATT:  Thirteen, Perez.

8              THE COURT:  The People challenge prospective juror

9     number 13, Luis Perez.

10             MR. ROSENBLATT:  Fourteen, Polanco and 16, Lall.

11             THE COURT:  The People challenge Leidy Polanco,

12    prospective juror number 14, and Brian Lall, prospective

13    juror number 16.

14             Mr. Bandelli, any challenge as to Lackhan and

15    Pereira.

16             MR. ROSENBLATT:  I thought Lackhan was seated.  I

17    thought we did one through 12.

18             THE COURT:  You are right.  I'm sorry.  Urmrula

19    Lackhan is acceptable to both sides?

20             MR. ROSENBLATT:  Yes.

21             MR. BANDELLI:  Yes.

22             THE COURT:  That's juror number five.  I forgot to

23    pull his card.

24             Any challenge as to Gibson Pereira?

25             MR. BANDELLI:  No.

Proceedings

1          THE COURT:  Gibson Pereira is acceptable to both

2     sides?

3          MR. ROSENBLATT:  Yes.

4          MR. BANDELLI:  Yes.

5          THE COURT:  He becomes juror number six.  Okay.

6          MR. ROSENBLATT:  Can I bring up one thing about

7     that so-ordered subpoena now?

8          THE COURT:  What do you want to bring up?

9          MR. ROSENBLATT:  We can do it off the record.

10          THE COURT:  Go ahead.

11          (Discussion held off the record.)

12          (In open court).

13          THE CLERK:  Come to order, please.

14          The jurors seated in the jury box, will the

15     following six people please remain seated:

16          Kevin Leong, Michael Falci, Carl Mohammed, Justin

17     S. Marks, Urmrula M. Lackhan and Gibson S. Pereira.  You six

18     people remain seated.  Everybody else in the jury box return

19     to central jury now.

20          Okay.  Mr. Leong, move over one seat.  Mr. Falci,

21     seat number two.  Miss Mohammed, number three.  Mr. Marks,

22     number four.  Miss Lackhan, number five, and Mr. Pereira,

23     seat number six.

24          Our six selected jurors, please rise and raise

25     your right hand.

Proceedings

1      (Selected jurors sworn in by the clerk of the

2  court.)

3      (Selected and sworn jurors exit the courtroom.)

4      THE COURT:  Fill the jury box, please.

5      THE CLERK:  One again, jurors, if your name is

6  called, please follow the instructions of the sergeant.

7      Haran N. Ratna, H-a-r-a-n, middle initial N,

8  R-a-t-n-a, seat number one, please.

9      Elzbieta Gugala, E-l-z-b-i-e-t-a, last name

10 G-u-g-a-l-a, seat number two, please.

11     Linda Quatela, Q-u-a-t-e-l-a, seat number three,

12 please.

13     Wieda Effendy, W-i-e-d-a, last name E-f-f-e-n-d-y,

14 seat number four, please.

15     Jessica L. Santaromita, S-a-n-t-a-r-o-m-i-t-a,

16 seat number five, please.

17     Carol A. Napolitano, N-a-p-o-l-i-t-a-n-o, seat

18 number six, please.

19     Mindy F. Wilkes, W-i-l-k-e-s, seat number seven,

20 please.

21     William R. Ceja, C-e-j-a, seat number eight,

22 please.

23     Becky Uwadiae, U-w-a-d-i-a-e.  Becky Uwadiae.

24     Mark her absent, Judge.

25     Ann B. Jaworek, J-a-w-o-r-e-k, seat number nine,

slf

122
Proceedings

1          please.

2                    Salvatore A. Cusumano, C-u-s-u-m-a-n-o, seat

3          number ten, please.

4                    Sandra Kucuk, K-u-c-u-k, seat number 11, please.

5                    Caryn R. Gale, C-a-r-y-n, G-a-l-e, seat number 12,

6          please.

7                    Rony Abraham, R-o-n-y, A-b-r-a-h-a-m, seat number

8          13, please.

9                    Tamikia Williams, T-a-m-i-k-i-a, W-i-l-l-i-a-m-s,

10         seat number 14, please.

11                   Laurie B. Weiss, W-e-i-s-s, seat number 15.

12                   Jijay Gajagharsingh, J-i-j-a-y, last name

13         G-a-j-a-g-h-a-r-s-i-n-g-h, seat number 16, please.

14                   THE COURT:  Good morning, ladies and gentlemen.

15                   I hope you were paying attention because we are

16         basically going to review the same material that we did with

17         the first group.  I'm going to repeat those basic

18         principles.

19                   The defendant, as he is seated there, is presumed

20         innocent.  The DA has the burden to prove him guilty beyond

21         a reasonable doubt, and if the defendant decides not to

22         testify in his own behalf, that's not a factor from which

23         you can draw an inference unfavorable to him.

24                   Anyone have a problem understanding those?  Please

25         raise your hand.

slf

Proceedings

1      Anyone have a problem following those?  Raise your

2  hand.

3      As I said, if you become jurors, you become judges

4  of the facts, and I'm the judge of the law, and you must

5  accept the law as I give it to you throughout the case even

6  if you disagree with me.  Do you all understand that?  You

7  all took an oath, so you have to follow that.

8      Anyone here served as a juror before on a criminal

9  case?  Please raise your hand.

10      Is it Miss Effendy?

11      PROSPECTIVE JUROR:  Yes.

12      THE COURT:  How many years ago was it?

13      PROSPECTIVE JUROR:  Six years ago.

14      THE COURT:  Six years ago?

15      PROSPECTIVE JUROR:  Yes.

16      THE COURT:  Without telling me what it was, were

17  you able to reach a verdict?

18      PROSPECTIVE JUROR:  No.  It was a mistrial.

19      THE COURT:  A mistrial?

20      PROSPECTIVE JUROR:  Yes.

21      THE COURT:  Okay.  Thank you, and who else?

22      Miss Weiss.

23      PROSPECTIVE JUROR:  It was on the grand jury.

24      THE COURT:  On the grand jury?

25      PROSPECTIVE JUROR:  Yes.

Proceedings

1            THE COURT:  How many years ago?

2            PROSPECTIVE JUROR:  Over ten years ago.

3            THE COURT:  All right.  You understand this is a

4     different process.

5            PROSPECTIVE JUROR:  Yes.

6            THE COURT:  All right.  No problem with that,

7     right?

8            PROSPECTIVE JUROR:  No.

9            THE COURT:  Anyone else have their hand up?

10           Any of you been the victim of a crime?  Raise your

11    hand.  Do that one more time.

12           Miss Effendy, what happened to you?

13           PROSPECTIVE JUROR:  I got robbed.

14           THE COURT:  You got robbed?

15           PROSPECTIVE JUROR:  Yes.  Someone went to my home.

16           THE COURT:  They burglarized your house?

17           PROSPECTIVE JUROR:  Yes.

18           THE COURT:  About how many years ago?

19           PROSPECTIVE JUROR:  Four years ago.

20           THE COURT:  And did you call the police?

21           PROSPECTIVE JUROR:  Yes.

22           THE COURT:  Was anybody arrested?

23           PROSPECTIVE JUROR:  No.

24           THE COURT:  Okay.  This happened when nobody was

25    home, right?

Proceedings

1          PROSPECTIVE JUROR:  Nobody was home.

2          THE COURT:  All right.  I'm sure you would agree

3     with me that that has nothing to do with this case.

4          PROSPECTIVE JUROR:  Right.

5          THE COURT:  You could be fair to both sides?

6          PROSPECTIVE JUROR:  I'll try.

7          THE COURT:  What?

8          PROSPECTIVE JUROR:  I'll try.

9          THE COURT:  Well, if you have a problem, let me

10    know.  You see, you have to base your verdict only on the

11    evidence that you will see and hear in this courtroom

12    related to this case.  As I said before, we come into this

13    courtroom with various experiences, hopefully most of them

14    good, and some bad onces like when your house got

15    burglarized.  We don't expect you to forget about the bad

16    ones, but you have to place your memory of them aside and

17    base your verdict only on the evidence related to this case.

18    You will have no problem doing that; would you?

19          PROSPECTIVE JUROR:  No problem.

20          THE COURT:  Thank you.

21          Miss Napolitano, what happened to you?

22          PROSPECTIVE JUROR:  My house was burglarized, and

23    I had two cars stolen, and two weeks ago my car was smashed

24    while I was at work.

25          THE COURT:  That's annoying; isn't it?

Proceedings

126

1      PROSPECTIVE JUROR:  Very, and nobody saw anything.

2      THE COURT:  You heard what I just said to

3  Miss Effendy.  We don't expect you to forget about those.

4  Place your memory of them aside, and base your verdict only

5  on the evidence here; otherwise, it wouldn't be fair, and

6  you look like a fair person.  You would have no problem

7  doing that.

8      PROSPECTIVE JUROR:  No.

9      THE COURT:  Thank you, Miss Napolitano.

10     Miss Wilkes, what happened to you.

11     PROSPECTIVE JUROR:  (No response.)

12     THE COURT:  Come up.

13     (The following proceedings took place at

14  side-bar:)

15     THE COURT:  Are you okay?

16     PROSPECTIVE JUROR:  In the '90s I was followed

17  home on the train for over two years by a man who would

18  touch me on the train.

19     THE COURT:  Okay.  Take it easy.  This happened

20  how long ago?

21     PROSPECTIVE JUROR:  In the '90s, the early '90s,

22  and at that time the transit police and the regular police

23  were separated, so I tried to get the regular cops to

24  assist, and I couldn't get help.  They sent me to the

25  Transit police.

Proceedings

1           Over a year went by, and I finally got two

2     detectives who would follow me when I would leave work and

3     go home on the train, and they never actually caught the

4     guy.

5                THE COURT:  He did this more than once?

6                PROSPECTIVE JUROR:  For over two years.

7                THE COURT:  He did it for two years?

8                PROSPECTIVE JUROR:  Over two years.

9                THE COURT:  All right.  You look like you are very

10    upset.  I don't think you should sit on this case.

11               PROSPECTIVE JUROR:  It's the nature of --

12               THE COURT:  Okay.  Okay.

13               PROSPECTIVE JUROR:  Thank you.

14               THE COURT:  We are going to have you go over to

15    civil cases.

16               PROSPECTIVE JUROR:  That would be better, yes.

17               THE COURT:  Take it easy.  Please don't get upset.

18    I'm sorry to bring up a bad memory.

19               PROSPECTIVE JUROR:  Thank you.

20               THE COURT:  Miss Wilkes is excused consent of both

21    sides?

22               MR. ROSENBLATT:  Yes.

23               MR. BANDELLI:  Yes.

24               (In open court.)

25               THE COURT:  Fill that seat, please.

Proceedings

1          THE CLERK:  Robin G. Rosenberg, R-o-s-e-n-b-e-r-g,

2     seat number seven, please.

3          THE COURT:  Good afternoon, Miss Rosenberg.

4          PROSPECTIVE JUROR:  Good afternoon.

5          THE COURT:  Were you able to hear those three

6     basic principles?

7          PROSPECTIVE JUROR:  Yes.

8          THE COURT:  Any problem following them?

9          PROSPECTIVE JUROR:  No.

10         THE COURT:  Ever been the victim of a crime?

11         PROSPECTIVE JUROR:  Yes.

12         THE COURT:  What happened to you?

13         PROSPECTIVE JUROR:  My daughter had friends over

14    who brought friends.  I wasn't home.  When I came home, I

15    discovered money and jewelry missing.  The police were

16    called.  We went looking for two of the boys that the other

17    children thought did it.  Couldn't find either.

18    Miraculously my daughter's money resurfaced.  My jewelry was

19    gone.  These are children -- a lot of them were children

20    from the area from where the defendant is coming from.  She

21    went to the high school which is on Commonwealth.  So, this

22    whole thing -- I have a teenage daughter.  I'm not

23    comfortable with this.

24         THE COURT:  You are not comfortable with what?

25         PROSPECTIVE JUROR:  I'm not comfortable with a

Proceedings

1    case of --

2            THE COURT:  Come up here, Miss Rosenberg.

3            (The following proceedings took place at

4    side-bar:)

5            THE COURT:  What aren't you comfortable with?

6            PROSPECTIVE JUROR:  I have two children.  I'm a

7    single mother.  I have two children, 18 and 20 years old.

8    You stated this is about a teenager.  This comes too close

9    to home.  I'm Jewish.  I'm very protective of my daughters.

10   I don't think I could be fair and impartial.  I have been

11   through the court system for the last 12 years.

12           THE COURT:  Okay, Miss Rosenberg.  We are not

13   going to have you sit on this case, okay?  We are going to

14   have you sit on civil cases.

15           PROSPECTIVE JUROR:  Okay.

16           THE COURT:  Thank you for your honesty.

17           PROSPECTIVE JUROR:  Thank you.

18           THE COURT:  Civil cases.

19           Miss Rosenberg is excused consent of both sides?

20           MR. BANDELLI:  Absolutely.

21           MR. ROSENBLATT:  Yes, your Honor.

22           (In open Court).

23           THE COURT:  Fill that seat, please.

24           THE CLERK:  Valentin Andrei, V-a-l-e-n-t-i-n, last

25   name A-n-d-r-e-i, seat number seven, please.

Proceedings

1          THE COURT:  Good afternoon Mr. Andrei.

2          PROSPECTIVE JUROR:  Good afternoon, your Honor.

3          THE COURT:  Were you able to hear the three basic

4   principles?

5          PROSPECTIVE JUROR:  No problems.

6          THE COURT:  You didn't hear them?

7          PROSPECTIVE JUROR:  I heard them, yes.

8          THE COURT:  Any problem following them?

9          PROSPECTIVE JUROR:  No problems.

10          THE COURT:  Thank you, Mr. Andrei.

11          Have you ever served as a juror before,

12   Mr. Andrei?

13          PROSPECTIVE JUROR:  No.

14          THE COURT:  Ever been the victim of a crime?

15          PROSPECTIVE JUROR:  No.

16          THE COURT:  Okay.  You are all caught up.

17          Thank you, Mr. Andrei.

18          PROSPECTIVE JUROR:  Thank you, your Honor.

19          THE COURT:  Mr. Cusumano.

20          PROSPECTIVE JUROR:  Yes.  I had two cars robbed.

21   My garage was broken into and burglary of a house.

22          THE COURT:  Did you call the police on those

23   occasions?

24          PROSPECTIVE JUROR:  All three -- all four rather.

25          THE COURT:  Anybody arrested?

slf

131

Proceedings

1           PROSPECTIVE JUROR:  No.

2           THE COURT:  Okay, and as I said before, all we ask

3    is that you place your memory of those aside and base your

4    verdict only on the evidence here in this case because

5    otherwise it wouldn't be fair, and you look like a fair

6    person.  Do you have any problem doing that?

7           PROSPECTIVE JUROR:  None at all.

8           THE COURT:  Thank you, Mr. Cusumano.

9           Who else had their hand up in the back row?

10          Miss Gale.

11          PROSPECTIVE JUROR:  Yes.

12          THE COURT:  What happened to you, ma'am?

13          PROSPECTIVE JUROR:  I was attacked in a subway.

14          THE COURT:  You were attached?

15          PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Come up, Miss Gale.

17          (The following proceedings took place at

18   side-bar:)

19          THE COURT:  What happened to you in the subway?

20          PROSPECTIVE JUROR:  I was getting off the subway.

21   I was at kind of a dead end of the subway.

22          THE COURT:  What station was this?

23          PROSPECTIVE JUROR:  23 Street on the E line.

24          THE COURT:  Down in Long Island City?  In

25   Manhattan?

slf

Proceedings

1      PROSPECTIVE JUROR:  In Manhattan.  23rd in

2   Manhattan, and a man was standing, there and he just

3   attacked me, and I screamed, and I was lucky because

4   somebody ran down, and the guy got away.

5      THE COURT:  All right.  Did you wind up going to

6   the hospital?

7      PROSPECTIVE JUROR:  The police came, and I mean I

8   was bruised, but I didn't really need any medical attention.

9      I actually have another issue with this case

10   because I had a relative who sexually molested me when I was

11   a teenager.  You know, it's kind of two-fold.

12      THE COURT:  I'm sorry to bring back a bad memory.

13      So, you couldn't be fair in this case.

14      PROSPECTIVE JUROR:  I would want to be, but I

15   don't know.  I don't know.

16      THE COURT:  We are going to have you sit on civil

17   cases only.  Okay?

18      PROSPECTIVE JUROR:  Say that again.

19      THE COURT:  We are going to have you sit on civil

20   cases only so you don't have to listen to any criminal

21   cases.  Sorry to bring up bad memories.  Have a nice day.

22      PROSPECTIVE JUROR:  Thank you.

23      THE COURT:  Prospective juror Miss Gale is excused

24   consent of both sides?

25      MR. ROSENBLATT:  Yes.

Proceedings

1          MR. BANDELLI:  Yes.

2          (In open court).

3          THE COURT:  Fill that seat, please.

4          THE CLERK:  Kenneth L. Sauer, S-a-u-e-r, seat

5     number 12, please.

6          THE COURT:  All settled in there, Mr. Sauer?

7          PROSPECTIVE JUROR:  I'm sorry.  Okay.

8          THE COURT:  Were you able to hear the three basic

9     principles?

10         PROSPECTIVE JUROR:  Yes.

11         THE COURT:  Any problem following them?

12         PROSPECTIVE JUROR:  No.

13         THE COURT:  Ever been on a jury before?

14         PROSPECTIVE JUROR:  Civil.

15         THE COURT:  Okay.  Have you ever been the victim

16    of a crime?

17         PROSPECTIVE JUROR:  Yes.

18         THE COURT:  What happened to you?

19         PROSPECTIVE JUROR:  I had a car stolen.  It had

20    LoJack.  I got it back.  The guys got arrested.

21         THE COURT:  Very good.  You are all caught up.

22         You could be fair to both sides, correct?

23         PROSPECTIVE JUROR:  Yes.

24         THE COURT:  Thank you.

25         Miss Weiss, did you have your hand up?

134

Proceedings

1    PROSPECTIVE JUROR:  Yes.  I had a car stolen.

2    THE COURT:  All right.  That wouldn't give you a

3    problem sitting as a fair juror here; would it?

4    PROSPECTIVE JUROR:  No.

5    THE COURT:  Good.  All right.

6    Now, you heard me tell the lawyers that they can't

7    go into the facts of the case, but due to the nature of the

8    charges, these charges involve a sexual nature, and the

9    victim is a family member.

10   Anyone have a problem because of the nature of

11   those charges?  Raise your hand.

12   Mr. Ratna, come up.

13   (The following proceedings took place at

14   side-bar:)

15   THE COURT:  What's the problem you have?

16   PROSPECTIVE JUROR:  Well, I'm very like family

17   oriented.  So, like just the fact that he has been accused

18   of molesting a family member doesn't sit right with me.

19   Like a couple of other things.  Like, I've known a

20   couple of girls who have been taken advantage of sexually

21   and have gone to counseling.  I've seen how at first it

22   affected their lives, and I also work with children in

23   daycare for handicapped kids, and so --

24   THE COURT:  So, you are telling me you can't be

25   fair in this case.

slf

135

Proceedings

```
 1                PROSPECTIVE JUROR:  I don't think so.

 2                THE COURT:  All right.  We will have you sit on

 3        civil cases only.  Okay?  Thank you for your honesty,

 4        Mr. Ratna.

 5                Mr. Ratna is excused consent of both sides?

 6                MR. ROSENBLATT:  Yes, your Honor.

 7                MR. BANDELLI:  Yes.

 8                THE COURT:  Miss Gugala, you have a problem,

 9        ma'am?

10                PROSPECTIVE JUROR:  Yes, I have a problem.

11                THE COURT:  What is that?

12                PROSPECTIVE JUROR:  I was sexually abused when I

13        was a child.

14                THE COURT:  I'm sorry.

15                So you couldn't be fair in this case?

16                PROSPECTIVE JUROR:  I don't want to be here.

17                THE COURT:  Okay.  Sorry to bring up a bad memory.

18        We are going to have you sit on civil cases only.

19                PROSPECTIVE JUROR:  Okay.  Thank you.

20                THE COURT:  Miss Gugala is excused consent of both

21        sides?

22                MR. BANDELLI:  Yes.

23                MR. ROSENBLATT:  Yes.

24                THE COURT:  Miss Napolitano, you have a problem

25        with the nature of these charges?
```

slf

Proceedings

1        PROSPECTIVE JUROR:  Yeah.  I find sexual --

2        THE COURT:  You what?

3        PROSPECTIVE JUROR:  I find abuse of children very

4   upsetting and disturbing to me.  I was up all night

5   stressing over having to be on this jury.  I've been working

6   with children for the past 26 years.  The courses I had to

7   take and the periodicals I had to read dealing with sexual

8   abuse, and it's something that children find very hard to

9   deal with and come forward with, and the majority of the

10  cases it's, you know, this has really happened to them.

11  It's not something they are making up when they have the

12  courage to come forward with it.

13       THE COURT:  So, you are telling me you can't be

14  fair because of your job?

15       PROSPECTIVE JUROR:  I don't think so.

16       THE COURT:  Pardon me?

17       PROSPECTIVE JUROR:  I don't think so.

18       THE COURT:  All right.  I appreciate your honesty.

19  I'm sorry to get you upset.  We will have you sit on civil

20  cases only.

21       PROSPECTIVE JUROR:  Thank you.

22       THE COURT:  Thank you, Miss Napolitano.

23       Miss Napolitano excused consent of both sides?

24       MR. ROSENBLATT:  Yes.

25       MR. BANDELLI:  Yes.

Proceedings

1          THE COURT:  Miss Jaworek, you have a problem

2     sitting on this case?

3          PROSPECTIVE JUROR:  When I was 13 I was taken

4     advantage of by one of my friends that was a male.  He was

5     older than me, and nothing had happened.  I got out of the

6     situation, but this just bothers me.

7          THE COURT:  All right.  I'm sorry to bring up a

8     bad memory.

9          Based on that, you couldn't be fair in this case?

10         PROSPECTIVE JUROR:  It just scares me.  I don't

11    want to hear it.

12         THE COURT:  Okay.  We are going to have you sit on

13    civil cases.  Okay?

14         PROSPECTIVE JUROR:  Okay.

15         THE COURT:  I'm sorry to get you upset.  Just

16    follow the instruction of the court officer.  Have a good

17    day, ma'am.

18         Prospective juror Miss Jaworek is excused consent

19    of both sides?

20         MR. ROSENBLATT:  Yes.

21         MR. BANDELLI:  Yes.

22         THE COURT:  Mr. Abraham, what did you say?

23         PROSPECTIVE JUROR:  Is he a sexual predator?  I

24    live ten blocks away.  This is concerning about the distance

25    from where he lives to my place.

Proceedings

1    THE COURT:  Do you listen when I talk?  I said he

2    is presumed innocent.

3            PROSPECTIVE JUROR:  Yeah.

4            THE COURT:  You haven't heard any evidence.

5            Is there anything about the nature of these

6    charges that would prevent you from being fair?

7            PROSPECTIVE JUROR:  I can try to be fair.

8            THE COURT:  Well, is it because it's close to

9    where you live?

10           PROSPECTIVE JUROR:  Yeah.

11           THE COURT:  Does that make you afraid?

12           PROSPECTIVE JUROR:  Sort of like I have a lot of

13   nieces and nephews.

14           THE COURT:  So, you think you could not be fair

15   because it's near your neighborhood?

16           PROSPECTIVE JUROR:  I would be thinking of them,

17   but I could try to be fair as possible.

18           THE COURT:  Well, the fact it's near your house,

19   do you think you would have a problem being fair?

20           PROSPECTIVE JUROR:  No.  I mean yeah.  Well, yeah,

21   I can be fair.  Sorry.

22           THE COURT:  Would you be overprotective because

23   it's near your house?

24           PROSPECTIVE JUROR:  I might be a little, yeah.

25           THE COURT:  We are going to excuse are from this

Proceedings

1    case, okay?  Civil cases.

2              PROSPECTIVE JUROR:  Okay.

3              THE COURT:  Have a good day, Mr. Abraham.

4    Mr. Abraham is excused consent of both sides?

5              MR. ROSENBLATT:  Yes.

6              MR. BANDELLI:  Yes.

7              (In open court.)

8              THE COURT:  Fill those five seats, please.

9              THE CLERK:  Fernando Rodas, R-o-d-a-s, seat number

10   one, please.

11             Shakeen L. Johnson, S-h-a-k-e-e-n, last name

12   J-o-h-n-s-o-n, seat number two, please.

13             Nicole A. Alonzo, A-l-o-n-z-o, seat number six,

14   please.

15             Mahbub Ahmed, M-a-h-b-u-b, last name A-h-m-e-d,

16   seat number nine, please.

17             Flores J. Chabalik, C-h-a-b-a-l-i-k, seat number

18   13, please.

19             THE COURT:  The five prospective jurors that just

20   came into the jury box, Mr. Rodas, Mr. Johnson, Miss Alonzo,

21   Mr. Ahmed and Miss Chabalik, did you all of you hear those

22   three basic principles of law?

23             PROSPECTIVE JUROR:  Yes.

24             PROSPECTIVE JUROR:  Yes.

25             PROSPECTIVE JUROR:  Yes.

Proceedings

1                   PROSPECTIVE JUROR:  Yes.

2                   PROSPECTIVE JUROR:  Yes.

3                   THE COURT:  Any of you have a problem following

4          them?

5                   PROSPECTIVE JUROR:  No.

6                   PROSPECTIVE JUROR:  No.

7                   PROSPECTIVE JUROR:  No.

8                   PROSPECTIVE JUROR:  No.

9                   PROSPECTIVE JUROR:  No.

10                  THE COURT:  Any of you been the victim of crime?

11         Raise your hand.

12                  None of you have been the victim of a crime.

13         Good.

14                  Any of you served as a juror before in a criminal

15         case?

16                  Miss Chabalik, about how many years ago?

17                  PROSPECTIVE JUROR:  Six.

18                  THE COURT:  And without telling me what it was,

19         were you able to reach a verdict?

20                  PROSPECTIVE JUROR:  Yes.

21                  THE COURT:  Were you satisfied with that verdict?

22                  PROSPECTIVE JUROR:  Yes.

23                  THE COURT:  What was the charge in that case?  Do

24         you remember?

25                  PROSPECTIVE JUROR:  It was a burglary.

slf

Proceedings

141

1          THE COURT:  A burglary?

2          PROSPECTIVE JUROR:  Yes.

3          THE COURT:  Okay, and you heard the nature of the

4     charges here.  Anyone have a problem sitting on this case

5     due to the nature of the charges?  Raise your hand.

6          Mr. Johnson, come up, please.

7          (The following proceedings took place at

8     side-bar:)

9          THE COURT:  What problem do you have, Mr. Johnson?

10         PROSPECTIVE JUROR:  Well, I have an 11 year old

11    daughter, and I'm currently in Family Court.  Her mother

12    remarried, and I'm having problems with the step-dad, sort

13    of similar.  So, listening to this case like angers me.

14         THE COURT:  So, you are telling me you couldn't be

15    fair --

16         PROSPECTIVE JUROR:  No.

17         THE COURT:  -- based upon what you are going

18    through yourself?

19         PROSPECTIVE JUROR:  Yes.

20         THE COURT:  All right.  I appreciate your honesty.

21    I'm going to have you sit on civil cases.  Good luck with

22    your situation, Mr. Johnson.

23         PROSPECTIVE JUROR:  Thank you.

24         THE COURT:  Civil cases.

25         Prospective juror Mr. Johnson is excused consent

slf

Proceedings

1    of both sides?

2                    MR. ROSENBLATT:  Yes.

3                    MR. BANDELLI:  Yes.

4                    THE COURT:  Miss Alonzo, what problem do you have,

5    Miss Alonzo?

6                    PROSPECTIVE JUROR:  This past year I was sexually

7    harassed by one of my bosses at work.

8                    THE COURT:  Okay.  You are telling me you couldn't

9    be fair in this case?

10                   PROSPECTIVE JUROR:  Yes.

11                   THE COURT:  I'm going to have you sit on civil

12   cases only, okay?

13                   PROSPECTIVE JUROR:  Thank you.

14                   THE COURT:  Thank you, Miss Alonzo.

15                   Prospective juror Miss Alonzo is excused consent

16   of both sides?

17                   MR. ROSENBLATT:  Yes.

18                   MR. BANDELLI:  Yes.

19                   THE COURT:  Miss Gajagharsingh.

20                   PROSPECTIVE JUROR:  Hi.  I just concerned.  I'm an

21   X ray technician.

22                   THE COURT:  A what?

23                   PROSPECTIVE JUROR:  X ray technologist, and I have

24   seen --

25                   THE COURT:  You work in a hospital?

Proceedings

1                PROSPECTIVE JUROR:  Yes, and we have seen a lot of

2       child abuse cases come over to us, and I have been there to

3       X ray them.  So, I don't know if this is going to make, you

4       know --

5                THE COURT:  If it's going to what?

6                PROSPECTIVE JUROR:  If it's going to have me --

7                THE COURT:  There is no X rays involved here.

8                PROSPECTIVE JUROR:  Okay.  Okay.  It's just my

9       concern.

10               THE COURT:  You would have no problem being fair

11      here; would you?

12               PROSPECTIVE JUROR:  No.

13               THE COURT:  Okay.  Are you looking to go back to

14      work?  Is that what you are trying to do?

15               PROSPECTIVE JUROR:  No.

16               THE COURT:  Okay.  Thank you for bringing that to

17      our attention.

18               (In open court.)

19               THE COURT:  Fill those two seats, please.

20               THE CLERK:  Jasmine N. Tillman, T-i-l-l-m-a-n,

21      please take seat number two.

22               Arthur Luk, L-u-k, please take seat number six.

23               THE COURT:  Thank you.

24               Good afternoon, Miss Tillman and Mr. Luk.  Both of

25      you hear those three basic principles I related?

Proceedings

1        PROSPECTIVE JUROR:  Yes.

2        THE COURT:  Do either of you have a problem

3   following them?

4        PROSPECTIVE JUROR:  No.

5        THE COURT:  Either of you been the victim of a

6   crime?

7        PROSPECTIVE JUROR:  Yes.

8        THE COURT:  What happened to you?

9        PROSPECTIVE JUROR:  My house was broken into.

10       THE COURT:  Your house was broken into?

11       PROSPECTIVE JUROR:  Yes.

12       THE COURT:  How many years ago?

13       PROSPECTIVE JUROR:  Three years ago.

14       THE COURT:  Were the police called?

15       PROSPECTIVE JUROR:  Yes.

16       THE COURT:  Anyone arrested?

17       PROSPECTIVE JUROR:  No.

18       THE COURT:  That wouldn't give you a problem

19   sitting as a fair juror here; would it?

20       PROSPECTIVE JUROR:  No.

21       THE COURT:  Did you say you were the victim of a

22   crime?

23       PROSPECTIVE JUROR:  No.

24       THE COURT:  You heard the nature of the charges

25   here.  Do you have a problem with that?

Proceedings

1            PROSPECTIVE JUROR:  No.

2            PROSPECTIVE JUROR:  No.

3            THE COURT:  Either of you served as a juror

4    before?

5            PROSPECTIVE JUROR:  No.

6            PROSPECTIVE JUROR:  No.

7            THE COURT:  Okay.  You are all caught up.

8            Anyone here in the jury box or anyone close to you

9    ever been arrested or accused of a crime?  Either you or

10   anyone close to you, whether it's a close relative or a

11   friend, been arrested or accused of a crime.  Please raise

12   your hand.

13           Miss Tillman, come up, please.

14           (The following proceedings took place at

15   side-bar:)

16           THE COURT:  Who do you know that was arrested?

17           PROSPECTIVE JUROR:  Two of my cousins.

18           THE COURT:  Two of your cousins?

19           PROSPECTIVE JUROR:  Yes.

20           THE COURT:  How long ago?

21           PROSPECTIVE JUROR:  A few years ago.

22           THE COURT:  Were they arrested together?

23           PROSPECTIVE JUROR:  No.  Separately.

24           THE COURT:  Okay, and are these male or female?

25           PROSPECTIVE JUROR:  Male.

Proceedings

1          THE COURT:  Okay.  What were the charges?

2          PROSPECTIVE JUROR:  One of them was a weapon.  I

3    don't remember the other one.

4          THE COURT:  All right.  What happened to the

5    cousin that was charged with a weapon?

6          PROSPECTIVE JUROR:  He was in jail for like a few

7    years.

8          THE COURT:  A few years.

9          PROSPECTIVE JUROR:  The other one was in jail for

10   like over ten years.

11         THE COURT:  Ten years.

12         You don't remember what the charge was?

13         PROSPECTIVE JUROR:  No.

14         THE COURT:  Did you ever visit him in prison?

15         PROSPECTIVE JUROR:  No.

16         THE COURT:  Visit the other cousin in prison?

17         PROSPECTIVE JUROR:  No.

18         THE COURT:  The cousin that was charged with a

19   weapon, do you know if he was arrested inside a car or out

20   on the street?

21         PROSPECTIVE JUROR:  I really don't know.

22         THE COURT:  You are not that close to the cousin?

23         PROSPECTIVE JUROR:  No.  I just heard.

24         THE COURT:  Okay.  Do you know if they went to

25   trial or if they pled guilty?

147
Proceedings

1       PROSPECTIVE JUROR:  I don't know.  I know one of

2   them really got out of jail.

3       THE COURT:  How is he doing now?

4       PROSPECTIVE JUROR:  He is doing well.  He is in

5   school.

6       THE COURT:  Have you seen him since he got out?

7       PROSPECTIVE JUROR:  Yes.

8       THE COURT:  He is doing good?

9       PROSPECTIVE JUROR:  Yes.

10      THE COURT:  Did he ever talk about what he was

11  charged with?

12      PROSPECTIVE JUROR:  No.  He doesn't talk about

13  that, at least not with me.

14      THE COURT:  Any bad feelings towards the Police

15  Department or DA's office what happened to your cousins?

16      PROSPECTIVE JUROR:  No.

17      THE COURT:  Okay.  Can you be fair in this case?

18      PROSPECTIVE JUROR:  Yes.

19      THE COURT:  Take your seat.  Thank you.

20      Miss Kucuk, who do you know that was arrested?

21      PROSPECTIVE JUROR:  My brother.

22      THE COURT:  How long ago?

23      PROSPECTIVE JUROR:  Eight years ago.

24      THE COURT:  And what was he charged with?

25      PROSPECTIVE JUROR:  He got into a fight, and they

Proceedings

1    just -- the detective came and took him the next day at his

2    house.

3                THE COURT:  What precinct?

4                PROSPECTIVE JUROR:  In Forest Hills.  Austin

5    Street.

6                THE COURT:  Who did he have a fight with?

7                PROSPECTIVE JUROR:  It was so long ago.  It was

8    some kids.  He was like 18.

9                THE COURT:  Okay.  Did you talk to him about it?

10                PROSPECTIVE JUROR:  My parents did.

11                THE COURT:  I guess he won the fight.

12                PROSPECTIVE JUROR:  It was back in high school,

13    Forest Hills.

14                THE COURT:  What happened to his case?

15                PROSPECTIVE JUROR:  It got dropped because he had

16    no charges against him.

17                THE COURT:  Did he spend the night in jail?

18                PROSPECTIVE JUROR:  Yes.

19                THE COURT:  That was it?

20                PROSPECTIVE JUROR:  That was it.

21                THE COURT:  Okay.  Any bad feelings towards the

22    criminal justice system?

23                PROSPECTIVE JUROR:  No.

24                THE COURT:  You think he was treated fairly or

25    unfairly?

Proceedings

1          PROSPECTIVE JUROR:  My boyfriend is a police

2     officer.  His brother is a police officer.  His uncle is a

3     retired police officer, and I feel strongly against that

4     like I would believe a police officer over a criminal or a

5     suspect.

6          THE COURT:  I asked if you thought your brother

7     was treated fairly.  What does that have to do with all of

8     the cops in the family?

9          PROSPECTIVE JUROR:  I just figured I would tell

10    you.

11         THE COURT:  You figured you don't want to sit on

12    this case.

13         PROSPECTIVE JUROR:  No.  I figured I would let you

14    know now.

15         THE COURT:  So, you couldn't follow my instruction

16    on how to evaluate a police officer's testimony.

17         PROSPECTIVE JUROR:  I would believe a police

18    officer.  They are sworn in and not supposed to lie.

19         THE COURT:  Okay.  We are going to have you sit on

20    civil cases.  Okay?

21         PROSPECTIVE JUROR:  Okay.

22         THE COURT:  Thank you for your honesty.

23         Miss Kucuk is excused consent of both sides?

24         MR. ROSENBLATT:  Yes.

25         MR. BANDELLI:  Yes.

150

Proceedings

1    THE COURT:  Miss Williams, come up.  How are you?

2    PROSPECTIVE JUROR:  Fine.

3    THE COURT:  Who do you know that was arrested.

4    PROSPECTIVE JUROR:  I didn't raise my hand.

5    THE COURT:  Anyone else raise their hand in the

6    back?  Sorry.

7    PROSPECTIVE JUROR:  The person next to me.

8    THE COURT:  Come up, Miss Weiss.  Who do you know

9    that was arrested?

10   PROSPECTIVE JUROR:  A cousin of mine.

11   THE COURT:  How long ago?

12   PROSPECTIVE JUROR:  A number of years ago.  I

13   don't know exactly when.

14   THE COURT:  What was he charged with?

15   PROSPECTIVE JUROR:  White collar.  Some sort of

16   white collar crime.

17   THE COURT:  What happened to his case?

18   PROSPECTIVE JUROR:  It was something to do with

19   the Department of Labor.

20   THE COURT:  What happened to his case?  Did he

21   wind up --

22   PROSPECTIVE JUROR:  Yes, he was --

23   THE COURT:  He went to prison?

24   PROSPECTIVE JUROR:  Yes, he did serve.

25   THE COURT:  How long did he go to prison for?

Proceedings

1          PROSPECTIVE JUROR:  Maybe about three years.

2          THE COURT:  Was that in New York?

3          PROSPECTIVE JUROR:  Yes.

4          THE COURT:  Was that prosecuted by the federal

5   government?

6          PROSPECTIVE JUROR:  I don't know exactly.  It was

7   the Department of Labor.  Something to do with them.

8          THE COURT:  Do you know if he went to trial or did

9   he plead guilty?

10          PROSPECTIVE JUROR:  He pled guilty.

11          THE COURT:  He pled guilty?

12          PROSPECTIVE JUROR:  Yes.

13          THE COURT:  He is out of prison now?

14          PROSPECTIVE JUROR:  Excuse me?

15          THE COURT:  He is out of prison now?

16          PROSPECTIVE JUROR:  Yes, he is.

17          THE COURT:  Did you visit him in prison?

18          PROSPECTIVE JUROR:  No.  I was much younger.

19          THE COURT:  Not a close cousin.

20          PROSPECTIVE JUROR:  Yeah, he is a close cousin,

21   but I really didn't know all of the details about it, you

22   know.

23          THE COURT:  Okay.  Anything about that would

24   give you a problem sitting as a fair juror here?

25          PROSPECTIVE JUROR:  No.

Proceedings

 1           THE COURT:  You can be fair to both sides?

 2           PROSPECTIVE JUROR:  Excuse me?

 3           THE COURT:  You can be fair to both sides?

 4           PROSPECTIVE JUROR:  Yes.

 5           THE COURT:  Thank you, Miss Weiss.

 6           Mr. Ahmed, what is the problem?

 7           PROSPECTIVE JUROR:  I can't understand English

 8   very much.

 9           THE COURT:  You what?

10           PROSPECTIVE JUROR:  I cannot understand English

11   very much.

12           THE COURT:  Okay.  How long have you been in the

13   country?

14           PROSPECTIVE JUROR:  Almost six years.

15           THE COURT:  Six years.

16           Are you working?

17           PROSPECTIVE JUROR:  Yeah.

18           THE COURT:  What do you do?

19           PROSPECTIVE JUROR:  Cab trip.

20           THE COURT:  What?

21           PROSPECTIVE JUROR:  Drive a cab.

22           THE COURT:  Off the record.

23           (Discussion held off the record.)

24           THE COURT:  What kind of a cab do you drive?

25           PROSPECTIVE JUROR:  Yellow.

Proceedings

1    THE COURT:  It's very important in a criminal case

2    that a juror understands English a hundred percent.

3    PROSPECTIVE JUROR:  Which I can't understand.

4    THE COURT:  So, I appreciate you being a good

5    citizen and coming in for jury duty, but we are going to

6    excuse you from jury duty.  Okay?

7    PROSPECTIVE JUROR:  Okay.

8    THE COURT:  Do you understand that?

9    PROSPECTIVE JUROR:  I go home?  No more?

10   THE COURT:  Off the record.

11   (Discussion held off the record.)

12   THE COURT:  Mr. Ahmed is excused consent of both

13   sides?

14   MR. ROSENBLATT:  Yes.

15   MR. BANDELLI:  Yes.

16   (In open court.)

17   THE COURT:  Fill those two seats, please.

18   THE CLERK:  Mary D Muzio, M-u-z-i-o, seat number

19   nine, please.

20   Ezra Owstfeld, O-w-s-t-f-e-l-d, seat number 11,

21   please.

22   THE COURT:  Good afternoon, Miss Muzio.

23   PROSPECTIVE JUROR:  Good afternoon.

24   THE COURT:  And Mr. Owstfeld.

25   PROSPECTIVE JUROR:  Good afternoon.

Proceedings

1          THE COURT:  Both of you heard the three basic

2     principles?

3          PROSPECTIVE JUROR:  Yes.

4          PROSPECTIVE JUROR:  Yes.

5          THE COURT:  Any problem following them?

6          PROSPECTIVE JUROR:  No.

7          PROSPECTIVE JUROR:  No.

8          THE COURT:  Ever served as a juror before on a

9     criminal case?

10         PROSPECTIVE JUROR:  No.

11         PROSPECTIVE JUROR:  No.

12         THE COURT:  Ever been the victim of a crime?

13         PROSPECTIVE JUROR:  No.

14         PROSPECTIVE JUROR:  Yes.  Car stolen.

15         THE COURT:  You would have no problem being fair

16    here; would you?

17         PROSPECTIVE JUROR:  No.

18         THE COURT:  Any problems sitting on this case due

19    to the nature of the charges?

20         Come up, Miss Muzio.

21         (The following proceedings took place at

22    side-bar:)

23         PROSPECTIVE JUROR:  Being a grandparent and having

24    teenage nieces, it would be difficult for me to listen to

25    this testimony.

155

Proceedings

1          THE COURT:  It's difficult for everybody.

2          PROSPECTIVE JUROR:  I know.

3          THE COURT:  Do you think that would affect your

4   ability to be fair?

5          PROSPECTIVE JUROR:  It would be difficult.

6          THE COURT:  Well, what are you telling me?

7          PROSPECTIVE JUROR:  I'm going to tell you the

8   truth.  If it was my daughter and the facts weren't true, I

9   would never have to put her through this situation.  So, I

10  feel, you know, that there was a problem here.

11         THE COURT:  You are telling me you can't be fair

12  on this case?

13         PROSPECTIVE JUROR:  Probably.

14         THE COURT:  All right.  We are going to have you

15  sit on civil cases.  Thank you, Miss Muzio.

16         Prospective juror Miss Muzio is excused consent of

17  both sides?

18         MR. ROSENBLATT:  Yes.

19         MR. BANDELLI:  Yes.

20         (In open court.)

21         THE COURT:  Fill that seat, please.

22         THE CLERK:  Lauren M. Adrabma, A-d-r-a-b-m-a, seat

23  number nine, please.

24         THE COURT:  Good afternoon, Miss Adrabma.  How are

25  you today?

slf

Proceedings

1          PROSPECTIVE JUROR:  Good.

2          THE COURT:  Were you able to hear the three basic

3     principles?

4          PROSPECTIVE JUROR:  Yes.

5          THE COURT:  Any problem following them?

6          PROSPECTIVE JUROR:  No.

7          THE COURT:  Any problem with the nature of the

8     charges?

9          PROSPECTIVE JUROR:  No.

10         THE COURT:  Have you ever served as a juror before

11    on a criminal case?

12         PROSPECTIVE JUROR:  No.

13         THE COURT:  Ever been the victim of a crime?

14         PROSPECTIVE JUROR:  No.

15         THE COURT:  Have you and you, Mr. Owstfeld, or

16    anyone close to you ever been arrested or accused of a

17    crime?

18         PROSPECTIVE JUROR:  No.

19         PROSPECTIVE JUROR:  No.

20         THE COURT:  Good.  You are all caught up.

21         Next question.  Anyone here in the jury box or

22    anyone close to you have a job working in law enforcement?

23    That is police officer, court officer, correction officer.

24    Anyone here or anyone close to you have jobs like that?

25    Please raise your hand.  Thank you.

slf

Proceedings

1        Miss Tillman, who do you know?

2        PROSPECTIVE JUROR:  One of my cousins is a police

3    officer, and another one is a correction officer at Riker's.

4        THE COURT:  Do you know where your cousin the

5    police officer works?

6        PROSPECTIVE JUROR:  In Brooklyn.

7        THE COURT:  In Brooklyn?

8        PROSPECTIVE JUROR:  Yes.

9        THE COURT:  You heard why I asked that question.

10   Do you have any problem following my instructions on the law

11   and how to listen to a police officer's testimony?

12       PROSPECTIVE JUROR:  No.

13       THE COURT:  Good.  Thank you, Miss Tillman.

14       Miss Santaromita, who do you know?

15       PROSPECTIVE JUROR:  My brother is a retired NYPD

16   captain and my brother-in-law is a retired police officer,

17   also.

18       THE COURT:  All right.  Where did your brother

19   work?

20       PROSPECTIVE JUROR:  In headquarters.

21       THE COURT:  Okay, and when did he retire?

22       PROSPECTIVE JUROR:  About three years ago.

23       THE COURT:  All right.  I'm sure you could tell

24   the rest of the jurors that a police officer is just as

25   human as anyone in this courtroom.

158

Proceedings

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  You have no problem following my

3     instructions; would you?

4          PROSPECTIVE JUROR:  No.

5          THE COURT:  You would be able to judge a police

6     officer's testimony the same as a civilian?

7          PROSPECTIVE JUROR:  Yes.

8          THE COURT:  Thank you.

9          Mr. Owstfeld, who do you know?

10          PROSPECTIVE JUROR:  My brother works for the FBI.

11          THE COURT:  Is he an agent?

12          PROSPECTIVE JUROR:  No, he is an analyst.

13          THE COURT:  Pardon me?

14          PROSPECTIVE JUROR:  He is an analyst.

15          THE COURT:  Okay.  You would have no problem

16     following my instructions; would you?

17          PROSPECTIVE JUROR:  No problem.

18          THE COURT:  Mr. Cusumano.

19          PROSPECTIVE JUROR:  I have quite a few friends who

20     are police officers.  You know, I grew up with a court

21     officer and police officers.

22          THE COURT:  Okay.  You would have no problem

23     following my instructions; would you?

24          PROSPECTIVE JUROR:  No.

25          THE COURT:  Thank you.

Proceedings

1          Anyone else have their hand up?

2          Now, we come to your background questions.  I'm

3    going to ask you all the same questions as I did the first

4    group.  By the time I get to you, Miss Santaromita, you will

5    have all of the information and so will everyone else after

6    you.

7          Mr. Rodas, what part of Queens do you live in?

8          PROSPECTIVE JUROR:  Sunnyside.

9          THE COURT:  How long have you lived in Sunnyside?

10         PROSPECTIVE JUROR:  For about a year.

11         THE COURT:  Where did you live before that?

12         PROSPECTIVE JUROR:  Manhattan.

13         THE COURT:  How long did you live in Manhattan.

14         PROSPECTIVE JUROR:  For a year.

15         THE COURT:  Pardon me?

16         PROSPECTIVE JUROR:  For a year.

17         THE COURT:  Where did you live before that?

18         PROSPECTIVE JUROR:  Astoria for two years, and

19   before that I grew up in Richmond Hill.

20         THE COURT:  And marital status.  Any children?

21         PROSPECTIVE JUROR:  No children.  Live-in

22   girlfriend.

23         THE COURT:  Are you working?

24         PROSPECTIVE JUROR:  Yes.

25         THE COURT:  What do you do?

Proceedings

1          PROSPECTIVE JUROR:  Academic manager at a

2     psychiatric clinic and institute.

3          THE COURT:  Okay.  Do you own your own home or

4     rent?

5          PROSPECTIVE JUROR:  Rent.

6          THE COURT:  Thank you very much.

7          Miss Tillman, what part of Queens do you live in?

8          PROSPECTIVE JUROR:  Jamaica.

9          THE COURT:  How long have you lived in Jamaica?

10         PROSPECTIVE JUROR:  Four years.

11         THE COURT:  Where did you live before that?

12         PROSPECTIVE JUROR:  South Ozone Park for about

13    five years, and then I lived in Queens Village for about

14    three, and before that lived in Rosedale for about five, and

15    before that I was born in Brooklyn, and I lived there for

16    two years.

17         THE COURT:  What is your favorite spot?

18         PROSPECTIVE JUROR:  Rosedale.

19         THE COURT:  And marital status.  Any children?

20         PROSPECTIVE JUROR:  I'm single.  No children.

21         THE COURT:  And are you working?

22         PROSPECTIVE JUROR:  I'm currently in retail.

23         THE COURT:  And you live at home?

24         PROSPECTIVE JUROR:  Yes.  I live with my parents,

25    and I go to school full time.

Proceedings

1                THE COURT:  What are you studying?

2                PROSPECTIVE JUROR:  Physical therapy.

3                THE COURT:  Good luck to you.

4                PROSPECTIVE JUROR:  Thank you.

5                THE COURT:  Miss Quatela.

6                PROSPECTIVE JUROR:  Yes.

7                THE COURT:  What part of Queens do you live in?

8                PROSPECTIVE JUROR:  Astoria.

9                THE COURT:  How long have you lived there?

10               PROSPECTIVE JUROR:  35 years.

11               THE COURT:  Are you working?

12               PROSPECTIVE JUROR:  I just recently retired from

13  teaching.

14               THE COURT:  What level did you teach?

15               PROSPECTIVE JUROR:  Elementary.

16               THE COURT:  In the city system?

17               PROSPECTIVE JUROR:  No.  No.  Copiague, Long

18  Island.

19               THE COURT:  Marital status.  Any children?

20               PROSPECTIVE JUROR:  I'm married.  I have one son.

21               THE COURT:  And do you own your own home in

22  Astoria?

23               PROSPECTIVE JUROR:  Yes, I do.

24               THE COURT:  What are you going to do now that you

25  are retired?

Proceedings

1        PROSPECTIVE JUROR:  Garden, read, walk, swim,

2   enjoy life, spend time with family and friends.

3        THE COURT:  And serve on jury duty, right?

4        PROSPECTIVE JUROR:  Absolutely.

5        THE COURT:  Thank you.

6        Miss Effendy, what part of Queens do you live in?

7        PROSPECTIVE JUROR:  Woodside.

8        THE COURT:  How long have you lived in Woodside?

9        PROSPECTIVE JUROR:  About six years.

10       THE COURT:  Where did you live before that?

11       PROSPECTIVE JUROR:  Jackson Heights.

12       THE COURT:  You didn't go far.

13       PROSPECTIVE JUROR:  Yeah.

14       THE COURT:  Marital status.  Any children?

15       PROSPECTIVE JUROR:  I'm married and two children.

16       THE COURT:  Do you work?

17       PROSPECTIVE JUROR:  No.

18       THE COURT:  When you do work, what do you do?

19       PROSPECTIVE JUROR:  I was working accounting.

20       THE COURT:  Accounting?

21       PROSPECTIVE JUROR:  Yes.

22       THE COURT:  Okay, and do you own your own home in

23   Woodside?

24       PROSPECTIVE JUROR:  No.

25       THE COURT:  You rent?

Proceedings

1    PROSPECTIVE JUROR:  Yes.

2    THE COURT:  Thank you, Miss Effendy.

3    All right.  Miss Santaromita.

4    PROSPECTIVE JUROR:  I lived in Flushing my whole

5  life, and I'm single.  Me and my mother have an accounting/

6  bookkeeping service.  We are self-employed, and I own my own

7  home.

8    THE COURT:  Very nice.

9    Do you ever see balance sheets?

10    PROSPECTIVE JUROR:  Yes.

11    THE COURT:  All of the time, right?

12    PROSPECTIVE JUROR:  Yes.

13    THE COURT:  Assets, liabilities.

14    PROSPECTIVE JUROR:  Yes.  They equal.

15    THE COURT:  We had a student her earlier.  Bottom

16  of the columns have to what?

17    PROSPECTIVE JUROR:  Equal.

18    THE COURT:  That's proof to a mathematical

19  certainty.  The ADA has to prove the defendant guilty beyond

20  a reasonable doubt.  I'll explain that term later.  I'll

21  explain now it does not mean to a mathematical certainty.

22  Does everybody here realize that?

23    In dealing with human beings and human events, we

24  know nothing with absolute certainty.  You all realize that?

25    Okay.  Thank you very much, ma'am.

Proceedings

1          Mr. Luk.

2          PROSPECTIVE JUROR:  I've lived in Flushing for ten

3     years.  Before that I was in Glen Cove, Long Island.

4          THE COURT:  Where?

5          PROSPECTIVE JUROR:  Glen Cove.

6          THE COURT:  Okay.

7          PROSPECTIVE JUROR:  I'm not employed.  I recently

8     graduated.  Single, and I currently live at home with my

9     parents.

10          THE COURT:  What did you study in school?

11          PROSPECTIVE JUROR:  Business marketing.

12          THE COURT:  Good luck to you.

13          PROSPECTIVE JUROR:  Thank you.

14          THE COURT:  Mr. Andrei.

15          PROSPECTIVE JUROR:  I'm living in Astoria for

16     seven years.  I'm married.  I have a child, a boy.  I'm a

17     doorman.

18          THE COURT:  You are what?

19          PROSPECTIVE JUROR:  A doorman.

20          THE COURT:  A doorman?

21          PROSPECTIVE JUROR:  Yes.

22          THE COURT:  Local 32?

23          PROSPECTIVE JUROR:  Local 32J.

24          THE COURT:  Okay, and do you own your own home or

25     rent?

Proceedings

1          PROSPECTIVE JUROR:  No, I rent.

2          THE COURT:  Okay.  Thank you, Mr. Andrei.

3          PROSPECTIVE JUROR:  Thank you, your Honor.

4          THE COURT:  Mr. Ceja.

5          PROSPECTIVE JUROR:  I've been living in Flushing

6    my whole life.  Single.  No children.  I work in retail.

7    Going to school full time studying physical therapy.  I live

8    with my parents.

9          THE COURT:  All right.  Good luck to you.  Thank

10   you.

11         Miss Adrabma.

12         PROSPECTIVE JUROR:  I live in Howard Beach my

13   whole life, 21 years.  I'm a full-time student.  Part-time

14   work I do at an events office.  We own our own home.  What

15   else?

16         THE COURT:  You covered it all.

17         What are you studying?

18         PROSPECTIVE JUROR:  Biology and environmental

19   health.

20         THE COURT:  Are you thinking of being a

21   veterinarian?

22         PROSPECTIVE JUROR:  Maybe.

23         THE COURT:  Good luck to you.

24         PROSPECTIVE JUROR:  Thank you.

25         THE COURT:  Mr. Cusumano.

Proceedings

1          PROSPECTIVE JUROR:  I'm retired now.  I own my own

2     home.  Living in Whitestone.  Been there for 31 years, and

3     prior to that I grew up in Astoria.

4          THE COURT:  What did you do before you retired?

5          PROSPECTIVE JUROR:  I'm a retired fireman.

6     Retired nine years ago.

7          THE COURT:  Which borough did you work in?

8          PROSPECTIVE JUROR:  All.  I worked Manhattan,

9     Queens and Brooklyn.

10          THE COURT:  All right.  Very nice.  Thank you,

11     sir.

12          Mr. Owstfeld.

13          PROSPECTIVE JUROR:  I live in Jamaica Estates my

14     whole life, 23 years.  I just finished college and looking

15     for a job now.  Single and live with my parents.

16          THE COURT:  All right.  What did you study in

17     school?

18          PROSPECTIVE JUROR:  Mechanical engineering.

19          THE COURT:  Good luck to you, sir.

20          PROSPECTIVE JUROR:  Thank you.

21          THE COURT:  Mr. Sauer.

22          PROSPECTIVE JUROR:  I was born in Maspeth.  Lived

23     there all of my life.  I just recently retired last month

24     from the phone company.  I have three kids, and what else?

25          THE COURT:  Do you own your own home?

Proceedings

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  What are you going to do now that you

3     are retired?

4          PROSPECTIVE JUROR:  I don't know.  I'm going to

5     spend the summer up in my house in New Hampshire.  Then

6     after that I'll just probably move onto something else.  I'm

7     still young.  I don't know what yet.

8          THE COURT:  Too young to retire.

9          PROSPECTIVE JUROR:  Yes.

10         THE COURT:  Good luck to you.

11         PROSPECTIVE JUROR:  Thank you.

12         THE COURT:  Miss Chabalik.

13         PROSPECTIVE JUROR:  I live in Woodhaven 28 years.

14    Prior to that I lived in Rego Park.  I'm a registered nurse

15    in recovery room for 19 years, and I'm married.  I have two

16    sons, and they are -- well, one is married.  One is

17    divorced.

18         THE COURT:  Do you own your own home?

19         PROSPECTIVE JUROR:  Yes.

20         THE COURT:  Thank you.

21         Miss Williams.

22         PROSPECTIVE JUROR:  Go to school at John Jay

23    College for forensic psychology.  I rent.  No kids.  Single,

24    and I work at the New York Blood Center as a lab assistant.

25         THE COURT:  Very nice.

Proceedings

1          Are you going to study forensic psychology?

2          PROSPECTIVE JUROR:  Yes, but I'm not really sure

3    right now.

4          THE COURT:  That's an interesting field.  Thank

5    you.

6          Miss Weiss.

7          PROSPECTIVE JUROR:  I'm in Forest Hills about 17

8    years.  Prior to that in the Bronx, and then prior to that

9    in Manhattan.

10         THE COURT:  Are you working?

11         PROSPECTIVE JUROR:  Yes.  I'm a fiduciary

12   accountant at a law firm.

13         THE COURT:  Do you own your own home in Forest

14   Hills?

15         PROSPECTIVE JUROR:  Yes.

16         THE COURT:  Thank you.

17         Miss Singh.

18         PROSPECTIVE JUROR:  Gajagharsingh.

19         I live in Queens Village for five years.  Prior to

20   that I lived in South Ozone Park five years.  I'm an X ray

21   technician.  I have two daughters, and I'm married.

22         THE COURT:  Thank you very much, ma'am.

23         COURT OFFICER:  Jurors entering.

24         (Panel of sworn jurors enters the courtroom.)

25         THE COURT:  Members of the jury, we are going to

slf

Proceedings

1       take a luncheon recess.  You are not to discuss this case

2       among yourselves or with anyone else.  If anyone tries to

3       discuss it with you, you are to bring it to my attention

4       immediately.  You are not to visit any locations that have

5       been mentioned so far during the course of this trial, and

6       you are not to form any opinion as to whether or not you

7       feel the defendant is guilty or not guilty of the crimes

8       with which he is charged.

9               Enjoy your lunch.  There are plenty of nice places

10      across the boulevard.  Be careful crossing Queens Boulevard.

11      Some of the drivers there don't pay attention.  We don't

12      want to lose any jurors, okay?  Enjoy your lunch.  Come back

13      here at 2 o'clock.

14              Thank you.

15              (Panel of prospective jurors exits the courtroom.)

16              (Panel of sworn jurors exits the courtroom.)

17              THE COURT:  2 o'clock, please.  Put Mr. Gopaul

18      back in.

19              (Luncheon recess taken.)

20              *          *          *

21              THE CLERK:  Bring out the defendant on trial,

22      please.

23              THE COURT:  Yes, Mr. Bandelli.

24              THE CLERK:  Case on trial.  All parties are

25      presents.

Proceedings

1          MR. BANDELLI:  Just a couple of things, Judge.

2          Number one, I received a witness from the DA

3     yesterday.  I anticipate -- I have an investigator out now

4     working on locating witnesses on behalf of my client.  I

5     anticipate having a witness list by tomorrow morning prior

6     to opening statements.

7          On his witness list though -- I don't know whether

8     or not one of the witnesses he intends to call is an expert

9     or not.  Nobody is identified as an expert.  I wanted to

10    know whether or not he intended to call an expert in this

11    case.

12         MR. ROSENBLATT:  Dr. Lewittes.  If I call

13    Dr. Lewittes.

14         THE COURT:  Doctor who?

15         MR. ROSENBLATT:  Dr. Lewittes.  I would proffer

16    that doctor as an expert.

17         THE COURT:  Expert in what?

18         MR. ROSENBLATT:  In intrafamilial child sexual

19    abuse.

20         THE COURT:  You got that, Mr. Bandelli?

21         MR. BANDELLI:  I got that.  I mean right now,

22    without more, I'm going to object to the introduction of any

23    expert testimony unless I know a little bit more about this

24    intrafamilial whatever he just said and why it requires

25    expert testimony in this particular case.

Proceedings

1          THE COURT:  You would be asking for an offer of

2     proof then?

3          MR. BANDELLI:  Absolutely, Judge.

4          THE COURT:  I'd be anxious to hear the offer of

5     proof on this.

6          MR. ROSENBLATT:  At this particular time, your

7     Honor?

8          THE COURT:  Not now.

9          MR. ROSENBLATT:  Okay.

10         THE COURT:  Anything else, Mr. Bandelli?

11         MR. BANDELLI:  Yes, one more thing.  I know you

12    are not going to be happy with me, but I just -- I need to

13    put this on the record.  I understand that you are trying to

14    explain to the jurors the meaning of reasonable doubt.  When

15    you do that example with the balancing sheet, and I get

16    that, but my concern is when you say that there is no such

17    thing as absolute certainty, that, you know, sort of strikes

18    me as an improper statement.  So, I would object to that.

19         THE COURT:  That's in my charge.

20         MR. BANDELLI:  If it's in the charge it's in the

21    charge, you know.

22         THE COURT:  The statement is basically when you

23    are dealing with human affairs, we know nothing with

24    absolute certainty.

25         MR. BANDELLI:  Okay.  Well, that particular

slf

Proceedings

1    language.

2            THE COURT:  That's from the CJI.

3            MR. BANDELLI:  I may be totally off base.

4            THE COURT:  No.  No.  You are entitled.

5            MR. BANDELLI:  But to me it just it sounded, you

6    know, objectionable.

7            THE COURT:  It's a phrase from the charge, and I

8    will not repeat it.

9            MR. BANDELLI:  Thank you, Judge.

10            THE COURT:  Okay.  I'll wait until the charge at

11    the end.

12            MR. BANDELLI:  Thank you, sir.

13            THE COURT:  Bring the jurors in.  You both consent

14    to having the sworn jurors sit in the back for the next

15    round?

16            MR. BANDELLI:  That's fine with me.

17            MR. ROSENBLATT:  Whatever your Honor prefers.

18            THE COURT:  Thank you.

19            (Panel of prospective jurors enters the

20    courtroom.)

21            THE CLERK:  Case on trial.  All parties are

22    present.

23            THE COURT:  Miss Santaromita, come on up, please.

24            (The following proceedings took place at

25    side-bar:)

Proceedings

```
 1          THE COURT:  I understand that you had indicated to
 2    a court officer that you had problem due to the fact that
 3    you and your mother run this small business.
 4          PROSPECTIVE JUROR:  Yes.
 5          THE COURT:  And it would place an undue burden on
 6    her.
 7          PROSPECTIVE JUROR:  On me, too.
 8          THE COURT:  How many people work there?
 9          PROSPECTIVE JUROR:  Just me and her.  I would make
10    no money.
11          THE COURT:  That would pose an economic hardship?
12          PROSPECTIVE JUROR:  Yes.  A couple of days is okay
13    but a week or more is got good.
14          THE COURT:  Okay.  We will excuse you from this
15    case --
16          PROSPECTIVE JUROR:  Thank you.
17          THE COURT:  -- based on your economic hardship.
18          Off the record.
19          (Discussion held off the record.)
20          THE COURT:  Miss Santaromita is excused consent of
21    both sides?
22          MR. ROSENBLATT:  Yes.
23          MR. BANDELLI:  Yes.
24          (In open court.)
25          THE COURT:  Mr. DA, you may proceed.
```

174
Proceedings

1          MR. ROSENBLATT:  Thank you.

2          Good afternoon.  Thank you for returning.

3          Mr. Rodas, this morning when I spoke to the other

4     jurors, potential jurors, that were sitting in the seats, I

5     was talking to them about the fact that if you are chosen as

6     a juror in this case and the judge told you what the nature

7     of the allegations are, that the burden of proof remains the

8     same, beyond a reasonable doubt.  It doesn't go up or down

9     based upon the nature of the charges.  You understand that?

10          PROSPECTIVE JUROR:  Yes.

11          MR. ROSENBLATT:  Do you have any problem with

12     that?

13          PROSPECTIVE JUROR:  No.

14          MR. ROSENBLATT:  Miss Tillman.

15          PROSPECTIVE JUROR:  No.

16          MR. ROSENBLATT:  How about you, Miss Quatela?

17          PROSPECTIVE JUROR:  No.

18          MR. ROSENBLATT:  Miss Affendy.

19          PROSPECTIVE JUROR:  No.

20          MR. ROSENBLATT:  You all understand that whether

21     the defendant is charged with a larceny from Macy's,

22     assault, robbery, burglary, the burden of proof remains the

23     same no matter what the charges are.

24          Mr. Luk, can you appreciate that?

25          PROSPECTIVE JUROR:  Yes.

Proceedings

1        MR. ROSENBLATT:  Mr. Andrei, you heard the judge

2    say this morning one of the basic rules is the defendant is

3    presumed innocent.  You understand that, right?

4        PROSPECTIVE JUROR:  Yes.

5        MR. ROSENBLATT:  He is presumed innocent during

6    the entire trial.  You understand, Mr. Andrei, that if

7    somebody walked in this courtroom right now, came into the

8    well where I'm standing and shot me dead right in front of

9    all of you, in front of the judge, in front of the court

10   clerk, the stenographer --

11       MR. BANDELLI:  Objection, Judge.

12       THE COURT:  Overruled.

13       MR. ROSENBLATT:  -- in front of all of the people

14   in the back, the potential jurors as witnesses, that that

15   man, too, would be presumed innocent.

16       MR. BANDELLI:  Objection, Judge.

17       THE COURT:  Overruled.

18       MR. ROSENBLATT:  You understand that, Mr. Andrei?

19       PROSPECTIVE JUROR:  Of course.

20       MR. ROSENBLATT:  The presumption of innocence

21   applies to everybody in all cases.  Mr. Sauer, you

22   understand that?

23       PROSPECTIVE JUROR:  Yes.

24       MR. ROSENBLATT:  It doesn't matter what the

25   allegations are.  In every case, Miss Chabalik, the

Proceedings

1     defendant is presumed innocent.  You have no problem with

2     that, correct?

3                    PROSPECTIVE JUROR:  No.

4                    MR. ROSENBLATT:  Now, you heard me talk about TV

5     shows and real life versus courtroom drama.  Everybody has

6     seen courtroom TV.  CSI, Law and Order, Boston Legal, LA Law

7     if you used to watch TV in the '80s.  Those are all

8     courtroom dramas.  Totally different than reality.  Some of

9     the science in those may be real.  Some of it isn't.

10                   In this case if you don't hear any of those types

11    of scientific evidence, if you hear from just testimony,

12    Miss Tillman, from the witness stand, and you see evidence,

13    you can look at evidence, touch the evidence, but most of it

14    is going to be testimonial, without any scientific evidence,

15    can you listen to just testimony, the oldest form of

16    evidence there is and make a determination?

17                   PROSPECTIVE JUROR:  Yes.

18                   MR. ROSENBLATT:  No problem with that, right?

19                   PROSPECTIVE JUROR:  No.

20                   MR. ROSENBLATT:  You have no problem with that,

21    right, Mr. Cusumano?

22                   PROSPECTIVE JUROR:  Not at all.

23                   MR. ROSENBLATT:  Mr. Owstfeld, any problem with

24    that?

25                   PROSPECTIVE JUROR:  No problem.

Proceedings

1       MR. ROSENBLATT:  You know, before science had been
2   expanded, they didn't have any DNA evidence.  All criminal
3   trials were based upon testimony.  Witnesses came in.  They
4   told you what they saw, what they did, what they felt.

5       Mr. Sauer, nobody had science back then.
6   Everybody did it, only recently as 20 years ago, just based
7   on testimony, correct?

8       PROSPECTIVE JUROR:  Yes.

9       MR. ROSENBLATT:  Do you think you can do it in
10   this case?

11       PROSPECTIVE JUROR:  Yes.

12       MR. ROSENBLATT:  One of the things I want to touch
13   on that I mentioned earlier, the idea of one witness.

14       Miss Quatela, I want you to follow along with me
15   as I'm going to talk to Mr. Luk.  You just graduated,
16   correct?

17       PROSPECTIVE JUROR:  Yes.

18       MR. ROSENBLATT:  Ever go to the library?

19       PROSPECTIVE JUROR:  Here and there.

20       MR. ROSENBLATT:  Did you study in other places?

21       PROSPECTIVE JUROR:  Yes.

22       MR. ROSENBLATT:  I assume you are studying alone.
23   A man approaches you in a gray suit, white shirt, purple
24   tie, wearing glasses.  He approaches you and asks you for
25   your money.  Takes your money, puts it in his pocket, walks

slf

Proceedings

1     away.  As the individual is walking away, a police officer

2     is walking by.  You tell him what happened, and, Miss

3     Quatela, you are now a juror in the trial involving Mr. Luk

4     where he is a witness.

5              Mr. Luk Testifies as to what happened to him.  He

6     describes the individual.  He points me out as the

7     individual who stole his money.  One witness.  That's the

8     only witness you hear in that case.  If that testimony by

9     Mr. Luk convinces you beyond a reasonable doubt to your

10    satisfaction, and you hear the charge, and the judge tells

11    you what the law is and the facts as Mr. Luk tells you

12    proves the defendant guilty beyond a reasonable doubt to

13    your satisfaction, what would your verdict be?

14              PROSPECTIVE JUROR:  Guilty.

15              MR. ROSENBLATT:  Any problem that the testimony is

16    from one witness?

17              PROSPECTIVE JUROR:  No.

18              MR. ROSENBLATT:  Mr. Sour, any problem with that?

19              PROSPECTIVE JUROR:  No.

20              MR. ROSENBLATT:  Mr. Owstfeld?

21              PROSPECTIVE JUROR:  No.

22              MR. ROSENBLATT:  Miss Chabalik, any problem with

23    that?

24              PROSPECTIVE JUROR:  No.

25              MR. ROSENBLATT:  Miss Williams?

Proceedings

1           PROSPECTIVE JUROR:  No.

2           MR. ROSENBLATT:  How about you, Miss Weiss?

3           PROSPECTIVE JUROR:  No.

4           MR. ROSENBLATT:  Miss Gajagharsingh, any problem

5    with that?

6           PROSPECTIVE JUROR:  No.  No problem.

7           MR. ROSENBLATT:  Anyone have a problem with that

8    concept?  If one witness is presented to you and that

9    witness convinces you to your satisfaction beyond a

10   reasonable doubt, the law requires you to find him guilty if

11   you are convinced beyond a reasonable doubt.  Miss Adrabma

12   any problem?

13          PROSPECTIVE JUROR:  No.

14          MR. ROSENBLATT:  Now, who is married?  Who has

15   kids?  Anybody have teenage kids?

16          Miss Effendy.

17          PROSPECTIVE JUROR:  They are grown up.

18          MR. ROSENBLATT:  They were once teenagers?

19          PROSPECTIVE JUROR:  Right.

20          MR. ROSENBLATT:  Miss Quatela, you have a child?

21          PROSPECTIVE JUROR:  Yes.  One son, 30.

22          MR. ROSENBLATT:  Miss Effendy.

23          PROSPECTIVE JUROR:  Twenty-four and 28.

24          MR. ROSENBLATT:  Mr. Andrei.

25          PROSPECTIVE JUROR:  Yes, one, 33 years old.

Proceedings

1          MR. ROSENBLATT:  In the back.

2          PROSPECTIVE JUROR:  Eleven.

3          MR. ROSENBLATT:  Miss Gajagharsingh.

4          PROSPECTIVE JUROR:  Twenty-five and 27.

5          PROSPECTIVE JUROR:  Thirty-two.

6          MR. ROSENBLATT:  Mr. Cusumano, 32?

7          PROSPECTIVE JUROR:  Yes.

8          PROSPECTIVE JUROR:  I'm going to make you say my

9     name again.

10         MR. ROSENBLATT:  Miss Chabalik.

11         PROSPECTIVE JUROR:  Thirty and 32.

12         PROSPECTIVE JUROR:  I have three going from 34 to

13    24.

14         MR. ROSENBLATT:  Miss Chabalik, where do you work

15    as a nurse?

16         PROSPECTIVE JUROR:  In Northshore Hospital Forest

17    Hills.

18         MR. ROSENBLATT:  Is that hospital still open?

19         PROSPECTIVE JUROR:  One of them, yeah.

20         MR. ROSENBLATT:  And as part of your work as a

21    nurse, you deal with the police?

22         PROSPECTIVE JUROR:  No.

23         MR. ROSENBLATT:  Never?

24         PROSPECTIVE JUROR:  Yes, years ago when I worked

25    in Elmhurst in the ER.

Proceedings

1          MR. ROSENBLATT:  You would agree with me you have

2     got good police officers and you have some bad police

3     officers, right, just like every other citizen.  Makes them

4     no different.  The fact that they have a badge and a uniform

5     they are treated like everybody else, correct?

6          PROSPECTIVE JUROR:  Yes.

7          MR. ROSENBLATT:  You agree with that, Miss

8     Williams?

9          PROSPECTIVE JUROR:  Yes.

10          MR. ROSENBLATT:  Do you have any problem if you

11     hear from police officers in this case?

12          PROSPECTIVE JUROR:  No.

13          MR. ROSENBLATT:  Anyone have police officers in

14     their many family?

15          Miss Tillman.

16          PROSPECTIVE JUROR:  Yes.

17          MR. ROSENBLATT:  You said a cousin in the PD and a

18     cousin in corrections?

19          PROSPECTIVE JUROR:  Yes.

20          MR. ROSENBLATT:  They are just like everybody

21     else, right?

22          PROSPECTIVE JUROR:  Uh-huh.

23          MR. ROSENBLATT:  Now, anyone here in the last few

24     years been at a funeral?

25          Mr. Cusumano, Mr. Sauer, do you agree with me

Proceedings

1       sometimes when people deal with different events -- well,

2       everyone deals with events differently.  Fair to say,

3       Mr. Cusumano?

4                    PROSPECTIVE JUROR:  Sure.

5                    THE COURT:  Excuse me, Mr. DA.  Another minute.

6                    MR. ROSENBLATT:  Thank you, Judge.

7                    Quickly, have you ever been to a funeral where you

8       have an individual crying in the corner.  They are grieving,

9       and that's the way they handle it.

10                   Mr. Sauer, you have been to a funeral where

11      someone is telling good stories of the individual, and they

12      are laughing at the good times?

13                   PROSPECTIVE JUROR:  Yes.

14                   MR. ROSENBLATT:  Does it mean in either situation

15      that the person didn't love the person who passed?

16                   PROSPECTIVE JUROR:  Absolutely not.

17                   MR. ROSENBLATT:  Does it mean they are not

18      grieving?

19                   PROSPECTIVE JUROR:  No.

20                   MR. ROSENBLATT:  Does everyone agree everyone

21      reacts to a situation, whether it's a funeral, a crime

22      victim, everyone reacts differently?

23                   MR. BANDELLI:  Objection, Judge.  I don't

24      understand what he is saying.

25                   MR. ROSENBLATT:  Can you appreciate that,

slf

Proceedings

1    Mr. Sauer?

2              PROSPECTIVE JUROR:  Yes.

3              MR. ROSENBLATT:  There are no guidelines how

4    somebody acts at a funeral, correct?

5              PROSPECTIVE JUROR:  Yes.

6              MR. ROSENBLATT:  Would anyone have certain

7    expectations if they hear from a victim who tells you they

8    were the victim of a crime?  Meaning if the person doesn't

9    cry or the person doesn't react as you may expect, does that

10   mean they are not telling the truth, Miss Williams?

11             PROSPECTIVE JUROR:  No.

12             MR. ROSENBLATT:  It just means they react

13   differently.  Fair to stay?

14             PROSPECTIVE JUROR:  Right.

15             MR. ROSENBLATT:  Can you promise when you listen

16   to the evidence, you will do it with an open mind?

17             THE COURT:  Thank you, Mr. DA.

18             MR. ROSENBLATT:  Thank you.  Have a nice day.

19             THE COURT:  Mr. Bandelli, you may proceed.

20             MR. BANDELLI:  Thank you, Judge.

21             Good afternoon, everybody.  Good afternoon, ladies

22   and gentlemen.  How is everybody holding up in the heat?

23   I'm not holding up so good.

24             Was everybody paying attention when I talked

25   earlier?  Anything that we discussed before that, you know,

Proceedings

1  we need to discuss now?  You know, anything that may be

2  raised a question in your mind that you think maybe we

3  should discuss it now before, you know, maybe you end up as

4  a juror on this case or something like that?  No.  Okay.

5       One of the fellows who was actually seated in the

6  last round, I was discussing with him when he sat as a grand

7  juror what he used to evaluate witness's credibility.  One

8  of the things you are going to have to do, and I think

9  that's what the DA was trying to talk about, is trying to

10  determine, especially if it's only one witness, whether or

11  not you believe the one witness, right?  You are going to

12  have to make a decision.

13       Say there is no DNA evidence and there is no

14  fingerprint evidence and there is no medical evidence.  All

15  you have is the person sitting in this seat right here

16  telling you this is what happened.  Now you have to decide.

17  Is this true?  Is it not true, right?

18       So, Mr. Sauer, in your life experience you have

19  three grownup children.  You are about to go to New England

20  and enjoy yourself.  What do you use to help you determine

21  whether or not you believe somebody or you don't believe

22  somebody?

23       PROSPECTIVE JUROR:  My relationship with them and

24  their character.  How they reacted in the past.  Whether

25  they told me the truth.  Stuff like that.

Proceedings

1        MR. BANDELLI:  There you go.  If somebody has a

2   history of lying, that is something that is going to weigh

3   against help.  If somebody has a history telling the truth,

4   that's something that goes in the check box in their favor.

5        What if somebody said something in the past one

6   way and then said something different at another time in

7   terms of, Well, something did happen.  Then later said

8   something didn't happen.  Would that be a factor that you

9   might consider?

10        PROSPECTIVE JUROR:  Of course.

11        MR. BANDELLI:  Of course.

12        Does anybody feel that wouldn't be a factor they

13   would consider, an inconsistent statement or a recantation,

14   a taking back of what had been said?

15        Miss Weiss.

16        PROSPECTIVE JUROR:  I have an 11 year old son.

17   Sometimes he could say things differently.  Children, you

18   know --

19        MR. BANDELLI:  You know what?  I have three

20   children under 11.  I know my son, when he tells me

21   something, it's always the truth, and I know my daughter,

22   I'm not so sure all of the time.  Just based on the

23   relationship I have and learning over time I ask her, Did

24   you get your test grade back yet?  She will never tell me.

25   My son, even if he has the worst grade in the world, he

Proceedings

1    can't help himself.  So, I get that.  I understand, and you

2    are identifying, Miss Weiss, it's very important, everybody

3    is different in terms of how they handle situations and how

4    they go about telling the truth or telling a lie.  Okay?

5    And you have to rely on your life experiences in making a

6    determination in this particular case whether or not

7    somebody is telling the truth.  That's key, and I think

8    that's why he is talking about funerals and baseball games.

9              This isn't a funeral or a baseball game.  This is

10   a child.  There are serious allegations.  Somebody is going

11   to get on the witness stand.  There is a lot at stake.  This

12   is serious.  Mr. Cusumano.

13             PROSPECTIVE JUROR:  Yes.

14             MR. BANDELLI:  I apologize if I don't get

15   everybody's name right.  I'm trying to take in all of the

16   information.  I don't have a lot of time to do it.  You said

17   you grew up in a neighborhood where a lot of people went

18   into law enforcement.  You were at one point one of New York

19   City's bravest.

20             PROSPECTIVE JUROR:  Yes.

21             MR. BANDELLI:  You know what?  I respect that a

22   great deal.  The bottom line is I don't know if you go back

23   to the firehouse or if you have lunch with these guys, you

24   are in a card game.

25             PROSPECTIVE JUROR:  Yes.

Proceedings

```
 1              MR. BANDELLI:  You socialize.

 2              PROSPECTIVE JUROR:  Yes.

 3              MR. BANDELLI:  Are you going to go back and talk

 4    to them and tell them, you know, This cop took the stand.  I

 5    don't know.  I didn't buy it.  Is that going to be

 6    comfortable for you?

 7              PROSPECTIVE JUROR:  I use my gut feeling.  See how

 8    I feel.

 9              MR. BANDELLI:  I appreciate that.  I'm just trying

10    to think of my own appearance like if I go back to a group

11    of friends --

12              MR. ROSENBLATT:  Objection.

13              THE COURT:  Let him finish it.

14              MR. BANDELLI:  You know, if I go back there are

15    certain friends I may not feel as comfortable saying

16    something to, and it may have an influence on me in terms

17    much how I handle things.  That's the human experience.

18    There is nothing wrong with it.  I'm not saying it's bad.

19    I'm not saying it makes you better or a worse person.  It is

20    what it is.

21              PROSPECTIVE JUROR:  It has nothing to do with what

22    I say here, what I do.  I wouldn't discuss it.  I'm not

23    bragging or anything like that.  I do what I have to do

24    here.

25              MR. BANDELLI:  Would you feel inclined to look for
```

Proceedings

1    feedback in any way?

2            PROSPECTIVE JUROR:  No.  I don't see why I would.

3    That's between me and my conscience.

4            MR. BANDELLI:  And the evidence.

5            PROSPECTIVE JUROR:  And the evidence.

6            MR. BANDELLI:  And what you hear from here

7    (indicating).  Good.  This is important.  I appreciate you

8    being honest with me.  You are telling me, Hey, you know

9    what?  I could be a fair and impartial juror.

10           PROSPECTIVE JUROR:  I can.

11           MR. BANDELLI:  You would be good for this case.

12   You are telling me, Bandelli, hey, I'll be a good juror.

13           PROSPECTIVE JUROR:  I'm here.

14           MR. BANDELLI:  Well, I see you are making a face.

15   We are all here, and it's hot.  It's July 4th weekend.  I

16   feel your pain.

17           Has anybody made a decision at this point as to

18   whether or not my client is innocent or guilty?  Anybody

19   have a feeling one way or the other about that?  You, sir?

20           PROSPECTIVE JUROR:  Nothing.  Not yet.

21           MR. BANDELLI:  Right, because Mr. Rosenblatt got

22   up here and he tried to put this whole spin on presumed

23   innocent.  He gave you a clearly obvious story where

24   somebody was guilty.  He came in, shot somebody in the

25   courtroom, killed the person in the courtroom.  He is

Proceedings

1    clearly guilty but guess what?  He is also presumed

2    innocent.  You know, in other words suggesting something.

3    That's what he did.

4            Does anybody feel like that's what is going on

5    here because I need to know now.  Right now.  Do you have an

6    opinion now?

7            PROSPECTIVE JUROR:  Right now he is innocent.

8            MR. BANDELLI:  That's right.  Does anybody feel

9    that he is not innocent?

10           Ma'am.

11           PROSPECTIVE JUROR:  No.

12           MR. BANDELLI:  Seriously.  I need to know.

13           PROSPECTIVE JUROR:  Seriously.

14           PROSPECTIVE JUROR:  I don't have any opinion.

15           MR. BANDELLI:  Good.  You are going to wait until

16   you hear all of the evidence in this case, and you are going

17   to say, okay, Mr. Prosecutor, have you proved this thing

18   beyond a reasonable doubt, right?  If he has, then your

19   verdict is going to be guilty, right?

20           PROSPECTIVE JUROR:  Yes.

21           MR. BANDELLI:  If he hasn't, then your verdict is

22   going to be not guilty, right?

23           PROSPECTIVE JUROR:  Yes.

24           MR. BANDELLI:  No matter how upsetting what you

25   hear is, right?

Proceedings

190

1      I don't have a problem with anybody here.  Let me

2      ask you a question.  Is there anything I need to know before

3      I sit down?  Is there anything you need to share with me?

4             You are an X ray technician.  I don't think it was

5      too personal, but you said that, you know, you had

6      experiences with people who had made complaints --

7             PROSPECTIVE JUROR:  Yes.

8             MR. BANDELLI:  -- of a similar nature to what may

9      come up here.

10            PROSPECTIVE JUROR:  Yes.

11            MR. BANDELLI:  Do you think that's going to

12     influence how you are going to perceive the witness in this

13     case?

14            PROSPECTIVE JUROR:  No.  It shouldn't.

15            MR. BANDELLI:  It shouldn't.

16            PROSPECTIVE JUROR:  No.

17            MR. BANDELLI:  Is it likely that, you know, you

18     are not going to think back when you were sitting down

19     examining one particular individual and say, you know, that

20     guy sounds familiar, or you know what?  That doesn't sound

21     too familiar.

22            PROSPECTIVE JUROR:  I don't think so.

23            MR. BANDELLI:  It's going to be hard.  You know, a

24     lot of times the way the law is set up, they ask to

25     disregard common sense.  Disregard what your normal

slf

Proceedings

191

1    instincts would be.  It's not an easy job.  It's not an easy

2    job.

3            I do have one last thing.  I apologize.  I'm

4    sorry.  The judge told you my client, Harold Gopaul, he

5    doesn't have to say anything in this case, right?  He

6    doesn't have to take the stand.  They can say he did A, B,

7    C, D, E, F, G.  They can yell, scream, point fingers, but at

8    the end of the day he doesn't have to say anything.

9            Does anybody feel that, you know, if it were me, I

10   would get up and say something?  Anybody?  I'm sure somebody

11   has to feel like that.  Nobody?

12           Ma'am, you don't feel if you were falsely accused

13   of a crime, you wouldn't need to have your say?

14           THE COURT:  Excuse me, Mr. Bandelli.  Another

15   minute.

16           MR. BANDELLI:  You are the last person I'm going

17   to talk to.

18           PROSPECTIVE JUROR:  If I felt that way, yes, I

19   would want to, but not everyone feels the same way.

20           MR. BANDELLI:  Will you hold other people to how

21   you would handle it?

22           PROSPECTIVE JUROR:  Absolutely not.

23           MR. BANDELLI:  How about you, Miss Tillman?  Would

24   you hold somebody --

25           PROSPECTIVE JUROR:  No.

slf

Proceedings

192

```
 1          MR. BANDELLI:  Sir?

 2          PROSPECTIVE JUROR:  No.

 3          MR. BANDELLI:  Anybody feel that, you know, I

 4   would really need to hear from the defendant?  No?

 5          Miss Weiss, you are thinking.  I can tell.

 6          PROSPECTIVE JUROR:  Not necessarily.

 7          MR. BANDELLI:  Not necessarily isn't no.  It's

 8   really a yes or no.  That's going to be a charge that the

 9   judge is going to give you.  If you have a question about

10   that then, you know, now is the time.  Not after you have

11   been selected and all of a sudden it's over, and my client

12   said, you know, I don't need to take the stand, and you are

13   going to say, He should have taken the stand.  I would have

14   heard what he had to say.

15          PROSPECTIVE JUROR:  I don't know.  You know, I may

16   get a little uncomfortable having an 11 year old son in all

17   honesty.  I've had to have discussions with him lately.  He

18   will probably be walking to school alone going to middle

19   school.

20          MR. BANDELLI:  That's actually a very nice thing.

21          PROSPECTIVE JUROR:  I have to have discussions

22   with him lately about what to look out for.  It's a very

23   scary thing to have to go on-line showing him pictures.

24          MR. BANDELLI:  That scared the heck out of my

25   wife.  The school sends them things.  I understand that, but
```

Proceedings

1    at the end of the day that's not what is going on here.  Do

2    you understand?  You have a certain responsibility to

3    protect your child.  I get that.  I think every parent feels

4    the same way.

5              THE COURT:  Thank you, Mr. Bandelli.

6              MR. BANDELLI:  Thank you.  Thank you very much.

7              THE COURT:  Please come in the back when you are

8    both ready.

9              (The following proceedings took place in the jury

10   room:)

11             THE COURT:  People, any challenge for cause up to

12   and including prospective juror number seven?

13             MR. ROSENBLATT:  No.

14             THE COURT:  Any cause challenges?  One through

15   seven?

16             MR. BANDELLI:  No, Judge.

17             THE COURT:  Any perempts, People?

18             MR. ROSENBLATT:  Number two, Miss Tillman.

19             THE COURT:  People challenge prospective juror

20   number two, Jasmine Tillman.

21             MR. ROSENBLATT:  Number six, Mr. Luk.

22             THE COURT:  The People challenge Arthur Luk.

23             Mr. Bandelli, any challenges?

24             MR. BANDELLI:  Yes.  One and three.

25             THE COURT:  Defense challenges Fernando Rodas,

Proceedings

1    prospective juror number one; and Linda Quatela, prospective

2    juror number three.

3              Wieda Effendy and Valentin Andrei acceptable to

4    both sides?

5              MR. BANDELLI:  Yes.

6              MR. ROSENBLATT:  Yes, your Honor.

7              THE COURT:  They become jurors seven and eight.

8              The People, any cause challenges as to prospective

9    jurors Ceja, Adrabma, Cusumano and Owstfeld?

10             MR. ROSENBLATT:  No.

11             MR. BANDELLI:  No.

12             THE COURT:  Any challenge for cause, Mr. Bandelli?

13             MR. BANDELLI:  No.

14             THE COURT:  Any perempts, People?

15             MR. ROSENBLATT:  Number eight, Mr. Ceja.

16             THE COURT:  The People challenge William Ceja,

17   prospective juror number eight.

18             Mr. Bandelli, any challenges as to the remaining

19   three prospective jurors?

20             MR. BANDELLI:  Yes.  Nine and 11.

21             THE COURT:  Defense challenges Lauren Adrabma,

22   prospective juror number nine, and Ezra Owstfeld,

23   prospective juror number 11.

24             Salvatore Cusumano is acceptable to both sides?

25             MR. ROSENBLATT:  Yes.

slf

Proceedings

195

1              MR. BANDELLI:  Yes.

2              THE COURT:  How many challenges have they both

3       used?

4              THE CLERK:  The People have used eight and the

5       defense has used nine.

6              THE COURT:  The People, any challenge for cause as

7       to Sauer, Chabalik and Williams?

8              MR. ROSENBLATT:  No.

9              THE COURT:  Any cause challenge?

10             MR. BANDELLI:  No.

11             THE COURT:  Any perempts, People?

12             MR. ROSENBLATT:  No.

13             THE COURT:  Any perempts, Mr. Bandelli?

14             MR. BANDELLI:  Twelve and 13.

15             THE COURT:  People challenge Kenneth Sauer.

16             MR. ROSENBLATT:  Defendant.  I'm sorry.  You said

17      People.

18             THE COURT:  I'm sorry.  Defense challenge Kenneth

19      Sauer, prospective juror number 12, and Flores Chabalik,

20      prospective juror number 13.

21             MR. BANDELLI:  Yes.

22             THE COURT:  Tamikia Williams is acceptable to both

23      sides?

24             MR. ROSENBLATT:  Yes.

25             MR. BANDELLI:  Yes.

slf

Proceedings

1          THE COURT:  She becomes juror number ten.

2          People, any challenge for cause as to Weiss and

3     Gajagharsingh?

4          MR. ROSENBLATT:  No.

5          MR. BANDELLI:  With respect to number 15,

6     Miss Weiss, I mean she is really letting us know that she is

7     having a tough time both with the fact that she has an 11

8     year old kid who she feels that, you know, she is already

9     looking to protect him from sexual abuse or predators.  She

10    is going online researching this stuff.

11         She also said something along the line that she

12    doesn't feel comfortable with not hearing my client's

13    testimony or not hearing from my client.

14         THE COURT:  The People's position.

15         MR. ROSENBLATT:  I don't believe she said that.

16    She said she would prefer to hear it.  That's not the

17    standard, and the other allegations that counsel feels are

18    not the standard for a cause challenge.  She didn't say she

19    would be unable to be fair.  She didn't say she would be

20    unable to be impartial.  She said she is concerned, but he

21    didn't properly question her to use it for a cause

22    challenge.

23         THE COURT:  Defense application for cause

24    challenge as to prospective juror number 15, Laurie Weiss,

25    is granted.

slf

Proceedings

197

1    The People, any perempt as to Miss Gajagharsingh?

2         MR. ROSENBLATT:  No.

3         THE COURT:  Any perempt, Mr. Bandelli, as to

4  Gajagharsingh?

5         MR. BANDELLI:  Yes.

6         THE COURT:  Defense challenges prospective juror

7  16 Miss Gajagharsingh.

8         We have 11.

9         THE CLERK:  No.  Ten.  The People used eight.  The

10  defense used 12.

11         THE COURT:  All right.

12         (In open court.)

13         THE CLERK:  Of the jurors seated in the jury box,

14  will the following four people remain seated:

15         Wieda Effendy, Valentin Andrei, Salvatore A.

16  Cusumano and Tamikia Williams.  You four people remain

17  seated.  Everybody else return to central jury now.

18         Will our four new jurors please rise and raise

19  your right hand.

20         (Selected jurors sworn in by the clerk of the

21  court.)

22         THE COURT:  Fill the box, please.

23         THE CLERK:  Jurors, if your name is called, follow

24  the instructions of the sergeant.

25         Sheldon D. S-t-e-i-n-i-g, seat number one, please.

Proceedings

1      Jonathan D. Stec, S-t-e-c, seat number two,

2  please.

3      Maryann E. Geraci, G-e-r-a-c-i, seat number three,

4  please.

5      Steven J. Mannasse, M-a-n-n-a-s-s-e, seat number

6  four, please.

7      Maria R. Padin, P-a-d-i-n, seat number five,

8  please.

9      Veronica P. Barnes, B-a-r-n-e-s, seat number six,

10  please.

11      Arlene Coronado, C-o-r-o-n-a-d-o, seat number

12  seven, please.

13      Henry Lopez, L-o-p-e-z, seat number eight, please.

14      Henry J. Martinez, M-a-r-t-i-n-e-z, seat number

15  nine, please.

16      Michael N. Yoong, Y-o-o-n-g, seat number ten,

17  please.

18      THE COURT:  Good afternoon, ladies and gentlemen.

19  Everybody here able to understand and follow those three

20  basic principles of law?  Good.

21      Anyone here ever sat as a juror before on a

22  criminal case?

23      You heard that the charges here are of a sexual

24  nature and involve a family member.  Anyone have a problem

25  sitting on a case like that?  Please raise your hand.

Proceedings

1          Come on up, Mr. Steinig.

2              (The following proceedings took place at

3      side-bar:)

4              THE COURT:  How are you, Mr. Steinig?

5              PROSPECTIVE JUROR:  I'm a community rabbi.  I'm

6      involved with the Queens Jewish Community Council which has

7      set up an initiative for family abuse.  My wife serves on

8      the task force for family and children at risk, and I've

9      been involved in removing children from abusive situations.

10             THE COURT:  What part of Queens are you from?

11             PROSPECTIVE JUROR:  My congregation is in Bayside.

12             THE COURT:  Okay.

13             PROSPECTIVE JUROR:  In fact, I was here just a few

14     weeks ago with Lois Rappeler (phonetic) who was hosting one

15     of the child abuse --

16             THE COURT:  Lois Rap.

17             MR. BANDELLI:  I haven't heard that name in a

18     while.

19             PROSPECTIVE JUROR:  Anything like this I'm not

20     going to be fair to any adult involved with a kid.

21             THE COURT:  All right.  I can appreciate that.  We

22     are going to have you sit on civil cases.  Okay?

23             PROSPECTIVE JUROR:  That works.

24             THE COURT:  Thank you for your honesty.  Thank you

25     very much.

200

Proceedings

1    Prospective juror Mr. Steinig is excused consent

2  of both sides?

3    MR. ROSENBLATT:  Yes.

4    MR. BANDELLI:  Yes.

5    THE COURT:  Come on up, Mr. Mannasse.

6    How are you, sir?

7    PROSPECTIVE JUROR:  Okay, I guess.  I really just

8  don't feel comfortable when it comes to these kinds of

9  situations, especially when it comes to someone like a

10  parent possibly assaulting a child.  It's just really

11  disgusting to me.  I don't think I have the stomach for

12  something like that.

13    THE COURT:  Okay.  Do you work?  Do you go to

14  school?  What do you do?

15    PROSPECTIVE JUROR:  I work as a financial advisor

16  for John Hancock.

17    THE COURT:  How has business been lately?

18    PROSPECTIVE JUROR:  For us not terrible, I got to

19  say.

20    THE COURT:  Okay.  We are going to have you sit on

21  civil cases, Mr. Mannasse.  Follow the instruction of the

22  sergeant.  You have a nice day, sir.

23    PROSPECTIVE JUROR:  You too, sir.

24    THE COURT:  Prospective jurors Mr. Mannasse is

25  excused consent of both sides?

Proceedings

1          MR. ROSENBLATT:  Yes.

2          MR. BANDELLI:  Yes.

3          THE COURT:  Mr. Lopez.

4          PROSPECTIVE JUROR:  Good afternoon.

5          THE COURT:  How are you, Mr. Lopez?

6          PROSPECTIVE JUROR:  Good.  Good.

7          THE COURT:  You have a problem sitting on this

8    case?

9          PROSPECTIVE JUROR:  Well, two reasons.  One is my

10   daughter, after her grandfather had passed away, told me

11   about her grandfather abused her.

12         THE COURT:  Sorry.

13         PROSPECTIVE JUROR:  And in another case a friend

14   of mine, FDNY, he was arraigned here.

15         THE COURT:  A friend of yours what?

16         PROSPECTIVE JUROR:  He was arraigned here.  He

17   came to court here for the same reasons.  He molested his

18   step-daughter.

19         THE COURT:  So, this brings back bad memories to

20   you?

21         PROSPECTIVE JUROR:  Yes, it does.

22         THE COURT:  I'm sorry for doing that.  We are

23   going to have you sit on civil cases.

24         PROSPECTIVE JUROR:  Okay.

25         THE COURT:  Okay, Mr. Lopez.  Have a nice day.

Proceedings

1          Prospective juror Mr. Lopez is excused consent of

2     both sides?

3          MR. ROSENBLATT:  Yes.

4          MR. BANDELLI:  Yes.

5          (In open court.)

6          THE COURT:  Anyone here been the victim of a

7     crime?  Please raise your hand if you have been the victim

8     of a crime.  Good.

9          Anyone here, anyone very close to you, whether

10    it's a close relative or friend ever been arrested ore

11    accused of a crime?  Any of you or anyone close to you ever

12    been arrested or accused of a crime.  Raise your hand.

13         Miss Coronado, did you have your hand up?

14         PROSPECTIVE JUROR:  Yes.

15         THE COURT:  Come up.

16         (The following proceedings took place at

17    side-bar:)

18         THE COURT:  Who do you know that was arrested?

19         PROSPECTIVE JUROR:  Myself.

20         THE COURT:  You?

21         PROSPECTIVE JUROR:  Yes.

22         THE COURT:  What happened?

23         PROSPECTIVE JUROR:  It was just a girl fight when

24    I was younger.

25         THE COURT:  A girl fight?

slf

Proceedings

1          PROSPECTIVE JUROR:  Yeah.

2          THE COURT:  Okay.  Did you win the fight?

3          PROSPECTIVE JUROR:  No.

4          THE COURT:  And you still got arrested?

5          PROSPECTIVE JUROR:  Well, the person that attacked

6   me -- I was attacked, and I was going home, so she called

7   the cops on me.

8          THE COURT:  Okay.  What happened to the case?

9          PROSPECTIVE JUROR:  It was dismissed because

10  she -- like she had been arrested before, and I -- so, they

11  just dismissed the case.

12         THE COURT:  Okay.  Did that happen in Queens?

13         PROSPECTIVE JUROR:  No.  In Manhattan.

14         THE COURT:  Okay.  Did you have to go to court a

15  couple of times or just once?

16         PROSPECTIVE JUROR:  Just once.

17         THE COURT:  Do you feel that you were treated

18  fairly or unfairly by the system?

19         PROSPECTIVE JUROR:  Fairly.

20         THE COURT:  No bad feelings about what happened?

21         PROSPECTIVE JUROR:  No.

22         THE COURT:  That wouldn't affect your ability to

23  be fair here; would it?

24         PROSPECTIVE JUROR:  No.

25         THE COURT:  Okay.  Thank you, Miss Coronado.

Proceedings

1      Anyone else?

2              (In open court.)

3              THE COURT:  Any of you or anyone close to you work

4      in law enforcement, have a job as a police officer, court

5      officer, correction officer?  Anything like that, please

6      raise your hands.

7              Okay.  Mr. Stec.

8              PROSPECTIVE JUROR:  My uncle is a police officer.

9              THE COURT:  Do you know where your uncle works?

10             PROSPECTIVE JUROR:  It's called Queens Blast.

11     It's basically all the wiretaps with drug dealers or money

12     laundering.

13             THE COURT:  You would have no problem following my

14     instruction on how to evaluate a police officer's testimony?

15             PROSPECTIVE JUROR:  No.

16             THE COURT:  Who do you know, Miss Padin?

17             PROSPECTIVE JUROR:  My son is a police officer.

18             THE COURT:  Where does he work?

19             PROSPECTIVE JUROR:  Lower Manhattan.

20             THE COURT:  How long has he been working?

21             PROSPECTIVE JUROR:  Six years.

22             THE COURT:  You must be proud of him.

23             PROSPECTIVE JUROR:  Yes.

24             THE COURT:  I'm sure you could tell the rest of

25     the jurors he is human just like everybody.

                                                            slf

Proceedings

1        PROSPECTIVE JUROR:  He is a wonderful person.

2        THE COURT:  You would have no problem following my

3   instruction; would you?

4        PROSPECTIVE JUROR:  No.

5        THE COURT:  Mr. Martinez.

6        PROSPECTIVE JUROR:  Hi.  My wife is a court

7   attorney to the presiding Judge Carol Stokinger at the

8   Queens Family Court of which they handle neglect and abuse

9   cases.

10       THE COURT:  All right.  One of the instructions I

11  give, I have of already given it to you when you left the

12  courtroom, you are not to discuss this case.  As much as you

13  like to tell your wife everything you do, I'm sure you can

14  follow my instruction, correct?

15       PROSPECTIVE JUROR:  Absolutely.

16       THE COURT:  You would have no problem with sitting

17  on this case?

18       PROSPECTIVE JUROR:  No.

19       THE COURT:  Anyone else?

20       Now we come to your backgrounds.  I'm going to ask

21  you same questions.

22       Mr. Stec, what part of Queens do you live in?

23       PROSPECTIVE JUROR:  Glendale.

24       THE COURT:  How long have you lived there?

25       PROSPECTIVE JUROR:  22 years.

Proceedings

1          MR. ROSENBLATT:  I didn't hear.

2          THE COURT:  He lives in Glendale his whole life.

3          You are living at home?

4          PROSPECTIVE JUROR:  Yes.

5          THE COURT:  Working?

6          PROSPECTIVE JUROR:  Yes.  I'm a supervisor at an

7    after school program at a summer camp.

8          THE COURT:  Are you still going to school?

9          PROSPECTIVE JUROR:  Yes.  Computer engineering.

10          THE COURT:  Good luck to you.

11          PROSPECTIVE JUROR:  Thank you.

12          THE COURT:  Miss Geraci, what part of Queens do

13    you live in?

14          PROSPECTIVE JUROR:  Glendale.  Also I lived there

15    for --

16          THE COURT:  Do you know each other?

17          PROSPECTIVE JUROR:  No.  I'm there about 12 years.

18    Own my own home.  Prior to that I lived in/grew up in

19    Maspeth.

20          THE COURT:  Very nice.

21          Are you working now?

22          PROSPECTIVE JUROR:  Yes.  I work for the

23    Department of Education.  I'm the purchasing manager for a

24    high school.

25          THE COURT:  That's a big job.  Thank you very

slf

Proceedings

1        much.

2                    Miss Padin, what part of Queens do you live in?

3                    PROSPECTIVE JUROR:  Whitestone.

4                    THE COURT:  How long?

5                    PROSPECTIVE JUROR:  Twenty-five years.

6                    THE COURT:  Martial status.  Any children?

7                    PROSPECTIVE JUROR:  Married, two children.

8                    THE COURT:  Are you working?

9                    PROSPECTIVE JUROR:  I work for the Department of

10       Education school lunch.

11                   THE COURT:  Do you own your own home?

12                   PROSPECTIVE JUROR:  Yes.

13                   THE COURT:  Miss Barnes, what part of Queens do

14       you live in?

15                   PROSPECTIVE JUROR:  Jamaica.

16                   THE COURT:  How long have you lived there?

17                   PROSPECTIVE JUROR:  Sixteen years.

18                   THE COURT:  Marital status.  Any children?

19                   PROSPECTIVE JUROR:  Divorced, one son.

20                   THE COURT:  Are you working?

21                   PROSPECTIVE JUROR:  Yes.

22                   THE COURT:  What do you do?

23                   PROSPECTIVE JUROR:  Telephone operator.

24                   THE COURT:  Do you own your own home?

25                   PROSPECTIVE JUROR:  Rent.

208

Proceedings

1          THE COURT:  Thank you very much.

2          Miss Caraballo, what part of Queens do you live

3     in?

4          PROSPECTIVE JUROR:  East Elmhurst.

5          THE COURT:  How long have you lived there?

6          PROSPECTIVE JUROR:  Twelve years.

7          THE COURT:  Marital status.  Any children?

8          PROSPECTIVE JUROR:  Single.  No children.

9          THE COURT:  Are you working?

10         PROSPECTIVE JUROR:  Yes.

11         THE COURT:  What do you do?

12         PROSPECTIVE JUROR:  Administrative assistant for a

13    dental office.

14         THE COURT:  Speak louder.

15         PROSPECTIVE JUROR:  Administrative assistant for a

16    dental office.

17         THE COURT:  Do you own or rent your own home?

18         PROSPECTIVE JUROR:  Rent.

19         THE COURT:  Thank you very much.

20         Mr. Martinez, what part of Queens do you live in?

21         PROSPECTIVE JUROR:  College Point for the last 11

22    years.  Maspeth for ten years prior to that and seven years

23    in Whitestone.  I'm an electrical contractor.  I own my own

24    home.  Married.  Three grown children.

25         THE COURT:  Thank you very much.  You covered it

slf

Proceedings

1    all.

2              Mr. Yoong.

3              PROSPECTIVE JUROR:  I've lived in Woodside for the

4    past four years.  Prior to that I lived in Atlanta for a few

5    months, Manhattan for three years and Jersey for three years

6    before that.  I'm married.  No children.  I work for hedge

7    funds as an administrator in Westchester, and what's the

8    last question?  I own an apartment.

9              THE COURT:  Thank you, Mr. Yoong.

10             Mr. DA.

11             MR. ROSENBLATT:  Thank you, Judge.

12             Some of you probably didn't believe when we told

13   you that you, too, were going to sit here as you saw

14   everybody else sitting there.  You probably thought you were

15   safe.  As the judge told you, it's an important part of the

16   system.  Without you we couldn't have a criminal justice

17   system.  We need a jury of our peers.  That's why we have

18   people like you.  We appreciate your time.  I'm going to go

19   quite quickly through all of the things I've spoken about

20   earlier.  I hope you paid attention to some of it.  I spoke

21   earlier about reasonable doubt, and the standard doesn't

22   change based upon the nature of the charges.

23             Mr. Stec, you heard that?

24             PROSPECTIVE JUROR:  Yes.

25             MR. ROSENBLATT:  Any problem with that?

Proceedings

1          PROSPECTIVE JUROR:  No.

2          MR. ROSENBLATT:  Anyone here have any problem with

3      that?

4          PROSPECTIVE JUROR:  No.

5          MR. ROSENBLATT:  You understand this is the type

6      of case where you are going to hear from witnesses.  There

7      is going to be no scientific evidence.  I'm asking you

8      whether you can listen to testimony and make a determination

9      using your common sense your life experiences.  I'm asking

10     you not to leave that at home when you come into the

11     courtroom.  It's important.  We grew up in different parts

12     of the county.  Some of us north, some of us south, and we

13     come from different backgrounds, but we all come in with

14     common sense and life experience.  You can't forget that

15     when you enter a courtroom.

16          Miss Geraci, do you promise you can listen to

17     testimony and not base a verdict on whim or speculation?

18          PROSPECTIVE JUROR:  Yes.

19          MR. ROSENBLATT:  Just on the evidence presented to

20     you.

21          PROSPECTIVE JUROR:  Yes.

22          MR. ROSENBLATT:  You promise to do that?

23          PROSPECTIVE JUROR:  Yes.

24          MR. ROSENBLATT:  You wouldn't speculate as to

25     things you don't hear.  Just base it on the testimony that

Proceedings

1    you do hear.

2            PROSPECTIVE JUROR:  Yes.

3            MR. ROSENBLATT:  You will do the same, Miss Padin?

4            PROSPECTIVE JUROR:  Yes.

5            MR. ROSENBLATT:  You understand that in this case

6    you are going to hear from police officers, and, Miss Padin,

7    you said your son is a police officer in Manhattan, right?

8            PROSPECTIVE JUROR:  Yes.

9            MR. ROSENBLATT:  How long has he been doing that?

10           PROSPECTIVE JUROR:  Six years.

11           MR. ROSENBLATT:  You promised the judge you would

12   be fair when you listened to police officers, correct?

13           PROSPECTIVE JUROR:  Yes.

14           MR. ROSENBLATT:  You are going to be fair when you

15   hear from a police officer.  You promise us that, right?

16           PROSPECTIVE JUROR:  Yes.

17           MR. ROSENBLATT:  You heard my example earlier,

18   Mr. Martinez, about one witness.  I used different

19   scenarios.  The idea is the same.  If you only heard from

20   one witness and one witness convinced you to your

21   satisfaction beyond a reasonable doubt in this case of all

22   of the elements that the judge is going to tell you and

23   that's the only witness you hear from, can you reach a

24   verdict after listening to that one witness if that witness

25   convinces you to your satisfaction?

Proceedings

1          PROSPECTIVE JUROR:  Yes.

2          MR. ROSENBLATT:  What would your verdict be if

3    that witness convinced you to your satisfaction of each

4    element beyond a reasonable doubt?

5          PROSPECTIVE JUROR:  Guilty.

6          MR. ROSENBLATT:  If you heard from one witness and

7    the witness satisfied you, Mr. Yoong, to your satisfaction,

8    what would your verdict be?

9          PROSPECTIVE JUROR:  I think it would be sufficient

10   to find him guilty.

11         MR. ROSENBLATT:  Would anyone think, Well, I only

12   heard from one witness.  Why are they only putting on one

13   witness?  Would you think that, Miss Barnes?

14         PROSPECTIVE JUROR:  No.

15         THE COURT:  Excuse me, Mr. DA.  One more minute.

16         MR. ROSENBLATT:  Thank you, Judge.

17         Because you can't speculate, and you can't base

18   your verdict on a whim or hindsight or speculation.  Only on

19   the evidence.

20         Miss Coronado, you promise to do that?

21         PROSPECTIVE JUROR:  Yes.

22         MR. ROSENBLATT:  Miss Coronado, did you ever get

23   pulled over for a traffic infraction?

24         PROSPECTIVE JUROR:  No.

25         MR. ROSENBLATT:  Anyone?  Traffic infraction?

slf

Proceedings

1          Mr. Yoong, when you got pulled over, were you mad

2     at the police officer?

3          PROSPECTIVE JUROR:  Actually, no.

4          MR. ROSENBLATT:  Mr. Stec.

5          PROSPECTIVE JUROR:  No.

6          MR. ROSENBLATT:  Mr. Martinez, did you raise your

7     hand.

8          PROSPECTIVE JUROR:  No.

9          MR. ROSENBLATT:  Miss Geraci.

10         PROSPECTIVE JUROR:  No.

11         MR. ROSENBLATT:  You would agree that police

12    officers, when they pulled you over, Mr. Yoong, he was doing

13    his job?

14         PROSPECTIVE JUROR:  Yes.  I was speeding.

15         MR. ROSENBLATT:  You don't hold a grudge against

16    the man or the woman, correct?

17         PROSPECTIVE JUROR:  No.

18         MR. ROSENBLATT:  Police officers, like everyone

19    else, have a job to do.  They just wear a uniform different

20    than you may wear in your job, correct?

21         PROSPECTIVE JUROR:  Yes.

22         MR. ROSENBLATT:  Who has kids?  Quickly.  Age.

23         PROSPECTIVE JUROR:  Daughter 20.

24         MR. ROSENBLATT:  Yes.

25         PROSPECTIVE JUROR:  Older, adults.

Proceedings

1          MR. ROSENBLATT:  How many?

2          PROSPECTIVE JUROR:  Two.

3          MR. ROSENBLATT:  Miss Barnes.

4          PROSPECTIVE JUROR:  Twenty-one.

5          MR. ROSENBLATT:  Mr. Martinez.

6          PROSPECTIVE JUROR:  Grown children.  Three boys.

7          MR. ROSENBLATT:  You agree some adults tell the

8  truth, Mr. Stec?

9          PROSPECTIVE JUROR:  Yes.

10          MR. ROSENBLATT:  Some children tell the truth.

11          PROSPECTIVE JUROR:  Yes.

12          MR. ROSENBLATT:  Some children lie.

13          PROSPECTIVE JUROR:  Yes.

14          MR. ROSENBLATT:  Some adults lie.

15          PROSPECTIVE JUROR:  Yes.

16          MR. ROSENBLATT:  The fact that if you hear a child

17  versus an adult doesn't mean they are lying or telling the

18  truth just based upon their age or sex, right?

19          PROSPECTIVE JUROR:  Yes.

20          MR. ROSENBLATT:  You will give them a fair chance?

21          PROSPECTIVE JUROR:  Yes.

22          THE COURT:  Thank you, Mr. ADA.

23          Mr. Bandelli, you may proceed.

24          MR. BANDELLI:  Thank you, Judge.

25          Good afternoon, everybody.  We are almost there.

215

Proceedings

1    Everybody heard everything I have to say, yes?  Yes?

2              I would rather listen than speak right now.  I

3    know lawyers like to speak all of the time, but I'm going to

4    try to listen.  Tell me why you think you are a good person

5    to sit on this jury.  Miss Padin, tell me.

6              PROSPECTIVE JUROR:  What do you mean?

7              MR. BANDELLI:  Well, you know what?  You sound

8    like you are proud of your son.

9              PROSPECTIVE JUROR:  I am.

10             MR. BANDELLI:  Do you know why that concerns me?

11   If a police officer is going to get up there, guess what I'm

12   going to do.

13             PROSPECTIVE JUROR:  Question him.

14             MR. BANDELLI:  I'm going to yell at him.  I'm

15   going to ask him tough questions.

16             PROSPECTIVE JUROR:  You are allowed to.

17             MR. BANDELLI:  I'm allowed.

18             Now, are you going to be like, Wow, he could be

19   yelling at my son?

20             PROSPECTIVE JUROR:  I don't believe it's my son

21   there.

22             MR. BANDELLI:  I'm not doing it to play games or

23   put you on the defensive.  I have to make a good decision.

24   I get the sense you are good at making decisions.  You seem

25   pretty firm.  Do you think you can be a fair and impartial

slf

216

Proceedings

1    juror?

2             PROSPECTIVE JUROR:  I think so.

3             MR. BANDELLI:  You are not going to be concerned

4    if my client does or does not testify?

5             PROSPECTIVE JUROR:  I don't know about that.

6             MR. BANDELLI:  Good.  So that's something you need

7    to discuss with me.  Tell me.

8             PROSPECTIVE JUROR:  I believe that person there is

9    supposed to say something.  He is accused of something.  He

10   is suppose to say something.

11            THE COURT:  Excuse me, ma'am.  As I said before,

12   we always like to hear both sides of a story in life, right?

13   Something happens.  You want to hear both sides of the

14   story.

15            In the American criminal justice system, it's not

16   like that.  The DA bring the accusation which in this case

17   is an indictment.  He must prove it beyond a reasonable

18   doubt.  The defendant doesn't have to do anything.  Okay?

19            PROSPECTIVE JUROR:  Okay.

20            THE COURT:  Can you follow that?

21            PROSPECTIVE JUROR:  Yes.

22            THE COURT:  As much as we like to hear both sides

23   of a story, in the criminal justice system it doesn't

24   happen.

25            PROSPECTIVE JUROR:  Okay.

slf

217

Proceedings

1          THE COURT:  Sometimes you do.  Most of the times

2   you don't.

3          PROSPECTIVE JUROR:  You have to excuse me.  It's

4   my first time here.  I don't know the law.

5          THE COURT:  That's why I'm explaining it to you.

6   Can you follow my instructions?

7          PROSPECTIVE JUROR:  Yes, sir.

8          THE COURT:  Thank you.  You're welcome.

9          MR. BANDELLI:  Thank you for being forward.  I get

10  a sense you are comfortable being forward.

11         PROSPECTIVE JUROR:  Yes.

12         MR. BANDELLI:  I'm forward, too.  Let me ask you

13  this question.  If you think that the police officer is not

14  telling the truth, you don't have a problem going back there

15  into the jury room -- if you are a juror, you won't go back

16  into deliberations and say, You know what?  I know he is a

17  police officer like my son, but I think he is a liar.

18         PROSPECTIVE JUROR:  I have no problem.

19         MR. BANDELLI:  Good.

20         Miss Geraci, anything you would like to tell me

21  about yourself that might help me?  The truth is I need

22  assistance here.  We don't know each other.  What is it that

23  would make me feel confident that, regardless of which way

24  you decide, you are going to be a fair and impartial juror?

25         PROSPECTIVE JUROR:  Well, I think that's the whole

slf

1    point.  I think I could be fair and impartial.  Until I hear

2    the evidence.  I think I would not make a judgment on

3    someone just by hearsay or just by looking at a person.

4               MR. BANDELLI:  Right now you don't have your mind

5    made up.

6               PROSPECTIVE JUROR:  Not at all.

7               MR. BANDELLI:  You have no feelings about my

8    client at all.

9               PROSPECTIVE JUROR:  No.

10              MR. BANDELLI:  Mr. Stec, the only thing you said

11   you have a connection to the Police Department, right?

12              PROSPECTIVE JUROR:  Yes.

13              MR. BANDELLI:  Is there anything about that that I

14   should know in terms of conversations you may have about

15   what goes on in your life that might influence how you

16   approach this case?

17              PROSPECTIVE JUROR:  No.  He is a normal person

18   like everyone else.

19              THE COURT:  One more minute.

20              MR. BANDELLI:  Mr. Yoong, I only have another

21   minute.  I'm going to quit here.  How is that?  Thank you.

22              You shook your head.  Do you feel bad I didn't ask

23   you a question?  Do you want me to ask you a question?

24              PROSPECTIVE JUROR:  No.

25              MR. BANDELLI:  Okay.  I won't ask you a question.

Proceedings

1    Thank you very much.

2              THE COURT:  Come in the back when you are both

3    ready.

4              (The following proceedings took place at

5    side-bar:)

6              THE COURT:  Any challenge for cause as to Stec or

7    Geraci.

8              MR. ROSENBLATT:  No.

9              MR. BANDELLI:  No.

10             THE COURT:  Any perempts, People?

11             MR. ROSENBLATT:  No.

12             THE COURT:  Any perempt?

13             MR. BANDELLI:  Stec.

14             THE COURT:  Defense challenges Jonathan Stec,

15   prospective juror number two.

16             Maryann Geraci is acceptable to both sides?

17             MR. ROSENBLATT:  Yes.

18             MR. BANDELLI:  Yes.

19             THE COURT:  She becomes juror number 11.

20             People, any challenge for cause as to Maria Padin?

21             MR. ROSENBLATT:  No.

22             THE COURT:  Any cause challenge?

23             MR. BANDELLI:  No.

24             THE COURT:  Any perempt, People?

25             MR. ROSENBLATT:  No.

Proceedings

1        THE COURT:  Any perempt?

2        MR. BANDELLI:  Yes.

3        THE COURT:  Defense challenge Maria Padin.

4        THE CLERK:  Eight for the People, 14 for the

5   defendant.

6        THE COURT:  Any challenge for cause as to Veronica

7   Barnes?

8        MR. ROSENBLATT:  No.

9        MR. BANDELLI:  No.

10        THE COURT:  Any perempt?

11        MR. ROSENBLATT:  Yes.

12        THE COURT:  People challenge Veronica Barnes,

13   prospective jurors number six.

14        Arlene Coronado, any cause challenge, People?

15        MR. ROSENBLATT:  No.

16        THE COURT:  Defense?

17        MR. BANDELLI:  No.

18        THE COURT:  Any perempt, People?

19        MR. ROSENBLATT:  Yes.

20        THE COURT:  People challenge Arlene Coronado.

21        People, any challenge for cause as to Henry

22   Martinez?

23        MR. ROSENBLATT:  No.

24        THE COURT:  Any cause?

25        MR. BANDELLI:  I think there is, Judge, but you

slf

Proceedings

1    may want to flush it out more.  When he was questioned, he

2    said that he was married to the court attorney for Judge

3    Sherman.  Judge Sherman presided over the Family Court

4    matter that involved my client and his family.  I didn't

5    bring it up because the rule is don't go into the facts of

6    the case.  There is no way to bring it up to this guy

7    without going into the facts of this case.  I'm potentially

8    poisoning --

9            MR. ROSENBLATT:  I didn't hear the name, but you

10   asked the entire panel if they knew anybody, if they heard

11   of us when they came in.  We had no response from

12   Mr. Martinez.  If the Court wants to inquire as to him as to

13   if he knows any of the parties --

14           MR. BANDELLI:  My sense is he probably doesn't

15   know the parties.  My sense is that he is married to

16   somebody who is overseeing a case involving him and his

17   family.  There has been a finding already.  It's like it

18   defies the whole premises of this jury selection thing to

19   have somebody who has a connection to somebody who has

20   already found him guilty as a juror in this case.

21           THE COURT:  Bring in Mr. Martinez, please.

22           Hello, Mr. Martinez.  I don't want you to think

23   that we are picking on you, but I just wanted to ask you a

24   couple of questions.  Who does your wife work for?

25           PROSPECTIVE JUROR:  Judge Carol Stokinger.  She is

222

Proceedings

1     in Queens Family Court.  She is a supervising judge.

2               THE COURT:  Supervising judge?

3               PROSPECTIVE JUROR:  Right.

4               THE COURT:  Do you talk to her about her cases at

5     all?

6               PROSPECTIVE JUROR:  I usually just listen.  She is

7     venting.  You know, at the end of a long day she talks a lot

8     about cases and stuff like that.  Nothing specific but a lot

9     of --

10              THE COURT:  Does she ever talk about names of

11    cases?

12              PROSPECTIVE JUROR:  No.

13              THE COURT:  Okay.  If you are selected as a juror,

14    you know you are not allowed to talk to anyone, including

15    your wife, even though she works for a judge.

16              PROSPECTIVE JUROR:  Correct.

17              THE COURT:  You have no problem with that?

18              PROSPECTIVE JUROR:  I have no problem with that.

19              THE COURT:  Thank you, sir.

20              I thought I heard the name Stokinger.

21              MR. BANDELLI:  I thought he said Sherman.  They

22    were both Carol.  There is a Judge Carol Sherman in Family

23    Court.  He said Judge Carol --

24              THE COURT:  So, this is not the judge --

25              MR. BANDELLI:  No.

slf

Proceedings

1          THE COURT:  -- that you thought it was.

2          Are you withdrawing your cause challenge?

3          MR. BANDELLI:  Yes, I withdraw my challenge for

4    cause.

5          THE COURT:  Off the record.

6          (Discussion held off the record.)

7          MR. BANDELLI:  Judge, I do keep my challenge for

8    cause if you are going to deny it.  You are going to deny

9    it.  You are not going to deny it.  I have one perempt left

10   anyway.

11         THE COURT:  Off the record.

12         (Discussion held off the record.)

13         MR. BANDELLI:  He is too close to the system.

14         THE COURT:  It's on the record.  What's your

15   challenge for cause as to Henry Martinez.

16         MR. BANDELLI:  My challenge for cause is based on

17   the fact that he is married to the Court attorney for a

18   Family Court judge, the supervising judge.  My client in

19   this case has had a matter pending in Family Court for the

20   past year where there were numerous findings against him

21   having to do with the exact charges pending before your

22   Honor.  I don't believe that it would be to the advantage of

23   this case to have somebody with his intimate exposure to the

24   on-goings of Family Court when this case has to do exactly

25   with that.

Proceedings

1          Your Honor, I don't think that he could be a fair

2     and impartial juror to the extent that he is limited by

3     virtue of the fact that he lives with someone who is part of

4     the system.

5          THE COURT: What's the People's position?

6          MR. ROSENBLATT: Judge, I think the argument most

7     respectfully is completely ludicrous. It's like saying

8     because Miss Padin, potential juror number five's, son is a

9     member of the New York City Police Department there is a

10    possibility that he might have spoken to somebody in the

11    precinct about a case in Queens. It's so far removed. They

12    are not related in any ay whatsoever. I find that there is

13    no reason to dismiss the potential juror.

14         THE COURT: Defendant's application for cause

15    challenge as to Henry Martinez is granted.

16         The People, any challenge for cause as to Michael

17    Yoong?

18         MR. ROSENBLATT: No.

19         THE COURT: Any challenge for cause, Mr. Bandelli?

20         MR. BANDELLI: No.

21         THE COURT: Any perempt, People?

22         MR. ROSENBLATT: No.

23         THE COURT: Any perempt?

24         MR. BANDELLI: No.

25         THE COURT: He becomes juror number 12.

slf

Proceedings

1          We will select alternates first thing in the

2   morning.  We will open.  You have your witness tomorrow who

3   is going on vacation.

4          MR. ROSENBLATT:  Yes.  I'll have him available

5   tomorrow.

6          THE COURT:  Which witness is that?

7          MR. ROSENBLATT:  The detective.

8          THE COURT:  What's his name?

9          MR. ROSENBLATT:  Lennard Shulman.

10          THE COURT:  Where does he work?

11          MR. ROSENBLATT:  The 105 Squad.

12          THE COURT:  Your client is not Muslim.

13          MR. BANDELLI:  No.

14          Off the record.

15          (Discussion held off the record.)

16          (In open court.)

17          THE CLERK:  Of the jurors seated in the jury box,

18   will the following two people please remain seated:

19   Maryanne Geraci and Michael N. Yoong.  You two people remain

20   seated.  The other five, go back to central jury now.

21   Mr. Yoong you are going to be alternate -- juror number 12

22   second to last right there, and, Miss Geraci, you will be

23   number 11.

24          PROSPECTIVE JUROR:  Okay.

25          THE CLERK:  Will our two new jurors please rise

Proceedings

1    and raise your right hand.

2            (Selected jurors sworn in by the clerk of the

3    court.)

4            THE COURT:  Let them sit there.

5            We are going to recess for the evening.  Members

6    of the jury, remember, you are not to discuss this case

7    among yourselves or with anyone else.  If anyone tries to

8    discuss it, you are to bring it to my attention immediately.

9    You are not to visit any locations mentioned so far, and you

10   are not to form any opinion as to whether or not you feel

11   the defendant is guilty or not guilty of the crimes with

12   which he is charged.

13           We are going to finish selecting the jury tomorrow

14   morning, and you can come back here tomorrow -- give you an

15   extra hour of sleep -- 10:30 tomorrow morning.  Tomorrow

16   morning come back here at 10:30 while we are selecting the

17   rest of the jury.

18           Enjoy your evening.  Get home safely.  Come back

19   here tomorrow morning 10:30.  Follow the instruction of the

20   court officer.

21           (Panel of sworn jurors exits the courtroom.)

22           THE COURT:  Any matters before we recess for the

23   evening?

24           MR. ROSENBLATT:  I have none, your Honor.

25           MR. BANDELLI:  No, Judge.

227
Proceedings

1          THE COURT:  All right.  9:30 tomorrow morning.

2          MR. BANDELLI:  Yes, sir.

3          *                *                *

4          (Whereupon, the trial was adjourned to Thursday,

5     July 8, 2010.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

slf

1    SUPREME COURT OF THE STATE OF NEW YORK.

2    COUNTY OF QUEENS: CRIMINAL TERM: PART TAP-D

3    ------------------------------------X
     THE PEOPLE OF THE STATE OF NEW YORK      :   Indictment
4                                             :   No. 2065/08
                                              :
5              -against-                      :
                                              :
6                                             :
     HAROLD GOPAUL,                           :
7                                             :
                              Defendant.      :   CRM SX ACT 1
8                                             :
     ------------------------------------X JURY TRIAL
9
                                  125-01 Queens Boulevard
10                                Kew Gardens, New York
                                  July 8, 2010
11
12   B e f o r e:

13                    HONORABLE GREGORY L. LASAK,

14                             Supreme Court Justice

15   A p p e a r a n c e s:

16             HONORABLE RICHARD A. BROWN
                   District Attorney, Queens County
17             BY:  JARED ROSENBLATT, ESQ.

18             STANFORD BANDELLI, ESQ.
                   Attorney for Defendant
19                 16 Court Street
                   Brooklyn, New York
20

21

22             *          *          *

23                             SHERYL FITZPATRICK, RPR CSR
                               Official Court Reporter
24

25

                                                            slf

Proceedings

1          THE CLERK:  Case on trial, People versus Harold

2     Gopaul.  Let the record reflect the defendant is before the

3     Court.

4               Counsel, your appearances, please.

5               MR. ROSENBLATT:  For the People Assistant District

6     Attorney Jared Rosenblatt.

7               Good morning, your Honor.

8               MR. BANDELLI:  Stanford Bandelli on behalf of the

9     defendant, Harold Gopaul.

10              Good morning, Judge Lasak.

11              THE COURT:  Good morning.

12              MR. ROSENBLATT:  Judge, I have the logbook from

13    Monday June 23, 2008 from 11:50 p.m. through June 24, 2008

14    at 5:52 in the morning.  Most respectfully, Judge, there is

15    nothing in this logbook that is Rosario or discoverable.  I

16    could turn it over to the Court for an in-camera inspection,

17    but there is nothing in here that, by law, I'm required to

18    turn over.  I'll turn it over if your Honor wishes me to,

19    but, you know, this becomes a fishing expedition both

20    through the Nassau case and here in Queens.

21              THE COURT:  Mr. Bandelli.

22              MR. BANDELLI:  Judge, I wasn't involved in the

23    Nassau case, so if somebody was fishing out there, I had

24    nothing to do with that.

25              The bottom line is nobody seems to be able to

Proceedings

1   answer when Mr. Gopaul voluntarily walked into the precinct

2   or reported his daughter missing.  Nobody is able to say who

3   the police officers were that initially talked to

4   Mr. Gopaul, who put him in custody.  That entry --

5           THE COURT:  Do you know anything about that?  Who

6   were the first detectives/officers to contact the defendant?

7           MR. ROSENBLATT:  I believe, Judge, when Mr. --

8   Judge, it's going to come out during course of this trial

9   that a witness observed Mr. Gopaul walk into the precinct

10  and placed in handcuffs by a litany of officers.  The exact

11  names, I don't know.  I could tell you a few of the names

12  that were down there, but those witnesses won't be called to

13  testify.

14          MR. BANDELLI:  Well, they may be witnesses that I

15  want to call.

16          THE COURT:  I asked you a simple question.  Do you

17  know who the officers were that first spoke to the defendant

18  in this case?

19          MR. ROSENBLATT:  The first person who spoke to the

20  defendant was Detective Schulman.  No one spoke to the

21  defendant before Detective Schulman.

22          THE COURT:  He walked into a precinct to report

23  his daughter missing; is that correct?

24          MR. ROSENBLATT:  Yes.  Well, I don't know why he

25  walked into the precinct.  That's his allegation.

Proceedings

1          MR. BANDELLI:  Well, actually it's contained in

2     the police reports that were provided by the DA.  Detective

3     Schulman actually says he walked into the precinct to report

4     his daughter missing, and that came from somebody else

5     downstairs.

6          THE COURT:  Who did he speak to?  The sergeant at

7     the desk?

8          MR. ROSENBLATT:  Correct.

9          THE COURT:  Who is the sergeant?

10         MR. ROSENBLATT:  I believe it was Sergeant

11    O'Hagan.

12         THE COURT:  Why didn't you say that?

13         MR. ROSENBLATT:  I'm not one hundred percent

14    certain that's true.  I believe it based on my information,

15    but I don't believe it's relevant in regards to the trial.

16         THE COURT:  Did you do the Huntley hearing in this

17    case?

18         MR. ROSENBLATT:  There was no Huntley.  The same

19    hearing regarding the same issues was done in Nassau.  Judge

20    Grosso ruled because the issues were the same and a judge in

21    Nassau ruled in regards to that hearing, there was no

22    hearing to be done here.

23         THE COURT:  That's fine, but there is also a

24    voluntariness issue at this trial as far as a statement is

25    concerned.

slf

Proceedings

1          MR. ROSENBLATT:  Absolutely, Judge.

2          THE COURT:  As the DA on that case, you would like

3     to know who spoke to him before Schulman spoke to him.

4          MR. ROSENBLATT:  When he came in --

5          THE COURT:  I'm just telling you that.  Okay?

6          MR. ROSENBLATT:  I understand, Judge.

7          THE COURT:  That's the reason that they asked for

8     this log.  I don't know whose names are on this log.  Is

9     that the desk sergeant's log?

10         MR. ROSENBLATT:  Yes.

11         THE COURT:  Hand that up to the Court, please.

12         MR. ROSENBLATT:  Yes, your Honor.

13         Judge, I believe the other page I turned over to

14    your Honor with the other materials.

15         THE COURT:  I'm returning this copy of the

16    sergeant's log entries from the night of the 23rd into the

17    morning at 5:57 the morning of June 24, 2008.  There is

18    nothing in here, number one, that's relevant or has anything

19    to do with this case.

20         Number two, there is no listing of any officers

21    who were working at that time.  There is a listing there of

22    one entry where officers are going to work overtime towards

23    4 o'clock in the morning.  The DA has given you the name of

24    that sergeant.  I suggest you go out and try to speak to

25    that sergeant with your investigator.  Take it from there.

Proceedings

1      MR. BANDELLI:  Judge, is there anything in the

2  paperwork that indicates what time Mr. Gopaul walked into

3  the precinct?

4      THE COURT:  There is no indication in that

5  paperwork of a Mr. Gopaul.

6      MR. BANDELLI:  Don't you think that's highly

7  unusual?  This guy -- listen --

8      THE COURT:  In the 105 Precinct?  Not unusual.

9      MR. BANDELLI:  All right.

10      THE COURT:  Not unusual.

11      MR. BANDELLI:  Well, if there is any paperwork

12  that is existing anywhere or that should be existing

13  anywhere that reflects the time a person walks into the

14  precinct to report a crime, I would demand that that

15  paperwork be turned over, and if they are going to say it

16  doesn't exist, let it go on the record.

17      THE COURT:  Normally when somebody walks in the

18  precinct to report a crime, they are sent to what is

19  called -- I don't know if it's still called the 124 room

20  where there is a police administrative assistant in there.

21      MR. BANDELLI:  I agree, Judge.  That's my

22  experience.

23      MR. ROSENBLATT:  Except in the situation when the

24  individual is walking in to report a crime that they are in

25  fact the subject of that crime, then the rules are slightly

Proceedings

1       altered.

2                    THE COURT:  Thank you for that enlightenment.

3                    MR. ROSENBLATT:  You're welcome, your Honor.

4                    THE COURT:  Anything else?

5                    MR. BANDELLI:  Not at this time, Judge.

6                    THE COURT:  All right.  We have a supplemental

7       panel outside.  We will select the alternate jurors.

8                    MR. ROSENBLATT:  How long will your Honor permit

9       us questioning of the alternates?

10                   THE COURT:  Approach the bench.

11                   (Side-bar discussion held off the record.)

12                   (Panel of prospective jurors enters the

13      courtroom.)

14                   THE CLERK:  Case on trial, People versus Harold

15      Gopaul.  All parties are present, your Honor.  Supplemental

16      panel is present.

17                   THE COURT:  Good morning, ladies and gentlemen.

18      I'm justice Gregory Lasak.  I'll be presiding over this

19      trial which is a trial of a criminal matter entitled the

20      People of the State of New York against Harold Gopaul, the

21      defendant.

22                   I'm going to ask the clerk to please swear you in

23      at this point.

24                   THE CLERK:  All members of the panel please rise

25      and raise your right hand.

Proceedings

1          (Panel sworn in by the clerk of the court.)

2          THE COURT:  Fill up the jury box, please.

3          THE CLERK:  Christopher Nazario, N-a-z-a-r-i-o,

4     seat number one, please.

5          Barbara A. Declementi, D-e-c-l-e-m-e-n-t-i, seat

6     number two, please.

7          Jordan Salvit, S-a-l-v-i-t, seat number three.

8          Hasnain Sherazi, H-a-s-n-a-i-n, S-h-e-r-a-z-i,

9     seat number four, please.

10         Brady Berman, B-e-r-m-a-n, seat number five,

11    please.

12         Bhanwanti Basdeo, B-h-a-n-w-a-n-t-i.  Last name

13    B-a-s-d-e-o, seat number six, please.

14         Azucena C. Castillo, A-z-u-c-e-n-a,

15    C-a-s-t-i-l-l-o, seat number seven, please.

16         Seat number eight, Daniel E. Manini, M-a-n-i-n-i,

17    seat number eight.

18         Jin R. Fang, J-i-n, R, F-a-n-g, seat number nine

19    please.

20         Georgia A. Francis-Wallace, F-r-a-n-c-i-s,

21    W-a-l-l-a-c-e, seat number ten, please.

22         Shira T. Kavon, S-h-i-r-a, T, K-a-v-o-n, seat

23    number 11, please.

24         Michele Wong, W-o-n-g, seat number 12, please.

25         Deborah Freeman, F-r-e-e-m-a-n, seat number 13,

Proceedings

1   please.

2           Joseph L. Schneider, S-c-h-n-e-i-d-e-r, seat

3   number 14, please.

4           Virginia M. Brown, B-r-o-w-n, seat number 15,

5   please.

6           Audrey J. Demarco, D-e-m-a-r-c-o, seat number 16,

7   please.

8           THE COURT:  I'm going to be addressing the 16

9   prospective jurors in the jury box, but I would like

10  everyone out there to please pay attention.  This is a

11  criminal matter entitled the People of the State of New York

12  against Harold Gopaul, the defendant.  The defendant is

13  seated over there in the white shirt.

14          As you know, or should know, the DA of this county

15  is Richard Brown, and he appoints assistant district

16  attorneys to represent him and the People of the State of

17  New York in these criminal trials here.

18          Representing the People of the State of New York

19  in this trial is Mr. ADA Rosenblatt.

20          Would you please stand up?

21          MR. ROSENBLATT:  Good morning.  Good morning.

22          THE COURT:  And representing Mr. Gopaul is his

23  attorney, Mr. Stanford Bandelli.  Please stand up.

24          MR. BANDELLI:  Good morning, ladies and gentlemen.

25  Good morning, everybody.

Proceedings

1      THE COURT:  The charges in this case are, among

2  others, criminal sexual act in the first degree, sexual

3  abuse in the first degree and criminal sexual act in the

4  third degree plus some other charges.  I'm going to read a

5  list of prospective witnesses or people whose names may come

6  up during the course of this trial to see if you are

7  familiar with any of these names, just as I introduced the

8  parties to you to see if you are familiar with them.

9      Sana Awan, Denise Alioto, Christine Alioto, Merlin

10  Gopaul, Ashley Gangaram, Dalip Gopaul, Carmen Seunarine,

11  Phelafhwar Sukhram, Sulma Paguada, Veronica Reyes, Joyce

12  Cuba, Detective Lennard Shulman, ADA Brian Hughes, Police

13  Officer Celica Alfaro, Police Officer Sarah Morris, Barbara

14  Heffernan, Dr. Don Lewittes.

15      Anyone familiar with those names?  Raise your

16  hands.

17      Okay.  The locations we are going to be concerned

18  with during the course of this trial are 242-10 89 Avenue

19  and 74-20 Commonwealth Boulevard.  Those locations are in

20  Bellerose out in eastern Queens, and the time period we are

21  going to be concerned with is May 2005 to June of 2008.  We

22  have already selected most of the jury on this case.  You

23  are a supplemental panel.  We are going to finish the jury

24  selection and start the trial today.  That's where we stand

25  on this case today.

1          I'm going to go over three basic principles of law

2     with you.  These basic principles apply to every criminal

3     case in New York State and have applied to every criminal

4     case in New York State since we started hundreds of years

5     ago, and they are the defendant, as he is seated there, is

6     presumed innocent.  The DA has what we call the burden to

7     prove him guilty beyond a reasonable doubt, a term I'll

8     explain to you later on; and if the defendant decides not to

9     testify in his own behalf, that's not a factor from which

10    you can draw an inference unfavorable to him.

11          Anyone have a problem understanding that or

12    understanding English?  Raise your hand right now.

13    Everybody here understood everything I just said?

14               PROSPECTIVE JUROR:  Not much.

15               THE COURT:  Miss Castillo.

16               PROSPECTIVE JUROR:  Yes.

17               THE COURT:  Come up, please.

18               (The following proceedings took place at

19    side-bar:)

20               THE COURT:  Hi.  You didn't understand everything

21    I was saying?

22               PROSPECTIVE JUROR:  Not much, your Honor.

23               THE COURT:  Okay.  How long have you been in this

24    country?

25               PROSPECTIVE JUROR:  More than 30 years.

Proceedings

1        THE COURT:  30 years?

2        PROSPECTIVE JUROR:  37, yeah, but mostly I speak

3    people like me, spanish.  I understand a lot, you know.

4        THE COURT:  But not everything.

5        PROSPECTIVE JUROR:  Not everything.

6        THE COURT:  Okay.

7        PROSPECTIVE JUROR:  The technical words, you know.

8        THE COURT:  Okay.  You see, in a criminal case

9    it's important that a juror understands a hundred percent.

10       PROSPECTIVE JUROR:  That's what I understand.

11       THE COURT:  Otherwise, it wouldn't be fair.

12       I want to thank you for being a good citizen and

13   coming in and answering the jury duty summons, but we are

14   going to excuse you from jury duty.

15       PROSPECTIVE JUROR:  Thank you.

16       THE COURT:  Okay.  The officer will give you a

17   slip.

18       PROSPECTIVE JUROR:  Okay.

19       THE COURT:  Thank you very much.  Have a nice day.

20       Miss Castillo is excused consent of both sides?

21   MR. ROSENBLATT:  Yes.

22   MR. BANDELLI:  Yes.

23   (In open court.)

24       THE COURT:  Anyone else have their hands up?

25       Fill the seat, please.

Proceedings

1      THE CLERK:  Latchmi Chowtie, L-a-t-c-h-m-i,

2  C-h-o-w-t-i-e, seat number seven, please.

3      THE COURT:  Good morning, Miss Chowtie.  Is that

4  your name?

5      PROSPECTIVE JUROR:  Yes.

6      THE COURT:  Did you understand those three basic

7  principles I just stated?

8      PROSPECTIVE JUROR:  Yes.

9      THE COURT:  No problem?

10     PROSPECTIVE JUROR:  No.

11     THE COURT:  Okay.  Now that I know everyone

12  understood them, anyone have a problem following them?

13     You see, if you are selected as a juror in this

14  case, you become what we call a judge of the facts, and I'm

15  the judge of the law, and I give you the law throughout the

16  case, and you must abide by the law that I give to you even

17  if you privately disagree with me.  You all took an oath, so

18  this is serious.  Do you all understand that?

19     Our goal here is to impanel the rest of this jury

20  that can be fair and impartial to both sides.  We are going

21  to ask you some questions and you are going to respond.

22  Well, first I'm going to ask you some questions.  You will

23  respond by please raising your hands, and then the attorneys

24  will ask you some questions.

25     Has anyone here ever served as a juror before on a

Proceedings

1    criminal case and actually sat and listened to testimony as

2    a juror on a criminal case?  Please raise your hand.

3            Miss Declementi.

4            PROSPECTIVE JUROR:  Yes.

5            THE COURT:  About how many years ago was it?

6            PROSPECTIVE JUROR:  Twenty.

7            THE COURT:  Twenty?

8            PROSPECTIVE JUROR:  I've been on a jury three

9    times.  One was criminal.

10           THE COURT:  Okay.  The criminal case that was 20

11    years ago, without telling me what it was, were you able to

12    reach a verdict?

13           PROSPECTIVE JUROR:  Yes, we were.

14           THE COURT:  Were you satisfied with that verdict?

15           PROSPECTIVE JUROR:  Yes.

16           THE COURT:  What was the person charged with in

17    that case?

18           PROSPECTIVE JUROR:  It was a sexual molestation

19    case.

20           THE COURT:  Okay.  Thank you very much.

21           Mr. Salvit, how many years ago did you serve on a

22    criminal case?

23           PROSPECTIVE JUROR:  About, I think, seven years.

24           THE COURT:  Seven years ago?

25           PROSPECTIVE JUROR:  Yes.

Proceedings

1      THE COURT:  Again, without telling me what it was,

2  were you able to reach a verdict?

3      PROSPECTIVE JUROR:  We were.

4      THE COURT:  Were you satisfied with it?

5      PROSPECTIVE JUROR:  Yes.

6      THE COURT:  What was the charge in that case?

7      PROSPECTIVE JUROR:  A grand larceny.

8      THE COURT:  What was taken in that case?

9      PROSPECTIVE JUROR:  What was proven was taken was

10 a small monetary item.  They were looking for I think it was

11 a computer.

12     THE COURT:  Thank you very much.

13     Anybody else have their hand up that I missed?

14     Any of you been the victim of a crime?  If you

15 have been the victim of a crime, raise your hand.  Had your

16 car stolen, house broken into, somebody hurt you in some

17 manner that you had to call the police, please raise your

18 hand.  Thank you.

19     Mr. Manini.

20     PROSPECTIVE JUROR:  Yes.

21     THE COURT:  What happened to you?

22     PROSPECTIVE JUROR:  Somebody broke my car window

23 with a brick.  Ripped out the stereo.

24     THE COURT:  Okay.  Did you call the police?

25     PROSPECTIVE JUROR:  Yes, I did.

Proceedings

1      THE COURT:  Was anybody arrested?

2      PROSPECTIVE JUROR:  No, they weren't.

3      THE COURT:  I'm sure you would agree with me that

4   that has nothing to do with this case.

5      PROSPECTIVE JUROR:  Absolutely nothing.

6      THE COURT:  You could be fair to both sides?

7      PROSPECTIVE JUROR:  Pardon me?

8      THE COURT:  You could be fair to both sides?

9      PROSPECTIVE JUROR:  Yes, sir.

10      THE COURT:  Thank you.

11      Mr. Demarco, what happened to you?

12      PROSPECTIVE JUROR:  Home robbery.

13      THE COURT:  Burglary.

14      PROSPECTIVE JUROR:  Correct.

15      THE COURT:  About how many years ago?

16      PROSPECTIVE JUROR:  Approximately ten years ago.

17   Twice, actually.  Ten and 12 years ago.

18      THE COURT:  Did you call the police?

19      PROSPECTIVE JUROR:  Yes.

20      THE COURT:  Was anyone arrested?

21      PROSPECTIVE JUROR:  No.

22      THE COURT:  Again, I'm sure you would agree with

23   me that that has nothing to do with this case.

24      PROSPECTIVE JUROR:  I agree.

25      THE COURT:  You could be fair to both sides?

slf

Proceedings

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Thank you.

3          Miss Brown.

4          PROSPECTIVE JUROR:  Yes, but then I didn't make a

5   police report.  Somebody was tampering with my car.  I

6   forget.  I didn't make a police report.

7          THE COURT:  You could be fair to both sides?

8          PROSPECTIVE JUROR:  It wasn't that big of a deal.

9          THE COURT:  Okay.  Thank you, Miss Brown.

10         Mr. Schneider, what happened to you?

11         PROSPECTIVE JUROR:  Two years ago I got robbed at

12   gun point.

13         THE COURT:  Was that out on the street?

14         PROSPECTIVE JUROR:  Yes, Long Island City.

15         THE COURT:  What time of the day was it?

16         PROSPECTIVE JUROR:  This was at nighttime.  About

17   seven o'clock at night.

18         THE COURT:  Did you call the police?

19         PROSPECTIVE JUROR:  Sure did.

20         THE COURT:  Anyone arrested?

21         PROSPECTIVE JUROR:  No.

22         THE COURT:  How long ago was that?

23         PROSPECTIVE JUROR:  Two years ago.

24         THE COURT:  All right.  The reason I ask this

25   question is we come into the courtroom with various

Proceedings

1    experiences in life, hopefully most of them good, some of

2    them bad like you jurors are now relating to us.

3          We don't expect you to forget about these things.

4    Obviously you won't forget about the gun in your face;

5    however, if you are selected as a juror, all we ask is that

6    you place your memory of that aside and sit and listen to

7    the testimony and the evidence and render a verdict on that

8    and not on what happened to you.  Otherwise, it wouldn't be

9    fair.  You would have no problem doing that, right?

10         PROSPECTIVE JUROR:  I don't know.  I don't think I

11   could be a fair juror.

12         THE COURT:  You don't think you could be fair?

13         PROSPECTIVE JUROR:  No.

14         THE COURT:  Come up.

15         (The following proceedings took place at

16   side-bar:)

17         THE COURT:  Why can't you be fair, Mr. Schneider?

18         PROSPECTIVE JUROR:  What is that?

19         THE COURT:  Why can't you be fair?

20         PROSPECTIVE JUROR:  I was put at gunpoint, and I

21   just don't feel that I'm a fair juror over here, you know.

22   It was a scary experience.

23         THE COURT:  I'm not debating that.  You don't

24   think Mr. Gopaul stuck that gun in your face.

25         PROSPECTIVE JUROR:  No, but there is another

slf

Proceedings

1   incident that happened with my cousin, so --

2               THE COURT:  What happened with your cousin?

3               PROSPECTIVE JUROR:  She was sexually abused.

4               THE COURT:  We are going to send you over to

5    central jury to sit on civil cases because you can't be fair

6    on criminal cases.  Okay?

7               PROSPECTIVE JUROR:  Thank you.

8               THE COURT:  Thank you, Mr. Schneider.

9               Mr. Schneider is excused consent of both sides?

10              MR. BANDELLI:  Yes.

11              MR. ROSENBLATT:  Yes.

12              (In open court.)

13              THE COURT:  Fill the seat, please.

14              THE CLERK:  Edward Wagner, W-a-g-n-e-r, seat

15   number 14, please.

16              THE COURT:  Good morning, Mr. Wagner.

17              Were you able to hear those three basic principles

18   of law?

19              PROSPECTIVE JUROR:  Yes.

20              THE COURT:  Any problem following them?

21              PROSPECTIVE JUROR:  No.

22              THE COURT:  Have you ever been the victim of a

23   crime?

24              PROSPECTIVE JUROR:  Yes.

25              THE COURT:  What happened to you?

Proceedings

1          PROSPECTIVE JUROR:  Well, car stolen, mugged.

2          THE COURT:  How long ago were you mugged?

3          PROSPECTIVE JUROR:  Many years ago.  A long time

4     ago.

5          THE COURT:  Okay.  Anything about those incidents

6     that would prevent you from being fair in this case?

7          PROSPECTIVE JUROR:  I don't think so.  I don't

8     believe so, no.

9          THE COURT:  I can have your assurance you will be

10    fair to both sides?

11         PROSPECTIVE JUROR:  I'll try.

12         THE COURT:  Have you ever served as a juror

13    before?

14         PROSPECTIVE JUROR:  No.

15         THE COURT:  Okay.  Miss Freeman, you had your hand

16    up.

17         Anyone else if the back row have their hand up was

18    the victim of a crime?

19         As you can see by the charges that I read off to

20    you, they involve charges of a sexual nature and the case

21    involves a family member.

22         Anything about the nature of those charges that

23    would give any juror here a problem sitting on this case?

24         Miss Chowtie, come up.

25         (The following proceedings took place at

Proceedings

 1     side-bar:)

 2              PROSPECTIVE JUROR:  All right.  2005 my son was

 3     convicted for similar case like this.

 4              THE COURT:  Your son?

 5              PROSPECTIVE JUROR:  Yes.

 6              THE COURT:  Was convicted?

 7              PROSPECTIVE JUROR:  Yeah, forcible touching.  He

 8     was convicted.

 9              THE COURT:  Who was the person he was convicted of

10     touching?  Somebody in the family?

11              PROSPECTIVE JUROR:  No.

12              THE COURT:  A stranger?

13              PROSPECTIVE JUROR:  Some stranger.

14              THE COURT:  How old was the person?

15              PROSPECTIVE JUROR:  In her 20s.

16              THE COURT:  In her 20s.  Okay.

17              PROSPECTIVE JUROR:  I'm very nervous.  I just

18     think I can't do it.

19              THE COURT:  You can't do this?

20              PROSPECTIVE JUROR:  No.  It brings back every

21     memory.

22              THE COURT:  I'm sorry for that.

23              We are going to have you sit on civil cases only,

24     okay?

25              PROSPECTIVE JUROR:  I have to come back again

Proceedings

1    today?

2              THE COURT:  The officer will instruct you where to

3    go.

4              PROSPECTIVE JUROR:  I'm very nervous about this.

5    You know, this bring back all the memories.

6              THE COURT:  I'm sorry.  Thank you, Miss Chowtie.

7              Prospective juror Chowtie is excused consent of

8    both sides?

9              MR. ROSENBLATT:  Yes.

10             MR. BANDELLI:  Yes.

11             THE COURT:  Miss Wong.  Yes.

12             PROSPECTIVE JUROR:  Hi.

13             THE COURT:  You have a problem sitting on this

14   case?

15             PROSPECTIVE JUROR:  My niece was abused, sexually

16   abused, by her dad, so --

17             THE COURT:  It brings back bad memories?

18             PROSPECTIVE JUROR:  Yes.  I would not see him in a

19   favorable light no matter what.

20             THE COURT:  Okay.  We are going to have you sit on

21   civil cases.

22             PROSPECTIVE JUROR:  Okay.

23             THE COURT:  Thank you, Miss Wong.  Follow the

24   instruction of the court officer.

25             Miss Wong is excused consent of both sides?

Proceedings

1      MR. ROSENBLATT:  Yes.

2      MR. BANDELLI:  Yes, your Honor.

3      THE COURT:  Mr. Wagner, yes.  You have a problem

4  with this case?

5      PROSPECTIVE JUROR:  It's every time I read about

6  things like that, Judge, I get sick.  I just it bothers me.

7  You know, I don't know what I would do.  I mean to be honest

8  with you.  Scared to death of my family, you know, my kids

9  go out and all of that.  I'm scared to death of that, but

10  this is something else.  It bothers me.

11      THE COURT:  I understand that.  So, you are

12  telling me that you would have a problem sitting on this

13  case?

14      PROSPECTIVE JUROR:  I don't want to be biased.  I

15  don't want to be, but I don't know how I would feel.  I know

16  the guy deserves a fair shot, but I really don't know.  I

17  never served on a jury, and this might be a problem to me.

18      THE COURT:  Well, we are going to send you back to

19  central jury to sit on civil cases.

20      PROSPECTIVE JUROR:  Okay.

21      THE COURT:  Thank you for your honesty,

22  Mr. Wagner.  Have a nice day.

23      Prospective juror Mr. Wagner is excused consent of

24  both sides?

25      MR. ROSENBLATT:  Yes.

251

Proceedings

1              MR. BANDELLI:  Yes.

2              (In open court.)

3              THE COURT:  Anyone else?

4              Fill the three seats.

5              THE CLERK:  George Yu, Y-U, seat number seven,

6       please.

7              Everett D. Walters, W-a-l-t-e-r-s, seat number 12,

8       please.

9              Harvey Leona, L-e-o-n-a, seat number 14, please.

10             Good morning, Mr. Yu, Mr. Walters and Mr. Leona.

11      Did the three of you hear the three basic principles of law

12      I stated a few minutes ago?

13             PROSPECTIVE JUROR:  Yes.

14             PROSPECTIVE JUROR:  Yes.

15             PROSPECTIVE JUROR:  Yes.

16             THE COURT:  Any of you have a problem

17      understanding it?  Raise your hand.

18             Any of you have a problem following it?  Raise

19      your hand.

20             Any of you have been the victim of a crime?  Raise

21      your hand.

22             What happened to you, Mr. Leona?

23             PROSPECTIVE JUROR:  I was mugged.

24             THE COURT:  Where were you mugged?

25             PROSPECTIVE JUROR:  Right by my block.  A couple

Proceedings

1     of blocks from my house.

2               THE COURT:  And did you call the police?

3               PROSPECTIVE JUROR:  Yes.

4               THE COURT:  Anyone arrested?

5               PROSPECTIVE JUROR:  No.

6               THE COURT:  Pardon me?

7               PROSPECTIVE JUROR:  No.

8               THE COURT:  Okay.  I'm sure you would agree that

9     has nothing to do with this case.

10              PROSPECTIVE JUROR:  No.

11              THE COURT:  You could be fair to both sides?

12              PROSPECTIVE JUROR:  Yes.

13              THE COURT:  You have your hand up, Mr. Walters?

14              PROSPECTIVE JUROR:  Yes.

15              THE COURT:  What happened to you, sir?

16              PROSPECTIVE JUROR:  My apartment was broken into.

17              THE COURT:  How long ago?

18              PROSPECTIVE JUROR:  Six years ago.

19              THE COURT:  Six years ago?

20              PROSPECTIVE JUROR:  Yes.

21              THE COURT:  Did you call the police?

22              PROSPECTIVE JUROR:  Yes.

23              THE COURT:  Anyone arrested?

24              PROSPECTIVE JUROR:  No.

25              THE COURT:  Okay.  That wouldn't give you a

Proceedings

1    problem sitting on this case; would it?

2              PROSPECTIVE JUROR:  No.

3              THE COURT:  Good.  All right.

4              Any of the three of you ever served as a juror

5    before in a criminal case?

6              PROSPECTIVE JUROR:  No.

7              PROSPECTIVE JUROR:  No.

8              PROSPECTIVE JUROR:  No.

9              THE COURT:  You are all caught up.  One more

10   question.  As you heard these charges involve a family

11   member, and they are in the nature of sexual charges.

12   Anyone have a problem sitting on a case like that?  Raise

13   your hand.

14             Mr. Yu, come up.

15             (The following proceedings took place at

16   side-bar:)

17             THE COURT:  You have a problem sitting on this

18   case?

19             PROSPECTIVE JUROR:  Yes, sir.

20             THE COURT:  How come?

21             PROSPECTIVE JUROR:  I have a young child.

22             THE COURT:  Pardon?

23             PROSPECTIVE JUROR:  I have a young child and a

24   little baby on the way.  I hear on the news all the time

25   about sexual abuse by family members.  Whenever I do, it

Proceedings

1   puts me in a rage.

2          THE COURT:  It what?

3          PROSPECTIVE JUROR:  It puts me in a rage.

4          THE COURT:  It puts you in a rage.  Okay.  I don't

5   want to do that.

6          So, you couldn't be fair?

7          PROSPECTIVE JUROR:  I don't think so, sir.

8          THE COURT:  Okay.  We are going to have you go

9   back to central jury, sit on another case.

10          PROSPECTIVE JUROR:  Thank you.  Have a nice day.

11          THE COURT:  Prospective juror Mr. Yu is excused

12   consent of both sides?

13          MR. ROSENBLATT:  Yes.

14          MR. BANDELLI:  Yes.

15          THE COURT:  Mr. Fang, you had your hand up.

16          PROSPECTIVE JUROR:  My best friend, five years, he

17   was sexual something.

18          THE COURT:  Your best friend what?

19          PROSPECTIVE JUROR:  He was involved in a case with

20   a sexual something, harassment or something like that, in

21   the office, but he is my best friend.  I know him, but he

22   didn't do it.  I know he didn't do that, so -- but the case,

23   he lost the case.  He paid the penalty.

24          THE COURT:  Did he go to jail?

25          PROSPECTIVE JUROR:  He is not that person to do

slf

255

Proceedings

1    those things because I know the girl.  I know the girl.

2              THE COURT:  Let me ask you something.  You have a

3    problem sitting on this case because of the charges?

4              PROSPECTIVE JUROR:  Because I don't know.

5              THE COURT:  Do you have a problem?

6              PROSPECTIVE JUROR:  The problem is fine.  No

7    problem.  My point is that some case, I think my friend's,

8    he didn't do the thing.  I believe he didn't do the thing.

9    I know him, but I know the girl, also.

10             THE COURT:  Okay.  I don't want to talk about

11   that.  I want to ask you do you think you will have a

12   problem sitting on this case?

13             PROSPECTIVE JUROR:  I don't know if I can be fair.

14   Maybe I can't do that.

15             THE COURT:  You can't be fair.  Okay.  If you

16   can't be fair, I understand that, because of what happened

17   with your friend.

18             PROSPECTIVE JUROR:  No.  Because I know both.

19   Actually, one is my best friend.  The girl, I know her.  I

20   just know her.

21             THE COURT:  Forget about the girl.  You asked to

22   come up here.

23             PROSPECTIVE JUROR:  Sorry.

24             THE COURT:  You asked to come up here.

25             PROSPECTIVE JUROR:  Yes.

Proceedings

256

1        The other thing is the officer.

2        THE COURT:   What about the officer?

3        PROSPECTIVE JUROR:   Three or four years ago I got

4    DWI.   I get called but the case dismiss.

5        THE COURT:   That's okay.

6        PROSPECTIVE JUROR:   That is no problem.

7        THE COURT:   You are fine.   I think you would be

8    better off sitting on a civil case.   Okay?

9        PROSPECTIVE JUROR:   No problem.

10        THE COURT:   Thank you very much for your honesty.

11    Just follow the instruction of the officer.   You have a good

12    day, Mr. Fang.

13        Mr. Fang is excused consent of both sides?

14        MR. ROSENBLATT:   Yes.

15        MR. BANDELLI:   Yes.

16        (In open court.)

17        THE COURT:   Fill you the seat, please.

18        THE CLERK:   Lisa M. McCloskey, M-c-c-l-o-s-k-e-y,

19    seat number seven, please.

20        Michael D. Commisso, C-o-m-m-i-s-s-o, seat number

21    nine, please.

22        THE COURT:   Good morning, Miss McCloskey and

23    Mr. Commisso.

24        Either of you been the victim of a crime?

25        What happened to you?

slf

Proceedings

1              PROSPECTIVE JUROR:  My car was broken into a

2      couple of times.

3              THE COURT:  Your car was broken into?

4              PROSPECTIVE JUROR:  Yes.

5              THE COURT:  That wouldn't give you a problem

6      sitting as a fair juror?

7              PROSPECTIVE JUROR:  No.

8              THE COURT:  You heard the nature of the charges.

9      Either of you have a problem sitting on this case?

10             PROSPECTIVE JUROR:  I do.

11             PROSPECTIVE JUROR:  Yes.

12             THE COURT:  Come up, Mr. Commisso.

13             (The following proceedings took place at

14     side-bar:)

15             THE COURT:  You have a problem with these charges?

16             PROSPECTIVE JUROR:  Yeah.  I just think it's

17     disgusting.

18             THE COURT:  Pardon me?

19             PROSPECTIVE JUROR:  The charges.

20             THE COURT:  I'm not asking your opinion.  No one

21     likes the charges, but they are the charges in the case.

22             Do you think you could be fair on a case that has

23     those charges?

24             PROSPECTIVE JUROR:  I don't think so.

25             THE COURT:  Well, you heard the three basic

slf

258

Proceedings

1    principles.  First one is the defendant is presumed

2    innocent.

3              PROSPECTIVE JUROR:  Uh-huh.

4              THE COURT:  You haven't heard any evidence.

5              PROSPECTIVE JUROR:  Yeah, that's true.  I'm still

6    human.  It's just, you know, it just triggers something in

7    my mind, you know.

8              THE COURT:  All right.  Do you think you could sit

9    and listen to evidence and render a verdict in a case like

10   this?

11             PROSPECTIVE JUROR:  I could.

12             THE COURT:  You think you could be fair to both

13   sides?

14             PROSPECTIVE JUROR:  That's what I don't think so.

15             THE COURT:  You don't think so?

16             PROSPECTIVE JUROR:  No.  That's why I said, you

17   know --

18             THE COURT:  Okay.  We are going to send you back

19   to central jury then.  Okay, Mr. Commisso.  Thank you for

20   your honesty.

21             PROSPECTIVE JUROR:  Yeah.  I just wanted to be

22   honest.

23             THE COURT:  I appreciate that.  Civil cases only.

24             Mr. Commisso excused consent of both sides?

25             MR. ROSENBLATT:  Yes.

Proceedings

1              MR. BANDELLI:  Yes.

2              THE COURT:  Miss McCloskey, you have a problem

3       with these charges?

4              PROSPECTIVE JUROR:  Yes.  I'm a Born Again

5       Christian, and I don't feel it's -- I just feel like hearing

6       it bothers me.  I'm already prejudiced against it, and I

7       don't think I could be fair.

8              THE COURT:  All right.  We are going to send you

9       back to central jury to sit on civil cases.

10             PROSPECTIVE JUROR:  Okay.

11             THE COURT:  Thank you for your honesty.

12             Miss McCloskey is excused consent of both sides?

13             MR. ROSENBLATT:  Yes.

14             MR. BANDELLI:  Yes.

15             In open court.)

16             THE COURT:  Fill the seats, please.

17             THE CLERK:  Paula M. Lotito, L-o-t-i-t-o, seat

18       number 7, please.

19             Dominique Francois, F-r-a-n-c-o-i-s, seat number

20       nine, please.

21             THE COURT:  Good morning, Miss Lotito and

22       Miss Francois.

23             Did both of you hear the three basic principles of

24       law?

25             PROSPECTIVE JUROR:  Yes.

260

Proceedings

1              PROSPECTIVE JUROR:  Yes.

2              THE COURT:  Either of you have a problem following

3      them?

4              PROSPECTIVE JUROR:  No.

5              PROSPECTIVE JUROR:  No.

6              THE COURT:  You heard me state the nature of the

7      charges.  Either of you a problem with those charges?

8              PROSPECTIVE JUROR:  No.

9              PROSPECTIVE JUROR:  No.

10             THE COURT:  You could sit this case.  No problem,

11     right?

12             PROSPECTIVE JUROR:  I have a problem.

13             THE COURT:  Come up, Miss Francois.

14             (The following proceedings took place at

15     side-bar:)

16             THE COURT:  You have a problem sitting on a case

17     with these charges?

18             PROSPECTIVE JUROR:  Yes.

19             THE COURT:  How come?

20             PROSPECTIVE JUROR:  Well, I was inappropriately

21     touched when I was about 11, 12 years old by a close friend

22     of my fathers, and now I'm 38 years old, and it still haunts

23     me.  So, I'm very uncomfortable.

24             THE COURT:  I'm sorry we brought back a bad

25     memory.  We are going to excuse you and have you sit on

slf

Proceedings

1    civil cases only.  Thank you very much.  Again, I'm sorry I

2    brought up a bad memory.

3                 PROSPECTIVE JUROR:  Thank you.

4                 THE COURT:  Have a nice day, ma'am.

5                 Miss Francois excused consent of both sides?

6                 MR. ROSENBLATT:  Yes.

7                 MR. BANDELLI:  Yes.

8                 (In open court.)

9                 THE COURT:  Miss Lotito, have you ever served as a

10   juror before on a criminal case?

11                PROSPECTIVE JUROR:  Never.

12                THE COURT:  Have you ever been the victim of a

13   crime?

14                PROSPECTIVE JUROR:  Stole the tires off my car

15   about 25 years ago.  Minor.

16                THE COURT:  That wouldn't give you a problem

17   sitting as a fair juror here.

18                PROSPECTIVE JUROR:  No.

19                THE COURT:  You are all caught up.

20                Has anyone in the jury box or anyone close to you,

21   whether a close relative or friend, ever been arrested or

22   accused of a crime?

23                Any of you or anyone close to you ever been

24   arrested or accused of a crime?  Please raise your hand.

25                Some of you are thinking about that.

Proceedings

1              PROSPECTIVE JUROR:  He was a minor.  Does an

2       arrest as a minor count?

3              THE COURT:  Come up.

4              (The following proceedings took place at

5       side-bar:)

6              THE COURT:  You are all happy.  Who do you know?

7              PROSPECTIVE JUROR:  I shouldn't be happy.  My

8       husband.

9              THE COURT:  How long ago?

10             PROSPECTIVE JUROR:  Gosh, let's say 42 years ago.

11             THE COURT:  Before you knew him?

12             PROSPECTIVE JUROR:  Yes.

13             THE COURT:  Okay.  What was he arrested for?

14             PROSPECTIVE JUROR:  He was arrested for -- he was

15      a juvenile.  It was in Canada, and he was arrested for

16      loitering on the street.  They were on the street for Expo

17      '67 a million years ago, and they put them in jail over

18      night.

19             THE COURT:  Okay.  That wouldn't give you a

20      problem sitting as a juror.

21             PROSPECTIVE JUROR:  No.

22             THE COURT:  That's it.  Thank you.

23             (In open court.)

24             THE COURT:  Now that you had time to think about

25      it, any of you ever been arrested or any of your close

263
Proceedings

1    friends or relatives ever been arrested?  No.

2              Any of you or anyone close to you work in law

3    enforcement?  That is have a job as a police officer, court

4    officer, correction officer, DA, FBI agent.  Any of you or

5    anyone close to you have a job like that, raise your hand.

6              Miss Wallace, that looked like half a raise.

7              PROSPECTIVE JUROR:  My brother, he works for

8    Riker's.

9              THE COURT:  Riker's Island?

10             PROSPECTIVE JUROR:  Yes.

11             THE COURT:  As a correction officer?

12             PROSPECTIVE JUROR:  Yes, I believe so.

13             THE COURT:  Okay, and you had your hand up,

14   Miss Brown.

15             PROSPECTIVE JUROR:  Retired police officer.

16             THE COURT:  Pardon me?

17             PROSPECTIVE JUROR:  Retired police officer.

18             THE COURT:  Who is that?

19             PROSPECTIVE JUROR:  I am.

20             THE COURT:  You are?

21             PROSPECTIVE JUROR:  Yes.

22             THE COURT:  Where did you work?

23             PROSPECTIVE JUROR:  I last worked in the NYPD

24   Alcohol and Substance Abuse Unit.  That was my last couple

25   of years.

slf